IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

SIEMENS MEDICAL SOLUTIONS USA,    )
INC.,    )
    )
        Plaintiff,    )
    )
           v.    )    C.A. No.  07-190 (SLR)
    )
SAINT-GOBAIN CERAMICS &    )    **REDACTED – PUBLIC VERSION**
PLASTICS, INC.,    )
    )
        Defendant.    )

### SIEMENS' OPPOSITION TO SAINT-GOBAIN'S
### MOTION TO DISMISS FOR LACK OF STANDING

MORRIS, NICHOLS, ARSHT & TUNNELL LLP
Jack B. Blumenfeld (#1014)
Maryellen Noreika (#3208)
1201 North Market Street
P.O. Box 1347
Wilmington, DE  19899
(302) 658-9200
mnoreika@mnat.com

*Attorneys for Plaintiff*
*Siemens Medical Solutions USA, Inc.*

OF COUNSEL:

Gregg F. LoCascio
Charanjit Brahma
Sean M. McEldowney
KIRKLAND & ELLIS LLP
655 15th Street, N.W.
Washington, D.C. 20005-5793
(202) 879-5000

Original Filing Date:  December 14, 2007
Redacted Filing Date: December 28, 2007

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

SIEMENS MEDICAL SOLUTIONS USA,     )
INC.,                              )
                                   )
                Plaintiff,         )
                                   )
       v.                          )    C.A. No.  07-190 (SLR)
                                   )
SAINT-GOBAIN CERAMICS &            )    **REDACTED – PUBLIC VERSION**
PLASTICS, INC.,                    )
                                   )
                Defendant.         )

**SIEMENS' OPPOSITION TO SAINT-GOBAIN'S
MOTION TO DISMISS FOR LACK OF STANDING**

Saint-Gobain's motion to dismiss for lack of standing has no merit and appears to

be nothing more than a belated attempt to try to derail the entry of an order on Siemens' motion

for a preliminary injunction.  Knowing that it benefits from each day that a preliminary

injunction decision is delayed, Saint-Gobain now presents this Court with an argument that – in

addition to being legally wrong – it tactically chose *not* to pursue before, or even at, the

preliminary injunction hearing several weeks ago.  Saint-Gobain's motion should be swiftly

denied and, given Siemens' strong showing on its motion, the Court should enter a preliminary

injunction before Siemens suffers any further irreparable injury from the availability of Saint-

Gobain's admittedly-"equivalent" Low-Y LYSO crystals in the PET marketplace.

As set forth below, Saint-Gobain conflates two separate and distinct standing

doctrines – constitutional standing and prudential standing – to the effect of ignoring its own

admission elsewhere that "the patent statutes give … Siemens … the right to sue for patent

infringement." (Saint-Gobain Br. at 5, citing Nov. 9, 2007 letter.)  Thus, Saint-Gobain itself

acknowledges that Siemens possesses constitutional standing to be a plaintiff in this patent

infringement suit against Saint-Gobain, and its argument is instead based upon the doctrine of prudential standing.

In ignoring the distinctions between those doctrines, Saint-Gobain also ignores the crux of the *International Gamco* case upon which it heavily relies: that prudential standing is a judicially-created doctrine designed to prevent situations where there is "a substantial risk of multiple suits" over the same infringing act. *Int'l Gamco, Inc. v. Multimedia Games, Inc.*, 504 F.3d 1273, 1278 (Fed. Cir. 2007). However here, there is **zero** risk of a separate suit by the patentee, Schlumberger. The reason is simple: Schlumberger has expressly stated that it has no intention of suing Saint-Gobain in any separate action relating to the accused acts – completely mooting any purported concern over multiple suits under a proper prudential standing analysis. (*See* Ex. A, Nov. 26, 2007 letter from Schlumberger to Siemens ("Schlumberger reaffirms that it will not pursue Saint-Gobain in a separate action for the acts of infringement identified in the referenced suit.")(attached to Noreika Declaration).) In light of Schlumberger's decision and subsequent confirmation that it will not pursue any additional lawsuit, there is no standing question properly before this Court under any interpretation of Federal Circuit or Supreme Court precedent.

