IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| SIEMENS MEDICAL SOLUTIONS USA, INC., | ) ) ) | **REDACTED** |
| Plaintiff/ Counterclaim-Defendant, | ) ) ) ) | **PUBLIC VERSION** |
| v. | ) ) | C.A. No. 07-190-SLR |
| SAINT-GOBAIN CERAMICS & PLASTICS, INC., | ) ) ) ) | JURY TRIAL DEMANDED |
| Defendant/Counterclaim-Plaintiff. | ) ) ) | |

**DEFENDANT'S REPLY TO SIEMENS' OPPOSITION TO
SAINT-GOBAIN'S MOTION TO DISMISS FOR LACK OF STANDING**

**INTRODUCTION**

Saint-Gobain Ceramics & Plastics, Inc. ("Saint-Gobain") submits this Reply in further support of its motion to dismiss this action on account of Siemens'[1] lack of standing.

As Saint-Gobain established in its original motion papers, Siemens did not acquire *all* substantial rights to the '080 Patent in the Field of Use License it received from STC. The direct and unavoidable consequence of that indisputable fact is that Siemens' lacks standing to maintain this action in the absence of STC. Indeed, for all its patronizing criticism of Saint-Gobain's motion, nothing in Siemens' opposition excuses or cures the failure of STC to be a party here. Siemens' elaborate explication of constitutional standing is of no real moment, for even if Siemens possesses constitutional standing, such a conclusion does not equate to prudential standing. The law is clear that even an exclusive licensee with sufficient interest in

---

[1] Capitalized terms not otherwise defined herein shall have the same meanings ascribed to them in Saint-Gobain's moving papers.

the patent to have Article III standing lacks so-called *prudential* standing to sue in its own name, absent the patentee, if that licensee fails---as Siemens here---to possess *all* substantial rights to the patent. *See, e.g., Independent Wireless Telegraphic Co. v. Radio Corp. of America*, 269 U.S. 459, 469 (1926); *Propat Int'l Corp. v. RPOST, Inc.*, 473 F.3d 1187, 1193 (Fed. Cir. 2007); *Prima Tek II, L.L.C. v. A-Roo Co.*, 222 F.3d 1372, 1377 (Fed. Cir. 2000). This action accordingly cannot, and should not, proceed.

Siemens' opposition papers are thus more significant for what they fail to show, namely, that Siemens possesses sufficient rights in the '080 Patent to support prudential standing. Siemens' argument to the effect that STC's letter to Siemens, expressing disinterest in bringing suit against Saint-Gobain, somehow excuses or justifies STC's absence, misses the point and is unsupported by competent authority. To the contrary, and as shown more fully below, prevailing law requires that this Court dismiss this action by reason of Siemens' lack of standing.

## ARGUMENT

I. **SIEMENS DOES NOT POSSESS SUFFICIENT RIGHTS TO THE '080 PATENT TO SUSTAIN PRUDENTIAL STANDING**

The determinative question on this motion remains whether Siemens has demonstrated prudential standing in light of the Federal Circuit's ruling in *Int'l Gamco, Inc. v. Multimedia Games, Inc.*, 504 F.3d 1273 (Fed. Cir. 2007). The existence, *vel non*, of Siemens' prudential standing turns on answers to the questions: 1) Does Siemens hold *all* substantial rights to the '080 Patent? 2) Have STC's actions foreclosed a second suit alleging patent infringement of the '080 Patent? For Siemens to have prudential standing to sue for infringement in its own name, absent joinder by STC, both questions must be answered in the affirmative. As Saint-Gobain has

already demonstrated, the answer to *both* of these questions is in the negative, requiring the dismissal of this action. Nothing contained in Siemens' opposition papers alters that conclusion.

A.  Siemens' Response Actually Confirms that Siemens Does not Hold *All* Substantial Rights to the '080 Patent.

The fact that Siemens inquired of STC,

STC's interest in a suit against Saint-Gobain, proves conclusively that Siemens is well aware that  REDACTED

Otherwise, there was neither rhyme nor reason to the interchange. Thus, Siemens' own actions concede the fact that there is risk of a second suit,  REDACTED

Siemens has provided no authority holding that a licensee possesses all substantial rights to a patent where, as here,  REDACTED

Siemens' failure to bring forth any such authority is understandable, for there is none, but Siemens bears the burden of making such a showing to sustain its claims of standing. *See Fieldturf, Inc v Sw. Recreational Indus., Inc.*, 357 F.3d 1266, 1268 (Fed. Cir. 2004) (patentee claiming standing to enforce a patent against third parties because it is an exclusive licensee "has the burden to provide evidence endowing it with all substantial rights in the patent.").

