IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| SIEMENS MEDICAL SOLUTIONS USA, INC., | ) ) |
| Plaintiff/ Counterclaim-Defendant, | ) ) ) |
| | ) C.A. No. 07-190-SLR |
| v. | ) ) |
| | ) JURY TRIAL DEMANDED |
| SAINT-GOBAIN CERAMICS & PLASTICS, INC., | ) ) ) |
| Defendant/Counterclaim-Plaintiff. | ) ) ) |

## NOTICE OF DEPOSITION AND SUBPOENA DUCES TECUM DIRECTED TO JOHNS HOPKINS UNIVERSITY

PLEASE TAKE NOTICE that, pursuant to Rules 30(b)(6) and 45 of the Federal Rules of Civil Procedure, defendant Saint-Gobain Ceramics & Plastics, Inc. will take the deposition of Johns Hopkins University at the offices of Thelen Reid Brown Raysman & Steiner, located at 701 Eighth Street, NW, Washington, DC 20001, on March 28, 2008 at 9:00 a.m. or upon such adjourned dates as the parties may agree. The deposition will be taken under the Federal Rules of Civil Procedure and the District of Columbia Local Rules for the purpose of discovery, for use at trial and for such other purposes as are permitted at law. The subpoena requires Johns Hopkins University to designate one or more persons to testify on its behalf regarding the matters set forth in Schedule A of the Subpoena attached hereto as Exhibit 1. The deposition will be taken at the offices of Thelen Reid Brown Raysman & Steiner, having an address at 701 Eighth Street, NW, Washington, DC 20001, before an officer authorized by the laws of the United States to administer oaths and will be recorded by stenographic means, and will continue day to day until concluded. You are invited to attend and examine the witness(es).

RLF1-3263189-1

The subpoena further directs Johns Hopkins University to produce on March 28, 2008 at the offices of Thelen Reid Brown Raysman & Steiner, having an address at 701 Eighth Street, NW, Washington, DC 20001, all documents in its possession, custody, or control, which are listed and/or described in Schedule B of the Subpoena attached hereto as Exhibit 1. Such production will be for the purpose of inspection and copying, as desired. You are invited to monitor this production.

*Kelly E. Farnan* (signature)

OF COUNSEL:

Frederick L. Whitmer
John C. Ohman
Thelen Reid Brown Raysman & Steiner LLP
875 Third Avenue
New York, NY 10022
(212) 603-2000

Dated: March 14, 2008

Jesse A. Finkelstein (#1090)
Finkelstein@rlf.com
Jeffrey L. Moyer (#3309)
Moyer@rlf.com
Kelly E. Farnan (#4395)
Farnan@rlf.com
Richards, Layton & Finger, P.A.
One Rodney Square, P.O. Box 551
Wilmington, DE  19899
(302) 651-7700
*Attorneys for Defendant/ Counterclaim-Plaintiff Saint-Gobain Ceramics & Plastics, Inc.*

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

CERTIFICATE OF SERVICE

I hereby certify that on March 14, 2008, I electronically filed the foregoing document with the Clerk of the Court using CM/ECF which will send notification of such filing to the following and which has also been served as noted:

BY E-MAIL AND HAND DELIVERY

Jack B. Blumenfeld
Maryellen Noreika
Morris, Nichols, Arsht & Tunnell LLP
1201 North Market Street
Wilmington, DE 19899

I hereby certify that on March 14, 2008, the foregoing document was sent to the following non-registered participants in the manner indicted:

BY E-MAIL and FEDERAL EXPRESS

Gregg F. LoCascio
Charanjit Brahma
Sean M. McEldowney
Kirkland & Ellis LLP
655 15th Street, N.W.
Washington, DC 20005-5793

Kelly E. Farnan (#4395)

RLF1-3151112-1

# EXHIBIT 1

# Issued by the
## UNITED STATES DISTRICT COURT
### FOR THE DISTRICT OF MARYLAND

SIEMENS MEDICAL SOLUTIONS USA, INC.

V.