Further, Saint-Gobain's overreaches in its requested relief even under its view of the law and facts. In the Siemens/Schlumberger agreement, Schlumberger expressly agrees that if a Court were to determine that the law somehow required it to be a party in a suit filed by Siemens, Schlumberger would join that suit as a party. That requirement under the agreement would moot Saint-Gobain's purported standing concerns even if it prevailed on its standing arguments. That fact, combined with the not-yet-elapsed deadline to add parties, reveals the makeweight nature of Saint-Gobain's motion "to dismiss" – given the most it could hope for

2

would be the simple addition of Schlumberger as a party to this case. Saint-Gobain provides no support for any dismissal, much less one with prejudice, and its motion should be denied.

## ARGUMENT

To be blunt, Saint-Gobain's brief reflects a lack of appreciation for, or understanding of, the differences between constitutional Article III standing and prudential standing. While both involve "standing," there are significant differences between these doctrines. In short, constitutional standing could be described as the right to be a plaintiff in a lawsuit and avail oneself of judicial relief, a right premised on the question of whether the plaintiff has been injured by the defendant. On the other hand, prudential standing is a judicially-created doctrine that includes evaluating the specific facts involved to determine if there is a "substantial risk of multiple suits" over the same tortious conduct, in this context, the same infringing act. Although Saint-Gobain accuses Siemens of "missing the point" by drawing a distinction between constitutional Article III standing requirements and the prudential standing policies discussed in the *International Gamco* case (Opening Br. at 5), what becomes clear upon a brief review is that Saint-Gobain is actually the one that misses the point when it conflates these two different doctrines.

A.    **As an exclusive licensee, it is undisputed that Siemens has constitutional standing.**

A review of Saint-Gobain's brief reveals that even Saint-Gobain does not dispute that Siemens has the right to bring this patent infringement suit against Saint-Gobain – *i.e.*, that Siemens has constitutional standing. *See* Saint-Gobain Br. at 5, citing Nov. 9, 2007 letter (*"the*

3

*patent statutes give* both *Siemens* and STC *the right to sue* for patent infringement.").[1]  That

concession by Saint-Gobain was unavoidable under both Federal Circuit and Supreme Court

precedent.

Constitutional standing requires showing (1) an injury that is (2) caused by the

defendant's conduct and which (3) can be redressed by the court.  *See Lujan v. Defenders of*

*Wildlife*, 504 U.S. 555, 560-61 (1992); *see also Intellectual Prop. Dev., Inc. v. TCI Cablevision*

*of Cal., Inc.*, 248 F.3d 1333, 1346 (Fed. Cir. 2001).  The Federal Circuit has repeatedly held that

a party who is granted exclusive rights to practice a patent—what the Federal Circuit refers to as

an "exclusive license"—suffers a legally-sufficient injury as a result of the infringer's conduct,

and that this injury can be redressed through a patent infringement suit.  *See, e.g., Morrow v.*

*Microsoft Corp.*, 499 F.3d 1332, 1340 (Fed. Cir. 2007) ("Grant of an exclusive license to make,

use, or sell the patented invention carries with it the right to prevent others from practicing the

invention."); *Propat Int'l Corp. v. Rpost, Inc.*, 473 F.3d 1187, 1193 (Fed. Cir. 2007) (whether the

patent owner must be joined in a suit with an exclusive licensee would be a "'prudential'

requirement [and] not a constitutional requirement based on Article III limitations").  The

Federal Circuit contrasts that with a party who is merely granted a non-exclusive license to

practice an invention.  *Id.* ("By contrast [to an exclusive licensee], a bare licensee, *i.e.*, a party

with only a covenant from the patentee that it will not be sued for infringing the patent rights,

lacks [constitutional] standing to sue third parties for infringement of the patent.").  Such non-

---

[1]    Saint-Gobain similarly concedes that Siemens is at least *a* rightful plaintiff when it
       acknowledges that its purported standing deficiency could be cured upon the "joinder of
       [Schlumberger]," the patentee.    (Opening Br. at 5-6 ("Absent the joinder of
       [Schlumberger], this action should not proceed ....").) In other words, even Saint-Gobain
       acknowledges that any alleged standing deficiency is not a constitutional one, but instead
       that its standing arguments are solely based upon purported prudential concerns.

exclusive licensees lack constitutional standing because they – unlike Siemens here – have no right to exclude others from practicing the patented invention and therefore do not suffer any cognizable injury as a result of a third party's infringement.[2]