Siemens' reliance on *Propat Int'l Corp.*  REDACTED  REDACTED  is substantially misplaced. Siemens cites *Propat Int'l Corp.* for the proposition that the "fact that patentee retains some rights 'does not necessarily defeat what would otherwise be a transfer of all substantial rights in the patent.'" Siemens' Response, D.I. 71, at 5. The generality of that assertion hardly addresses the specifics of this case. In *Propat Int'l Corp.*, the retained rights to which the Court referred were *not*

3

substantial rights as they are here. What was retained there was only "a right to a portion of the proceeds of the commercial exploitation of the patent" which did "not necessarily defeat what would otherwise be a transfer of all substantial rights in the patent." *Propat Int'l Corp.*, 473 F.3d at 1191.

REDACTED

Siemens nonetheless urges that it can somehow compensate for its failure to have STC as a party here by citing *Propat Int'l Corp.* as standing for the proposition that "whether the patent owner must be joined in a suit with an exclusive licensee would be a 'prudential requirement [and] not a constitutional requirement based on Article III limitations.'" (internal citations omitted). Siemens' Response, D.I. 71, at 4. However, the court did not end its sentence there as

Siemens' lack of an ellipsis would lead this Court to believe. The full quote reads:

> We explained that the requirement that the exclusive licensee must normally join the patent owner in any suit on the patent is a "prudential" requirement, not a constitutional requirement based on Article III limitations, and that an action brought by the exclusive licensee alone may be maintained *as long as the licensee joins the patent owner in the course of the litigation*.

*Propat Int'l Corp.*, 473 F.3d at 1193 (emphasis added).

*Propat Int'l Corp.* thus supports the relief that Saint-Gobain seeks in this motion. To suggest, as Siemens does, that an exclusive licensee, like Siemens here, which has not been granted *all* substantial rights to a patent can maintain a patent infringement case without joinder of the patent owner, misreads *Propat Int'l*. Saint-Gobain's position is further supported by *Fieldturf, Inc.*, 357 F.3d at 1268, where the Court said: "[a] purported exclusive licensee must show that he possesses 'all substantial rights in the patent.' Lacking all substantial rights, he may bring suit against 'third parties only as a co-plaintiff with the patentee' or a successor in title to the patentee. Otherwise, he lacks standing." (internal citations omitted); *See Prima Tek II*, 222 F.3d at 1377 ("As a general rule, this court continues to adhere to the principle set forth in *Independent Wireless* that a patentee should be joined, either voluntarily or involuntarily, in any infringement suit brought by an exclusive licensee."). These cases make manifest that Siemens lacks prudential standing to maintain this suit in the absence of the patent holder, STC.

    **B.    Siemens Has Failed to Foreclose the Threat of Multiple Viable Suits for the Same Acts of Alleged Infringement.**

Armed with nothing more than a letter from STC, Siemens opines that "[i]n this case . . . there is zero percent risk of multiple suits being filed against Saint-Gobain for the same acts." Siemens' Response, D.I. 71, at 8. Siemens' self-serving and unsubstantiated opinion, however,

does not rise to the level of a legally enforceable conclusion.[2]

REDACTED

Siemens urges that a letter sent from STC to Siemens in which STC states that it "will not pursue Saint-Gobain in a separate action for acts of infringement identified in the referenced suit," Siemens' Response, D.I. 66, at 9, should conclusively answer the concern of a second action. That misreads the import of that letter. There is simply no basis in that letter from which to formulate a binding estoppel, contrary to Siemens' wishful reading of the letter. Indeed, an informed reading of the cases cited by Siemens illustrates that it is *not* the licensee who must be shown to have relied on the patentee's promise not to sue, but rather the defendant who must have relied on the promise for an estoppel to apply.

For example, in *A.C. Aukerman Co. v. R.L. Chaides Constr. Co.*, 960 F.2d 1020, 1041 (Fed. Cir. 1992), the court prescribed the three elements of equitable estoppel: "[1] The actor, who usually must have knowledge of the true facts, communicates something in a misleading way, either by words, conduct or silence. [2] The other party relies upon that communication. [3] And the other would be harmed materially if the actor is later permitted to assert any claim inconsistent with his earlier conduct." Those conditions are not met here. There is simply no

---

[2] It is also true, respectfully, in the absence of STC's appearance before this Court, even this Court's agreement with Siemens' prediction would not bind STC, thereby jeopardizing Saint-Gobain, to its prejudice, respecting the prospect of further litigation. And in any event, a truly binding conclusion to that effect would further litigation even to determine whether the second action could proceed. These circumstances present precisely the unacceptable risks that concepts of prudential standing were intended to prevent.

basis to suggest that Saint-Gobain has "relied" on STC's letter to Siemens; nor is there reason to infer that Saint-Gobain has done so.