SAINT-GOBAIN CERAMICS & PLASTICS, INC.

**SUBPOENA IN A CIVIL CASE**

Case Number:[1] 07-190 (SLR)
DISTRICT OF DELAWARE

TO:
Johns Hopkins University
Attn: Legal Department
Administration 400
600 N. Wolfe Street
Baltimore, MD
21282

☐ YOU ARE COMMANDED to appear in the United States District court at the place, date, and time specified below to testify in the above case.

| PLACE OF TESTIMONY | COURTROOM |
|---|---|
|  |  |
|  | DATE AND TIME |
|  |  |

☒ YOU ARE COMMANDED to appear at the place, date, and time specified below to testify at the taking of a deposition in the above case.

| PLACE OF DEPOSITION | DATE AND TIME |
|---|---|
| Thelen Reid Brown Raysman & Steiner LLP<br>701 Eighth Street, NW<br>Washington, DC 20001 | April 2, 2008 at 9:00 a.m. |

☒ YOU ARE COMMANDED to produce and permit inspection and copying of the following documents or objects at the place, date, and time specified below (list documents or objects):
See Schedule B

| PLACE | DATE AND TIME |
|---|---|
| Thelen Reid Brown Raysman & Steiner LLP<br>701 Eighth Street, NW<br>Washington, DC 20001 | April 2, 2008 at 9:00 a.m. |

☐ YOU ARE COMMANDED to permit inspection of the following premises at the date and time specified below.

| PREMISES | DATE AND TIME |
|---|---|
|  |  |

Any organization not a party to this suit that is subpoenaed for the taking of a deposition shall designate one or more officers, directors, or managing agents, or other persons who consent to testify on its behalf, and may set forth, for each person designated, the matters on which the person will testify. Federal Rule of Civil Procedure 30(b)(6).

American LegalNet, Inc.
www.FormsWorkflow.com

AO88 (Rev. 12/07) Subpoena in a Civil Case

| ISSUING OFFICER'S SIGNATURE AND TITLE (INDICATE IF ATTORNEY FOR PLAINTIFF OR DEFENDANT) | DATE |
|---|---|
| *[signature]* | March 14, 2008 |

ISSUING OFFICER'S NAME, ADDRESS AND PHONE NUMBER

Frederick L. Whitmer
Thelen Reid Brown Raysman & Steiner LLP
875 Third Avenue
New York, New York 10022
(212) 603-2000

(See Federal Rule of Civil Procedure 45 (c), (d), and (e), on next page)

---

[1] If action is pending in district other than district of issuance, state district under case number.

American LegalNet, Inc.
www.FormsWorkflow.com

| PROOF OF SERVICE | |
|---|---|
| DATE | PLACE |

SERVED

| SERVED ON (PRINT NAME) | MANNER OF SERVICE |
|---|---|

| SERVED BY (PRINT NAME) | TITLE |
|---|---|

## DECLARATION OF SERVER

I declare under penalty of perjury under the laws of the United States of America that the foregoing information contained in the Proof of Service is true and correct.

Executed on _____
DATE

_____
SIGNATURE OF SERVER

_____
ADDRESS OF SERVER

---

Federal Rule of Civil Procedure 45 (c), (d), and (e), as amended on December 1, 2007:

(c) PROTECTING A PERSON SUBJECT TO A SUBPOENA.
(1) Avoiding Undue Burden or Expense; Sanctions. A party or attorney responsible for issuing and serving a subpoena must take reasonable steps to avoid imposing undue burden or expense on a person subject to the subpoena. The issuing court must enforce this duty and impose an appropriate sanction — which may include lost earnings and reasonable attorney's fees — on a party or attorney who fails to comply.
(2) Command to Produce Materials or Permit Inspection.
(A) Appearance Not Required. A person commanded to produce documents, electronically stored information, or tangible things, or to permit the inspection of premises, need not appear in person at the place of production or inspection unless also commanded to appear for a deposition, hearing, or trial.
(B) Objections. A person commanded to produce documents or tangible things or to permit inspection may serve on the party or attorney designated in the subpoena a written objection to inspecting, copying, testing or sampling any or all of the materials or to inspecting the premises — or to producing electronically stored information in the form or forms requested. The objection must be served before the earlier of the time specified for compliance or 14 days after the subpoena is served. If an objection is made, the following rules apply:
(i) At any time, on notice to the commanded person, the serving party may move the issuing court for an order compelling production or inspection.
(ii) These acts may be required only as directed in the order, and the order must protect a person who is neither a party nor a party's officer from significant expense resulting from compliance.
(3) Quashing or Modifying a Subpoena.
(A) When Required. On timely motion, the issuing court must quash or modify a subpoena that:
(i) fails to allow a reasonable time to comply;
(ii) requires a person who is neither a party nor a party's officer to travel more than 100 miles from where that person resides, is employed, or regularly transacts business in person — except that, subject to Rule 45(c)(3)(B)(iii), the person may be commanded to attend a trial by traveling from any such place within the state where the trial is held;
(iii) requires disclosure of privileged or other protected matter, if no exception or waiver applies; or
(iv) subjects a person to undue burden.
(B) When Permitted. To protect a person subject to or affected by a subpoena, the issuing court may, on motion, quash or modify the subpoena if it requires:
(i) disclosing a trade secret or other confidential research, development, or commercial information;
(ii) disclosing an unretained expert's opinion or information that does not describe specific occurrences in dispute and results from the expert's study that was not requested by a party; or
(iii) a person who is neither a party nor a party's officer to incur substantial expense to travel more than 100 miles to attend trial
(C) Specifying Conditions as an Alternative. In the circumstances described in Rule 45(c)(3)(B), the court may, instead of quashing or modifying a subpoena, order appearance or production under specified conditions if the serving party:

(i) shows a substantial need for the testimony or material that cannot be otherwise met without undue hardship; and
(ii) ensures that the subpoenaed person will be reasonably compensated.

(d) DUTIES IN RESPONDING TO A SUBPOENA.
(1) Producing Documents or Electronically Stored Information. These procedures apply to producing documents or electronically stored information:
(A) Documents. A person responding to a subpoena to produce documents must produce them as they are kept in the ordinary course of business or must organize and label them to correspond to the categories in the demand.
(B) Form for Producing Electronically Stored Information Not Specified. If a subpoena does not specify a form for producing electronically stored information, the person responding must produce it in a form or forms in which it is ordinarily maintained or in a reasonably usable form or forms.
(C) Electronically Stored Information Produced in Only One Form. The person responding need not produce the same electronically stored information in more than one form.
(D) Inaccessible Electronically Stored Information. The person responding need not provide discovery of electronically stored information from sources that the person identifies as not reasonably accessible because of undue burden or cost. On motion to compel discovery or for a protective order, the person responding must show that the information is not reasonably accessible because of undue burden or cost. If that showing is made, the court may nonetheless order discovery from such sources if the requesting party shows good cause, considering the limitations of Rule 26(b)(2)(C). The court may specify conditions for the discovery.
(2) Claiming Privilege or Protection.
(A) Information Withheld. A person withholding subpoenaed information under a claim that it is privileged or subject to protection as trial-preparation material must:
(i) expressly make the claim; and
(ii) describe the nature of the withheld documents, communications, or tangible things in a manner that, without revealing information itself privileged or protected, will enable the parties to assess the claim.
(B) Information Produced. If information produced in response to a subpoena is subject to a claim of privilege or of protection as trial-preparation material, the person making the claim may notify any party that received the information of the claim and the basis for it. After being notified, a party must promptly return, sequester, or destroy the specified information and any copies it has; must not use or disclose the information until the claim is resolved; must take reasonable steps to retrieve the information if the party disclosed it before being notified; and may promptly present the information to the court under seal for a determination of the claim. The person who produced the information must preserve the information until the claim is resolved.

(e) CONTEMPT.
The issuing court may hold in contempt a person who, having been served, fails without adequate excuse to obey the subpoena. A nonparty's failure to obey must be excused if the subpoena purports to require the nonparty to attend or produce at a place outside the limits of Rule 45(c)(3)(A)(ii).