But in this case, Siemens is the *exclusive* licensee of the '080 patent, because Schlumberger granted Siemens the exclusive right to make, use, sell, and even sublicense the invention of the '080 patent. (Ex. B, Exclusive License § 2.2-2.3.) The fact that Schlumberger retained a limited right to practice the invention in the narrow field of oil and gas drilling uses – none of which are impacted in any way by Saint-Gobain's sales for use in PET scanners – does not alter Siemens' status as an exclusive licensee in any way, because it does not negate the injury caused to Siemens' by third party infringers, such as Saint-Gobain. *See, e.g., Weinar v. Rollform Inc.*, 744 F.2d 797, 806-07 (Fed. Cir. 1984) (constitutional standing found where licensee merely had exclusive right to sell, even though licensor retained exclusive right to make, use, and sublicense); *Propat Int'l Corp.*, 473 F.3d at 1191 (finding fact that patentee retains some rights "does not necessarily defeat what would otherwise be a transfer of all substantial rights in the patent."). Indeed, Saint-Gobain refers to Siemens as an "exclusive licensee" throughout its brief, but apparently does not appreciate the consequence of that fact—*i.e.*, that Siemens has constitutional standing to assert the '080 patent as a plaintiff.

---

[2]    As a result of the absence of any injury, a non-exclusive licensee lacks constitutional standing and thus cannot bring a patent infringement claim even if the licensor and patent owner is a co-plaintiff. That is not the situation here and Saint-Gobain admits as much.

**B.    Siemens also has standing under the prudential standing doctrine.**

**1.    Prudential standing concerns do not exist on these facts.**

Whether an exclusive licensee must join the patent owner as a plaintiff in an infringement suit is a question of prudential standing, not constitutional standing. Indeed, the Federal Circuit's *International Gamco* decision that forms the basis for Saint-Gobain's motion addresses prudential standing, not constitutional standing. *Int'l Gamco*, 504 F.3d at 1276 (analyzing "prudential standing to sue for patent infringement"). Even when properly characterized as a prudential standing issue, Saint-Gobain's motion fails, as neither the doctrine of prudential standing nor the *International Gamco* decision requires the addition of Schlumberger as a party to this suit.

Under judicially-created principles of prudential standing, even when a plaintiff satisfies constitutional standing requirements, courts may consider whether that particular plaintiff should be allowed to bring suit. In the context of patent infringement suits, prudential standing is used to determine which exclusive licensees have sufficient rights to bring suit without joining the patent owner and which do not. *Intellectual Prop. Dev., Inc.*, 248 F.3d at 1348 ("The general principle . . . requiring that a patent owner be joined, either voluntarily or involuntarily, in any infringement suit brought by an exclusive licensee having fewer than all substantial rights is prudential rather than constitutional.").

That question of whether Siemens has all substantial rights necessary to proceed without joining Schlumberger is also incorrectly analyzed by Saint-Gobain. As the Federal Circuit recognized in *International Gamco* and the Supreme Court has consistently held since it first addressed this issue in *Waterman v. Mackenzie*, 138 U.S. 252 (1891), this Court must "focus[] on the rights actually transferred rather than on the often impressionistic distinction

between assignments and licenses" in order to determine whether Siemens holds the rights needed to bring suit alone. *Int'l Gamco*, 504 F.3d at 1279; *Waterman*, 138 U.S. at 256.

Here, while Siemens is the putative licensee, it is actually more akin to the patent owner in the cases cited by Saint-Gobain. Under the Supreme Court's guidance of "focusing on the rights actually transferred," a review of the Schlumberger/CTI agreement shows that Siemens holds the exclusive right to practice the patent in *all possible fields* other than the limited Schlumberger Retained Uses relating to oil and gas exploration. In reality, those limited "retained" uses are nothing more than a narrow, subject-matter license *back to* Schlumberger, with Siemens having carte blanche to practice the invention in all other fields, and even grant sublicenses as it sees fit. (Ex. B, Exclusive License § 2.3.)