Siemens' argument that STC is somehow estopped from bringing suit against Saint-Gobain on the basis of this letter relies principally on *Super Shack Mfg. Corp. v. Chase Packaging Corp.*, 57 F.3d 1054 (Fed. Cir. 1995) and *Samsung Elecs. Co. v. Rambus, Inc.*, 398 F. Supp.2d 470 (E.D. Va. 2005). The facts in those cases are worlds apart from the situation here. All were declaratory judgment cases in which the patentee as a party to the action made a covenant with the alleged infringer in connection with those proceedings *not* to sue. Those courts therefore held that "[w]hen a patent holder covenants not to sue an alleged infringer in this manner, [by filing a covenant not to sue as a strategy against an action for a declaratory judgment] the patent holder is 'forever estopped' from asserting the liability of the alleged infringer." *Samsung Elecs. Co.*, 398 F. Supp.2d at 476 (*citing Super Shack Mfg. Corp.*, 57 F.3d at 1058). No analogous covenant has been made here.

In *Super Shack Mfg. Corp.*, Super Shack sued Chase for allegedly infringing its patents and Chase counterclaimed for declaratory judgment. Super Shack made a promise in the form of a statement of its counsel in motion papers and briefs that it "unconditionally agree[d] not to sue Chase for infringement as to any claim of the patents-in-suit . . . ." *Id.* at 1056. After making the promise not to sue, Super Shack moved for dismissal of the declaratory judgment counterclaim for lack of subject matter jurisdiction. The court stated that "a patentee defending against an action for a declaratory judgment of invalidity can divest the trial court of jurisdiction over the case by filing a covenant not to assert the patent at issue against the putative infringer with respect to any of its past, present, or future acts . . . ." *Id.* at 1058. Those facts cinched the conclusion that there was an estoppel. Here, STC is not a party; this is not a declaratory

7

judgment action, and the patentee has made no covenant with Saint-Gobain or with this court promising that it will not bring an action for patent infringement against Saint-Gobain. The plain fact is that there is no binding basis upon which to assuage the risk of such a separate action against Saint-Gobain.

Here, as in *Int'l Gamco*, the plaintiff lacks standing to sue in its own name without joining the patentee. This court should accordingly dismiss this action in the absence of STC must join if the case is to proceed. As the Supreme Court has previously held:

> The presence of the owner of the patent as a party is indispensable not only to give jurisdiction under the patent laws but also . . . to enable the alleged infringer to respond in one action to all claims of infringement for his act, and thus either to defeat all claims in the one action, or by satisfying one adverse decree to bar all subsequent actions.

*Independent Wireless Telegraphic Co. v. Radio Corp. of America*, 269 U.S. 459, 469.

## CONCLUSION

For the foregoing reasons, and for the reasons set forth in Saint-Gobain's initial papers, Saint-Gobain's motion to dismiss for lack of standing should be granted in all respects.

OF COUNSEL

Frederick L. Whitmer
John C. Ohman
Thelen Reid Brown Raysman & Steiner LLP
875 Third Avenue
New York, New York 10022
(212) 603-2000

Dated: December 21, 2007

*Kelly E. Farnan* (signature)
Jesse A. Finkelstein (#1090)
Finkelstein@rlf.com
Jeffrey L. Moyer (#3309)
Moyer@rlf.com
Kelly E. Farnan (#4395)
Farnan@rlf.com
Richards, Layton & Finger, P.A.
One Rodney Square, P.O. Box 551
Wilmington, DE 19899
(302) 651-7700
*Attorneys for Defendant/Counterclaim-Plaintiff Saint-Gobain Ceramics & Plastics, Inc.*

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

CERTIFICATE OF SERVICE

I hereby certify that on December 21, 2007, I electronically filed the foregoing document with the Clerk of the Court using CM/ECF which will send notification of such filing to the following and which has also been served as noted:

BY E-MAIL AND HAND DELIVERY

Jack B. Blumenfeld
Maryellen Noreika
Morris, Nichols, Arsht & Tunnell LLP
1201 North Market Street
Wilmington, DE  19899

I hereby certify that on December 21, 2007, the foregoing document was sent to the following non-registered participants in the manner indicted:

BY E-MAIL AND FEDERAL EXPRESS

Gregg F. LoCascio
Charanjit Brahma
Sean M. McEldowney
Kirkland & Ellis LLP
655 15th Street, N.W.
Washington, DC  20005-5793

Kelly E. Farnan (#4395)

RLF1-3151112-1

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

**CERTIFICATE OF SERVICE**

I hereby certify that on January 15, 2008, I electronically filed the foregoing document with the Clerk of the Court using CM/ECF which will send notification of such filing to the following and which has also been served as noted:

**BY E-MAIL AND HAND DELIVERY**

Jack B. Blumenfeld
Maryellen Noreika
Morris, Nichols, Arsht & Tunnell LLP
1201 North Market Street
Wilmington, DE 19899

I hereby certify that on January 15, 2008, the foregoing document was sent to the following non-registered participants in the manner indicted:

**BY E-MAIL AND FEDERAL EXPRESS**

Gregg F. LoCascio
Charanjit Brahma
Sean M. McEldowney
Kirkland & Ellis LLP
655 15th Street, N.W.
Washington, DC 20005-5793

_/s/ Kelly E. Farnan_
Kelly E. Farnan (#4395)

RLF1-3151112-1