American LegalNet, Inc.
www.FormsWorkflow.com

UNITED STATES DISTRICT COURT
DISTRICT OF DELAWARE

| | |
|---|---|
| SIEMENS MEDICAL SOLUTIONS USA,  )<br>  )<br>Plaintiff,  )<br>  )<br>v.  )<br>  )<br>SAINT-GOBAIN CERAMICS &  )<br>PLASTICS, INC.,  )<br>  )<br>Defendant.  )<br>  )<br>  )<br>  )<br>  ) | Civil Action No. 07-190-(SLR) |

**DEPOSITION AND SUBPOENA DUCES TECUM
DIRECTED TO JOHNS HOPKINS UNIVERSITY**

Definitions and Instructions:

The following particular terms shall have the meanings set forth below:

1. "Person" means any natural person, corporation, partnership, limited partnership, limited liability company, association, organization, joint venture, governmental unit or entity, and the directors, officers, partners, members, employees, agents, representatives and attorneys of any such person.

2. "You," "your" or "Johns Hopkins University" each mean the faculty and staff of Johns Hopkins University and Johns Hopkins Hospital, and include all of its predecessors, successors, subsidiaries, divisions, departments, or other operating units, parents, affiliates and sister entities and all of its present and former directors, officers, employees, agents, representatives and attorneys, whether employed or retained on a full-time, part-time,

4

independent contract, commission or other basis, and any other person acting on their behalf and, as to all, past or present.

       3.     "Siemens" means Plaintiff Siemens Medical Solutions USA, Inc., and includes all of its predecessors, successors, subsidiaries, divisions, departments, or other operating units, parents, affiliates and sister entities and all of its present and former directors, officers, employees, agents, representatives and attorneys, whether employed or retained on a full-time, part-time, independent contract, commission or other basis, and any other person acting on their behalf and, as to all, past or present.

       4.     "Defendant" or "Saint-Gobain" each mean Defendant Saint-Gobain Ceramics & Plastics, Inc., and include all of its predecessors, successors, subsidiaries, divisions, departments, or other operating units, parents, affiliates and sister entities and all of its present and former directors, officers, employees, agents, representatives and attorneys, whether employed or retained on a full-time, part-time, independent contract, commission or other basis, and any other person acting on their behalf and, as to all, past or present.

       5.     The term "Infringe" or "Infringement" shall refer to and mean such activities as set forth in 35 U.S.C. §271, including without limitation making, using, offering to sell, or selling any patented invention, within the United States, or importing into the United States any patented invention during the term of the patent therefore; actively inducing infringement of a patent; or offering to sell or selling within the United States or importing into the United States a component of a patented machine, manufacture, combination, or composition, or a material or apparatus for use in practicing a patented process, constituting a material part of the invention.

6. "LSO" means lutetium oxyorthosilicate, including, without limitation, cerium-doped lutetium oxyorthosilicate crystals of the composition disclosed in the '080 Patent.

7. "LYSO" means lutetium-yttrium oxyorthosilicate, including, without limitation, cerium-doped lutetium-yttrium oxyorthosilicate crystals of the composition disclosed in the '420 Patent.

8. "PET" means positron emission tomography.

9. "PET Scanner" means any positron emission tomography scanner, including, but not limited to computed tomography scanners.

10. "Gemini TF PET/CT Scanner" means Philips' PET computed tomography scanner that incorporates and/or utilizes LYSO crystals and provides the requisite timing resolution to operate as a time-of-flight PET scanner, including, without limitation, the "Gemini TF" or "Gemini Raptor" Scanner.