Over a hundred years ago, this concept was addressed by the Supreme Court, when it ruled in *Waterman* that a license grant far narrower than that contained here (limited to two patented machines in one district) was a sufficient transfer to give the exclusive licensee standing – constitutional and prudential – to sue alone:

> For instance, a grant of an exclusive right to make, use and vend two patented machines within a certain district is an assignment, and gives the grantee the right to sue in his own name for an infringement within the district, because the right, although limited to making, using and vending two machines, excludes all other persons, even the patentee, from making, using or vending like machines within the district.

*Waterman*, 138 U.S. at 256. That principle – which the Federal Circuit in *International Gamco* called the "mainstay of Supreme Court patent standing jurisprudence" – remains in effect and applies with equal force here. Under Siemens' exclusive license, Siemens has the exclusive right to make, use or sell the patented LSO crystals for all applications but one, including medical imaging, while even the patentee Schlumberger itself is excluded from making, using or selling products in the field at issue in this case. As such, Siemens satisfies the "mainstay of patent

7

standing jurisprudence" under the Supreme Court's *Waterman* decision, and the prudential concerns of *International Gamco* are not implicated here.

Further and equally problematic for Saint-Gobain is the reasoning behind the cases addressing prudential standing challenges. As Saint-Gobain itself recognizes, those cases and this issue "turn[] on the question of whether 'a single act of infringement is likely to give rise to only one viable suit for infringement." Saint-Gobain Br. at 2 (quoting *Int'l Gamco*, 504 F.3d at 1279). This focus on <u>multiple suits</u> in *International Gamco* is the foundation of prudential standing concerns in the patent area. *See Int'l Gamco*, 504 F.3d at 1278 (licensee was not allowed to proceed alone because on those facts it "poses a substantial risk of multiple suits"); *id.* at 1280 ("these multiplicity problems . . . were foreseen by the Supreme Court in *Pope*"); *id.* at 1277 ("the [Supreme] Court's reasoning focused on the potential for multiple litigations against any one defendant and among the licensees themselves"); *see also Pope Mfg. Co. v. Gormully & Jeffery Mfg. Co.*, 144 U.S. 248, 250-52 (1892) (focusing on concern that dividing individual patent claims among different entities would subject infringers to "harass[ment] by a multiplicity of suits instead of one, and to successive recoveries of damages by different persons holding different portions of the patent-right.").[3]

In this case, however, ***there is a zero percent risk of multiple suits being filed against Saint-Gobain for the same acts***, and therefore the principle of prudential standing is not

---

[3]    Whereas in *Pope*, the parties carved up the different claims of a single patent, in International *Gamco*, the patentee and licensee essentially carved up a single field of use. The license at issue there was only for one type of game used by the New York Lottery. *Int'l Gamco*, 504 F.3d at 1279-80. As a result, the licensee could not exclude the patentee or anyone else from making or selling any other New York Lottery games – subjecting the accused infringer to multiple suits relating to the same infringing acts, rendering his license to provide less than all substantial rights and unable to bring suit without also joining the patentee. No such division of rights exists here.

implicated.   There can be no potential for multiple suits because Schlumberger has expressly

disclaimed its interest in and ability to bring such a suit separate from this one.   As such, there

can only be one suit over these acts of infringement, and Siemens need not join Schlumberger to

proceed with these claims.

> **2.      Schlumberger has expressly disclaimed any right it might have had to bring suit against Saint-Gobain for infringement of the '080 patent.**

Under section 9.1 of Siemens' license, Siemens has the right to file and control a

lawsuit against infringers whenever Schlumberger fails to do so.[4]   Schlumberger has expressly

disclaimed any intention to bring suit against Saint-Gobain for its infringement of the '080

patent.   Prior to filing this suit, Schlumberger informed Siemens that it would not pursue a

separate infringement suit against Saint-Gobain.   And even more recently, Schlumberger

unequivocally reaffirmed that it would not separately sue Saint-Gobain:

> Schlumberger was previously notified by Siemens Medical about Saint-Gobain's acts of patent infringement as identified in the referenced suit in the United States District Court for the District of Delaware.  Schlumberger has relied on Siemens Medical to enforce the US4,958,080 patent as those acts were and are outside the STC Retained Use under the parties' Exclusive Patent and Technology License Agreement. By this letter, Schlumberger reaffirms that it will not pursue Saint-Gobain in a separate action for the acts of infringement identified in the referenced suit.