11. "Documents" shall have the meaning ascribed by Fed. R. Civ. P., Rule 34 and all forms of writings as defined in Fed. R. Evid. 1001(1), and includes any reduction to tangible form, including any written, recorded or filmed matter and any computer, magnetic or optical memory or storage, including originals, copies, drafts, revisions, or supplements, and each non-identical copy or draft thereof (whether different from the original because of notes made on such copy or otherwise), in Siemens' possession, custody or control, including, but not limited to, the following: diaries, laboratory notebooks, specifications and bills of materials, charts, diagrams and drawings, patents, patent applications pending or abandoned, letters, correspondence, cable-grams and telegrams, teletypes, cables, wire transmissions, memoranda or reports, opinions, contracts, agreements, notes, proposals, log book, transcripts, press releases, records, reports and summaries of negotiations, analyses, summaries, surveys, appraisals,

evaluations, publications, writings related to interviews, meetings or conversations, audio, video or electronic recordings (or transcripts thereof), computer software and other material recorded in any manner on a computer, computer tape, computer disk, or CD-ROM (both in source code and executable form), electronic mail, copies and print-outs of such mail and any other type of electronic transmission or communication, computer hard drive or floppy discs, any other computer storage medium, desk calendars, microfiche, facsimile transmission, newsletters, photographs, advertisements in all media forms, promotional or marketing materials, pamphlets, catalogs and catalog sheets, circulars, trade letters, publicity, trade and product releases, press kits, brochures, packaging, instructions or procedural manuals, books, minutes, notices, notes appearing on any documents, sale sheets, sales records, including purchase orders and invoices, or other tangible sources of information, and data responsive to these Deposition Topics, whether such is printed, typed, photocopied, computer or electronically stored, or otherwise available as tangible material from any source, and of and kind, form, or nature, whether or not sent or received.

12. "Patent in suit" and "'080 Patent" each mean U.S. Patent No. 4,958,080.

13. "Chai patent" or "'420 Patent" each mean U.S. Patent No. 6,624,420.

14. "Concerning" and "relating" shall be construed in their broadest senses to require information which construe, comprise, concern, relate, pertain to, mention, explain, identify, describe, discuss, refer to (directly or indirectly), reflect, comment upon, or summarize the subject of the deposition topic.

15. "Including" shall refer to and mean "including without limitation."

16. The words "and" and "or" shall be construed conjunctively or disjunctively, whichever makes the Deposition Topic most inclusive.

17.  The use of the singular form of any word includes the plural and vice versa.

18.  The term "Communication" shall refer to and mean any form of oral or written interchange of facts, ideas, inquiries or otherwise, whether in person, by telephone, by facsimile, by telex, by electronic mail, or by any other medium.

8

## SCHEDULE A

Deposition Topics

1. Johns Hopkins University's knowledge of the circumstances for the proposed, actual or intended use (experimental or otherwise) of PET Scanners or other devices or machines provided or delivered by Siemens to Johns Hopkins University, whether jointly developed by Siemens and Johns Hopkins University or otherwise.

2. Johns Hopkins University's knowledge of the circumstances for the proposed, actual or intended use (experimental or otherwise) of PET Scanners or other devices or machines provided or delivered to Johns Hopkins University by any third party incorporating or using LYSO scintillation crystals and which party suggested the incorporation or use of LYSO scintillation crystals.

3. Johns Hopkins University's knowledge of the circumstances for the proposed, actual or intended use (experimental or otherwise) of PET Scanners or other devices or machines developed by Johns Hopkins University incorporating or using LYSO scintillation crystals and who suggested the incorporation and use of LYSO scintillation crystals.

4. Johns Hopkins University's knowledge of the circumstances for the proposed, actual or intended use (experimental or otherwise) of PET Scanners or other devices or machines provided or delivered to Johns Hopkins University by any third party incorporating or using both LSO and LYSO scintillation crystals.

5. Johns Hopkins University's knowledge of the circumstances for the proposed, actual or intended use (experimental or otherwise) of PET Scanners or other devices or machines developed by Johns Hopkins University incorporating or using both LSO and LYSO scintillation crystals.

6. Johns Hopkins University's knowledge Concerning reasons why Johns Hopkins University would use LYSO scintillation crystals as opposed to LSO scintillation crystals in any application.

7. Johns Hopkins University's knowledge Concerning reasons why Johns Hopkins University chose to use LYSO scintillation crystals in a PET Scanner.