(Ex. A, Nov. 26, 2007 Letter from Schlumberger to Siemens).

---

4      While Saint-Gobain notes that "Siemens does not have standing to bring suit until three months after notifying [Schlumberger] of an alleged infringement and [Schlumberger] has failed to file suit in its own name," it is unclear what Saint-Gobain is trying to prove with that statement.   At some level, the negative implication of that statement supports Siemens' ability to bring this suit, because the logical conclusion is that *after* those three months, Siemens would then have standing to bring suit.   But moreover, to the extent Saint-Gobain is suggesting to the contrary, let us be clear that Siemens did fully comply with the license provision by alerting Schlumberger and then bringing suit in its own name pursuant to the Agreement.

Schlumberger's statements in that letter eliminate any possibility that Saint-Gobain could face a multiplicity of suits for its infringement of the '080 patent and therefore quells any purported prudential standings concerns raised by Saint-Gobain. In fact, Schlumberger's letters would estop it from bringing the very sort of duplicative suit against Saint-Gobain that would be necessarily possible to trigger prudential standing concerns at all. *See A.C. Aukerman Co. v. R.L. Chaides Constr. Co.*, 960 F.2d 1020, 1041-43 (Fed. Cir. 1992) (en banc).[5]  In light of Schlumberger's unequivocal statement that it is relying on Siemens to pursue Saint-Gobain for these infringing acts and that it will not do so in a separate suit, there can be no prudential concern over multiple lawsuits.  As such, Siemens is fully within its rights to proceed alone against Saint-Gobain, as it is the exclusive licensee with all substantial rights and Saint-Gobain suffers no risk of multiple suits.  Because of that, joinder of Schlumberger is not necessary, and Saint-Gobain's motion should be denied. *Morrow*, 499 F.3d at 1340 ("When . . . prudential concerns are not at play in a particular case, joinder of the patentee is not necessary.").

---

[5]     In the context of patent infringement suits, the doctrine of equitable estoppel focuses on "conduct suggesting that the patentee will not enforce patent rights." *Wang Labs., Inc. v. Mitsubishi Elecs. Am., Inc.*, 103 F.3d 1571, 1581 (Fed. Cir. 1997).  Schlumberger's letters clearly amount to conduct suggesting that it will not enforce its patent rights other than by joining Siemens, if found legally necessary.  In the declaratory judgment context, such express statements have repeatedly been found to prevent any future attempt by a patentee to enforce a patent. *See, e.g., Super Sack Mfg. Corp. v. Chase Packaging Corp.*, 57 F.3d 1054, 1056 (Fed. Cir. 1995) (finding patentee's statement that it "will unconditionally agree not to sue Chase for infringement as to any claim of the patents-in-suit based upon the products currently manufactured and sold by Chase" was sufficient to strip court of jurisdiction); *Samsung Elecs. Co. v. Rambus, Inc.*, 398 F. Supp.2d 470, 476 (E.D. Va. 2005) ("When a patent holder covenants not to sue an alleged infringer in this manner, the patent holder is 'forever estopped' from asserting the liability of the alleged infringer.").

**C.    Dismissal would not be the appropriate result even if there were prudential concerns.**

Even if Saint-Gobain was right on the law or on the facts of this case – which it is not – Saint-Gobain's motion would still have to be denied because the remedy it seeks is wholly improper. Saint-Gobain overreaches well beyond any law on this issue and, indeed, its request for a dismissal with prejudice of Siemens' complaint based on prudential concerns has been directly rejected by the Federal Circuit. If Siemens' exclusive license was somehow deemed by the Court to be insufficient to satisfy prudential concerns, the appropriate remedy for that problem would be to join Schlumberger, not to dismiss Siemens' complaint. *Propat Int'l Corp.*, 473 F.3d at 1193 ("An action brought by the exclusive licensee [who lacks all substantial rights in the patent] alone may be maintained as long as the licensee joins the patent owner in the course of the litigation"); *Intellectual Prop. Dev., Inc.*, 248 F.3d at 1346 (rejecting the contention that "as an exclusive licensee having fewer than all substantial rights in the 202 patent, [plaintiff] . . . could not create standing, and thus jurisdiction, by simply joining [the patent owner] rather than by dismissing the case and refiling jointly with [the patent owner].").