8. Johns Hopkins University's knowledge Concerning studies, tests, performance specifications, analyses or opinions Concerning LYSO scintillation crystals and any machines or devices incorporating or using LYSO crystals from the time beginning with the earliest possible date of conception of the device or machine to the present.

9. Johns Hopkins University's knowledge Concerning studies, tests, performance specifications, analyses or opinions Concerning and/or comparing the properties and/or the uses of LSO scintillation crystals and LYSO scintillation crystals, including but not limited to LYSO crystals produced by Saint-Gobain.

10. Johns Hopkins University's knowledge Concerning studies, tests, performance specifications, analyses or opinions Concerning and/or comparing time-of-flight PET Scanners using LSO and/or LYSO scintillation crystals including but not limited to LYSO crystals produced by Saint-Gobain and the development of LSO and/or LYSO time-of-flight PET Scanners by Siemens.

11. Johns Hopkins University's knowledge pertaining to any studies, analyses or opinions concerning alleged infringement of the '080 Patent by Saint-Gobain or any other manufacturer or supplier of LYSO scintillation crystals.

10

12. Johns Hopkins University's knowledge pertaining to any studies, analyses or opinions concerning the concentration of yttrium required in an LYSO crystal sufficient for the LYSO crystal to embody the invention disclosed, or otherwise be covered by, the '420 Patent.

13. Johns Hopkins University's knowledge of the LYSO crystals incorporated in the Gemini TF PET/CT Scanner.

14. Communications between Johns Hopkins University and Siemens concerning the LYSO crystals incorporated in the Gemini TF PET/CT Scanner.

15. Communications between Johns Hopkins University and Siemens concerning the enforceability of the '420 Patent.

16. Communications between Johns Hopkins University and any other parties concerning the enforceability of the '420 Patent.

17. Communications between Johns Hopkins University and Siemens concerning this action or the subject matter thereof.

18. Communications between Johns Hopkins University and any other parties concerning this action or the subject matter thereof.

19. Communications between Johns Hopkins University and Siemens concerning Saint-Gobain.

20. Johns Hopkins University's knowledge concerning the conception, reduction to practice, diligence in reducing to practice, research, development, testing, modification, and experimental use of any of the subject matter disclosed or claimed by the '420 Patent.

21. Contracts or agreements, including master research agreements in which Johns Hopkins University is a party in any research partnership with Siemens.

22.  Any agreement or contract, including master research agreements and research partnerships Concerning or relating to LYSO scintillation technology to which Johns Hopkins University is a party from the time beginning with the earliest possible date of contact between the parties regarding the LYSO scintillation crystals to the present.

23.  Any agreements or contracts between Siemens and Johns Hopkins University concerning the '080 Patent or PET Scanners.

## SCHEDULE B

### DOCUMENTS & THINGS REQUESTS

1. All Documents Concerning Johns Hopkins University's knowledge of the circumstances for the proposed, actual or intended use (experimental or otherwise) of PET Scanners or other devices or machines provided or delivered by Siemens to Johns Hopkins University, whether jointly developed by Siemens and Johns Hopkins University or otherwise.

2. All Documents Concerning Johns Hopkins University's knowledge of the circumstances for the proposed, actual or intended use (experimental or otherwise) of PET Scanners or other devices or machines provided or delivered to Johns Hopkins University by any third party incorporating or using LYSO scintillation crystals and which party suggested the incorporation or use of LYSO scintillation crystals.

3. All Documents Concerning Johns Hopkins University's knowledge of the circumstances for the proposed, actual or intended use (experimental or otherwise) of PET Scanners or other devices or machines developed by Johns Hopkins University incorporating or using LYSO scintillation crystals and who suggested the incorporation and use of LYSO scintillation crystals.

4. All Documents Concerning Johns Hopkins University's knowledge of the circumstances for the proposed, actual or intended use (experimental or otherwise) of PET Scanners or other devices or machines provided or delivered to Johns Hopkins University by any third party incorporating or using both LSO and LYSO scintillation crystals.