Siemens has previously pointed out to Saint-Gobain that the "add Schlumberger" solution is contractually required of Schlumberger if the Court were to agree with Saint-Gobain's constitutional and prudential standing arguments – entirely mooting Saint-Gobain's argument. (Ex. C, Nov. 2 Letter from LoCascio to Whitmer). Although Saint-Gobain then waited over a month to file this motion, apparently that fact did not deter Saint-Gobain from reaching for the clouds by seeking dismissal with prejudice. To get to that result, the Court would have to ignore both common sense (Saint-Gobain admits that adding Schlumberger would solve this so-called problem) and the Court's prior schedule that currently still *allows* the addition of parties such as Schlumberger. (Sched. Order of Jun. 28, 2007 at ¶ 3.) To try to justify its motion, Saint-Gobain

11

is forced to ignore the fact that Schlumberger has already agreed to "join [Siemens] as a plaintiff if required by the law" in the license itself. (Ex. B, Exclusive License § 9.1(b).)   And in any event, Siemens would be entitled to join Schlumberger involuntarily even if Schlumberger did not voluntary agree to join the suit. *Indep. Wireless Tel. Co. v. Radio Corp. of Am.*, 269 U.S. 459, 469 (1926) ("[Patentee] who grants to another [an exclusive license] . . . must allow the use of his name as plaintiff in any action brought at the instance of the licensee."). Thus, there is no need (or basis) to dismiss Siemens' complaint, much less "with prejudice," even if this Court were to accept Saint-Gobain's flawed prudential standing argument. The simple addition of Schlumberger would moot the entire issue, and for the reasons given previously even that remedy is not necessary under the law and on these facts.

## CONCLUSION

For these reasons, Siemens respectfully submits that this Court should reject Saint-Gobain's arguments and deny its motion to dismiss.

MORRIS, NICHOLS, ARSHT & TUNNELL LLP

*/s/ Maryellen Noreika*

Jack B. Blumenfeld (#1014)
Maryellen Noreika (#3208)
1201 North Market Street
P.O. Box 1347
Wilmington, DE  19899
(302) 658-9200
mnoreika@mnat.com

OF COUNSEL:

Gregg F. LoCascio
Charanjit Brahma
Sean M. McEldowney
KIRKLAND & ELLIS LLP
655 15th Street, N.W.
Washington, D.C. 20005-5793
(202) 879-5000

December 14, 2007
1335955

*Attorneys for Plaintiff*
   *Siemens Medical Solutions USA, Inc.*

## CERTIFICATE OF SERVICE

I, the undersigned, hereby certify that on December 14, 2007, I electronically filed the foregoing with the Clerk of the Court using CM/ECF, which will send notification of such filing(s) to the following:

> Kelly E. Farnan, Esquire
> RICHARDS, LAYTON & FINGER, P.A.

I also certify that copies were caused to be served on December 14, 2007 upon the following in the manner indicated:

### BY ELECTRONIC MAIL and HAND DELIVERY

Kelly E. Farnan, Esquire
RICHARDS, LAYTON & FINGER, P.A.
One Rodney Square
Wilmington, DE  19801

### BY ELECTRONIC MAIL

Frederick L. Whitmer, Esquire
THELEN REID BROWN RAYSMAN & STEINER LLP
875 Third Avenue
New York, NY  10022

/s/ Maryellen Noreika

Maryellen Noreika (#3208)

## CERTIFICATE OF SERVICE

I, the undersigned, hereby certify that on December 28, 2007, I electronically filed the foregoing with the Clerk of the Court using CM/ECF, which will send notification of such filing(s) to the following:

Kelly E. Farnan, Esquire
RICHARDS, LAYTON & FINGER, P.A.

I also certify that copies were caused to be served on December 28, 2007 upon the following in the manner indicated:

### BY ELECTRONIC MAIL and HAND DELIVERY

Kelly E. Farnan, Esquire
RICHARDS, LAYTON & FINGER, P.A.
One Rodney Square
Wilmington, DE 19801

### BY ELECTRONIC MAIL

Frederick L. Whitmer, Esquire
THELEN REID BROWN RAYSMAN & STEINER LLP
875 Third Avenue
New York, NY 10022

*/s/ Maryellen Noreika*
Maryellen Noreika (#3208)