5. All Documents Concerning Johns Hopkins University's knowledge of the circumstances for the proposed, actual or intended use (experimental or otherwise) of PET

13

Scanners or other devices or machines developed by Johns Hopkins University incorporating or using both LSO and LYSO scintillation crystals.

6. All documents Concerning Johns Hopkins University's knowledge Concerning reasons why Johns Hopkins University would incorporate or use LYSO scintillation crystals as opposed to LSO scintillation crystals in any application.

7. All documents Concerning Johns Hopkins University's knowledge Concerning reasons why Johns Hopkins University chose to incorporate or use LYSO scintillation crystals in a PET Scanner.

8. All Documents Concerning Johns Hopkins University's knowledge Concerning studies, tests, performance specifications, analyses or opinions Concerning LYSO scintillation crystals and any machines or devices incorporating or using LYSO crystals from the time beginning with the earliest possible date of conception of the device or machine to the present.

9. All Documents Concerning Johns Hopkins University's knowledge Concerning studies, tests, performance specifications, analyses or opinions Concerning and/or comparing the properties and/or the uses of LSO scintillation crystals and LYSO scintillation crystals, including but not limited to LYSO crystals produced by Saint-Gobain.

10. All Documents Concerning Johns Hopkins University's knowledge Concerning studies, tests, performance specifications, analyses or opinions Concerning and/or comparing time-of-flight PET Scanners using LSO and/or LYSO scintillation crystals including but not limited to LYSO crystals produced by Saint-Gobain and the development of LSO and/or LYSO time-of-flight PET Scanners by Siemens.

11.     All Documents Concerning Johns Hopkins University's knowledge pertaining to any studies, analyses or opinions concerning alleged infringement of the '080 Patent by Saint-Gobain or any other manufacturer or supplier of LYSO scintillation crystals.

12.     All Documents Concerning Johns Hopkins University's knowledge pertaining to any studies, analyses or opinions concerning the concentration of yttrium required in an LYSO crystal sufficient for the LYSO crystal to embody the invention disclosed, or otherwise be covered by, the '420 Patent.

13.     All Documents Concerning Johns Hopkins University's knowledge of the LYSO crystals incorporated in the Gemini TF PET/CT Scanner.

14.     All Documents Concerning Communications between Johns Hopkins University and Siemens concerning the LYSO crystals incorporated in the Gemini TF PET/CT Scanner.

15.     All Documents Concerning Communications between Johns Hopkins University and Siemens concerning the enforceability of the '420 Patent.

16.     All Documents Concerning Communications between Johns Hopkins University and any other parties concerning the enforceability of the '420 Patent.

17.     All Documents Concerning Communications between Johns Hopkins University and Siemens concerning this action or the subject matter thereof.

18.     All Documents Concerning Communications between Johns Hopkins University and any other parties concerning this action or the subject matter thereof.

19.     All Documents Concerning Communications between Johns Hopkins University and Siemens concerning Saint-Gobain.

20.     All Documents Concerning Johns Hopkins University's knowledge concerning the conception, reduction to practice, diligence in reducing to practice, research, development,

testing, modification, and experimental use of any of the subject matter disclosed or claimed by the '420 Patent.

21. All Contracts or agreements, including master research agreements in which Johns Hopkins University is a party in any research partnership with Siemens.

22. All agreements or contracts, including master research agreements and research partnerships Concerning or relating to LYSO scintillation technology to which Johns Hopkins University is a party from the time beginning with the earliest possible date of contact between the parties regarding the LYSO scintillation crystals to the present.

23. All agreements or contracts between Siemens and Johns Hopkins University concerning the '080 Patent or PET Scanners.

24. Physical samples of any LYSO crystals incorporated and/or utilized in any PET Scanner created, designed, constructed, manufactured in whole or in part by, and/or used by Johns Hopkins University, with the labeling, packaging, brochures, manuals, descriptive materials, guides and other documents with which such crystals are, or have been, marketed, sold, delivered and/or distributed to Johns Hopkins University.