IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

SIEMENS MEDICAL SOLUTIONS USA, )
INC., )
 )
   Plaintiff, )
 )
   v. ) C.A. No.  07-190 (SLR)
 )
SAINT-GOBAIN CERAMICS & ) **REDACTED-**
PLASTICS, INC., ) **PUBLIC VERSION**
 )
   Defendant. )

**SIEMENS' OPENING BRIEF IN SUPPORT OF ITS MOTION FOR SUMMARY
JUDGMENT ON SAINT-GOBAIN'S AFFIRMATIVE DEFENSES AND ITS
MOTION TO STRIKE SAINT-GOBAIN'S FOURTH AFFIRMATIVE DEFENSE**

Jack B. Blumenfeld (# 1014)
Maryellen Noreika (# 3208)
MORRIS, NICHOLS, ARSHT & TUNNELL LLP
1201 North Market Street
P.O. Box 1347
Wilmington, Delaware 19899
(302) 658-9200
jblumenfeld@mnat.com
mnoreika@mnat.com

*Attorneys for Plaintiff*
*Siemens Medical Solutions USA, Inc.*

*Of Counsel:*

Gregg F. LoCascio, P.C.
Charanjit Brahma
Sean M. McEldowney
KIRKLAND & ELLIS LLP
655 Fifteenth St., N.W., Suite 1200
Washington, D.C. 20005
(202) 879-5000

Original Filing Date: May 9, 2008

Redacted Filing Date:  May 16, 2008

# TABLE OF CONTENTS

I.      INTRODUCTION ...................................................................................................1

II.     NATURE AND STAGE OF THE PROCEEDINGS ...........................................1

III.    SUMMARY OF ARGUMENT ..............................................................................2

IV.     STATEMENT OF FACTS ....................................................................................5

V.      ARGUMENT .........................................................................................................5

        A.    Legal Standard .............................................................................................5

        B.    Summary Judgment that Laches Does Not Bar Siemens from Seeking
              Relief Against Saint-Gobain Should Be Granted. ...................................6

              1.    Saint-Gobain Suffered No Economic or Evidentiary Prejudice as a
                    Result of any Delay in Filing this Suit......................................................7

              2.    Any "Delay" by Siemens in Filing Suit Was Neither Unreasonable
                    nor Inexcusable. ........................................................................................11

        C.    Summary Judgment that Siemens Is Not Equitably Estopped from
              Asserting the '080 Patent Against Saint-Gobain Should Be Granted...................14

              1.    Siemens Never Represented to Saint-Gobain that It Would Not
                    Enforce the '080 Patent to Stop Sales of LYSO Crystals..........................15

              2.    Saint-Gobain Admits It Never Relied on any Representation by
                    Siemens. ...................................................................................................17

              3.    As with Its Laches Defense, Saint-Gobain's Equitable Estoppel
                    Defense Should also Be Rejected Because Saint-Gobain Has Not
                    Identified any Harm Suffered. ..................................................................18

        D.    Summary Judgment on Saint-Gobain's Waiver Defense Should Be
              Granted.......................................................................................................19

        E.    Summary Judgment that the Marking Statute Does Not Bar Pre-Suit
              Damages for the '080 Patent Should Be Granted. .................................20

F.    Saint-Gobain Should Not Be Permitted to Present Its Fourth Affirmative Defense or any Prosecution History Estoppel Defense. ........................................21

    1.    The Court Should Strike Saint-Gobain's Fourth Affirmative Defense. ...........................................................................................21

    2.    In the Alternative, Summary Judgment on Saint-Gobain's Prosecution History Estoppel Defense Should Be Granted.......................24

VI.    CONCLUSION..............................................................................................29

# TABLE OF AUTHORITIES

## Cases

*A.C. Aukerman Co. v. R.L. Chaides Constr. Co.*,
   960 F.2d 1020 (Fed. Cir. 1992)...................................................................................passim

*B. Braun Med., Inc. v. Abbott Labs.*,
   124 F.3d 1419 (Fed. Cir. 1997)...................................................................................3, 15

*Bai v. L & L Wings, Inc.*,
   160 F.3d 1350 (Fed. Cir. 1998).........................................................................................6

*Business Objects, S.A. v. Microstrategy, Inc.*,
   393 F.3d 1366 (Fed. Cir. 2005).......................................................................................26

*Celotex Corp. v. Catrett*,
   477 U.S. 317 (1986)......................................................................................................1, 5

*Continental Can Co. USA, Inc, v. Monsanto Co.*,
   948 F.2d 1264 (Fed. Cir. 1991).........................................................................................6

*CPC Int'l Inc. v. Archer Daniels Midland Co.*,
   831 F. Supp. 1091 (D. Del. 1993),
   *aff'd*, 31 F.3d 1176 (Fed. Cir. 1994)...............................................................................24

*Ecolab, Inc. v. Envirochem, Inc.*,
   264 F.3d 1358 (Fed. Cir. 2001).........................................................................................6

*eSpeed, Inc. v. Brokertec USA, L.L.C.*,
   417 F. Supp. 2d 580 (D. Del. 2006),
   *aff'd*, 480 F.3d 1129 (Fed. Cir. 2007)............................................................................13

*Festo Corp. v. Shoketsu Kinzoku Kogyo Kabushiki Co.*,
   344 F.3d 1359 (Fed. Cir. 2003)...........................................................................6, 25, 28

*Festo Corp. v. Shoketsu Kinzoku Kogyo Kabushiki Co.*,
   535 U.S. 722 (2002).............................................................................................5, 25, 28

*Fromson v. Advance Offset Plate, Inc.*,
   720 F.2d 1565 (Fed. Cir. 1983).......................................................................................21

*Gart v. Logitech, Inc.*,
   254 F.3d 1334 (Fed. Cir. 2001).........................................................................................6

*Gasser Chair Co. v. Infanti Chair Mfg. Corp.*,
   60 F.3d 770 (Fed. Cir. 1995).............................................................................................9

iii

*Hall v. Aqua Queen Mfg., Inc.*,
    93 F.3d 1548 (Fed. Cir. 1996)......................................................................... 18

*Hemstreet v. Computer Entry Sys. Corp.*,
    972 F.2d 1290 (Fed. Cir. 1992)....................................................................... 14

*Insituform Techs., Inc. v. CAT Contracting, Inc.*,
    385 F.3d 1360 (Fed. Cir. 2004)........................................................ 5, 25, 27, 29

*Joy Techs., Inc. v. Flakt, Inc.*,
    954 F. Supp. 796 (D. Del. 1996)..................................................................... 14

*Judin v. United States*,
    110 F.3d 780 (Fed. Cir. 1997)......................................................................... 12

*Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*,
    475 U.S. 574 (1986)......................................................................................... 6

*Meyers v. Brooks Shoe, Inc.*,
    912 F.2d 1459 (Fed. Cir. 1990),
    *overruled in non-pertinent part by A.C. Aukerman Co. v. R.L. Chaides Constr. Co.*,
    960 F.2d 1020, 1038 (Fed. Cir. 1992)............................................................ 10

*Primos, Inc. v. Hunter's Specialties, Inc.*,
    451 F.3d 841 (Fed. Cir. 2006)............................................................... 4, 26, 27

*Regents of Univ. of Cal. v. Dakocytomation Cal., Inc.*,
    517 F.3d 1364 (Fed. Cir. 2008)....................................................................... 25

*State Contracting & Eng'g Corp. v. Condotte Am., Inc.*,
    346 F.3d 1057 (Fed. Cir. 2003)..................................................................... 8, 9

*Studiengesellschaft Kohle mbH v. Dart Indus., Inc.*,
    549 F. Supp. 716 (D. Del. 1982),
    *aff'd*, 762 F.3d 724 (Fed. Cir. 1984) ............................................................. 14

*United States v. Noe*,
    821 F.2d 604 (11th Cir. 1987) ........................................................................ 21

*View Eng'g, Inc. v. Robotic Vision Sys., Inc.*,
    208 F.3d 981 (Fed. Cir. 2000)..................................................................... 3, 12

*Wanless v. Fedders Corp.*,
    145 F.3d 1461 (Fed. Cir. 1998)....................................................................... 12

**Statutes**

35 U.S.C. § 287............................................................................................... 19, 20

**Rules**

Fed. R. Civ. P. 56(c) ................................................................................................................... 5

## I.    INTRODUCTION

Faced with the ever-mounting evidence that Saint-Gobain's 10% Y LYSO crystal is equivalent to the crystal limitation recited in the '080 patent, Saint-Gobain has recently attempted to breathe life into defenses that it left entirely dormant and abandoned during fact discovery.  For instance, after failing to respond to Siemens' interrogatories over the last year regarding prosecution history estoppel as a defense—and even expressly suggesting in an interrogatory response that it did not intend to pursue such a defense—a month ago Saint-Gobain informed Siemens that it now intends to present its amorphous defense at trial.  Similarly, despite having provided no factual allegations or legal theories to support its laches, equitable estoppel, or waiver defenses in response to Siemens' contention interrogatories on these issues, Saint-Gobain now also apparently plans on presenting these hidden theories at trial.  Saint-Gobain has not pointed to and cannot point to any facts that support these defenses.  Indeed, Saint-Gobain's own witnesses and documents belie each of these defenses, and reveal that Saint-Gobain left these defenses dormant during discovery because they are without merit.  Nevertheless, Saint-Gobain apparently hopes to use these defenses at trial to divert attention from the only legitimate issue in dispute, albeit a problematic one for Saint-Gobain: whether Saint-Gobain's 10% LYSO crystal is equivalent to the crystal limitation in claim 1 of the '080 patent.  These circumstances are precisely what partial summary judgment is designed to remedy by allowing a party "to isolate and dispose of factually unsupported claims or defenses" before trial.  *Celotex Corp. v. Catrett*, 477 U.S. 317, 323-24 (1986).

## II.    NATURE AND STAGE OF THE PROCEEDINGS

This is a patent infringement suit filed by Siemens alleging that Saint-Gobain contributorily infringes and induces infringement of Siemens' U.S. Patent No. 4,958,080 by supplying its "PreLude 420" crystal—a lutetium oxyorthosilicate (LSO) crystal containing 10%

yttrium ("Y") in place of lutetium (the "L" in LSO)—to companies like Philips for use in PET scanners and other products incorporating gamma or x-ray detectors. Saint-Gobain does not dispute that most of the elements claimed in the '080 patent are met literally by the products that incorporate its LYSO crystals. On the sole limitation in dispute—the LSO "scintillator" element of the claim—Siemens alleges that Saint-Gobain's 10% Y LYSO crystal meets that limitation under the doctrine of equivalents. Fact discovery closed on March 14, 2008, but with a stipulated extension of that deadline to complete certain depositions. Expert discovery closes on June 6, 2008. Trial in this case is set to begin September 15, 2008.

## III.    SUMMARY OF ARGUMENT

1.    Summary judgment that laches does not bar Siemens from obtaining relief against Saint-Gobain should be granted. Saint-Gobain did not change its economic position or suffer any business, evidentiary, or other prejudice as a result of Siemens' alleged inaction. *A.C. Aukerman Co. v. R.L. Chaides Constr. Co.*, 960 F.2d 1020, 1032-33 (Fed. Cir. 1992) (en banc). Rather, Saint-Gobain freely admits it made a deliberate decision to infringe, despite knowing the threat of suit from Siemens, in order to capitalize on a window of opportunity in the market for low-Y LYSO, accepting not just its risk of suit by Siemens but also suit against its customers like Philips as costs of establishing a foothold in this profitable market. Moreover, there was no delay in filing suit, much less one sufficient to form the basis of a laches defense. Siemens first suspected that Saint-Gobain was selling its LYSO crystals (of unknown composition and properties at that point) that were incorporated into Philips' infringing PET scanners in the Fall of 2006. Siemens was only able to obtain samples of Saint-Gobain's LYSO crystals on or about December 6, 2006. That testing was essential for Siemens to confirm the equivalence of Saint-Gobain's LYSO crystals, and Siemens was arguably required to perform those tests to fulfill its Rule 11 pre-filing obligations. *See, e.g.*, *View Eng'g, Inc. v. Robotic Vision Sys., Inc.*, 208 F.3d

981, 985-87 (Fed. Cir. 2000).  Siemens filed suit on April 3, 2007, shortly after its pre-filing analysis was completed.  There was, therefore, no delay in filing suit, let alone an unjustified and inexcusable delay that would support Saint-Gobain's defense of laches.

2.     Summary judgment that Siemens is not equitably estopped from asserting the '080 patent against Saint-Gobain should also be granted.  *B. Braun Med., Inc. v. Abbott Labs*., 124 F.3d 1419, 1425 (Fed. Cir. 1997).  First, Siemens had no communications with Saint-Gobain regarding the '080 patent or Saint-Gobain's 10% Y LYSO crystal before filing suit against it, and there was no basis for Saint-Gobain to interpret Siemens' silence as acquiescence to its infringement.  Second, Saint-Gobain cannot show that it relied on any Siemens' representation or Siemens' silence in choosing to pursue its infringing LYSO program, ███████████████ ████████████████████████████████████████████████████ ██████████████████████ knowing full well that it was risking an infringement suit by Siemens.  Finally, Saint-Gobain has pointed to no harm it suffered as a result of any reliance on the alleged representation or silence of Siemens, a requisite element of a valid equitable estoppel defense.

3.     Summary judgment on Saint-Gobain's "waiver" defense should be granted.  Saint-Gobain has presented no factual allegations or legal theory that would support any "waiver" defense, and Saint-Gobain should not be permitted to continue to lie in wait and later assert an ambiguous, undisclosed, and wholly unsupported defense at this late stage of the litigation.

4.     Summary judgment on Saint-Gobain's unsupported suggestion that the marking statute, 35 U.S.C. § 287, somehow precludes Siemens from recovering pre-suit damages should be granted.  It is undisputed that Siemens marks its patented Biograph scanners with the '080

patent number, and has fully complied with the marking statute.  Saint-Gobain's boilerplate reference to "marking" in its answer has no support and should be rejected.

5.     The Court should also strike Saint-Gobain's Fourth Affirmative Defense and any prosecution history estoppel defense Saint-Gobain now attempts to assert.  Saint-Gobain's Fourth Affirmative Defense ambiguously—at best—pled a prosecution history estoppel defense. In response to Siemens' interrogatories regarding Saint-Gobain's equitable estoppel defense, Saint-Gobain represented that it "does not contend that Siemens is 'barred' from arguing [equivalence]."  Then, on April 4, 2008, after the close of fact discovery and on the eve of expert reports, Saint-Gobain "supplemented" its interrogatory response by sending a letter to inform Siemens that it intends to present this undisclosed defense at trial.  Any evidence that would be relevant to a prosecution history estoppel defense—namely the '080 patent and the Patent Office prosecution history file—has been in Saint-Gobain's possession since at least March 2006, when Saint-Gobain obtained its opinion of outside counsel regarding infringement of the '080 patent. Having failed to provide any basis for a prosecution history estoppel defense in response to Siemens' interrogatories on this issue, Saint-Gobain should not be permitted to pursue a prosecution history estoppel defense.

Even if it had been properly disclosed, Saint-Gobain's newly-disclosed prosecution history estoppel defense is still subject to summary judgment on its merits.  First, amending claim 1 to expressly recite that the "scintillator" crystal be "transparent" did not narrow the scope of the claim because the original claim inherently required the scintillator to be transparent.  *See Primos, Inc. v. Hunter's Specialties, Inc*., 451 F.3d 841, 849 (Fed. Cir. 2006). There is no dispute that the accused Saint-Gobain crystal is transparent.  Second, amending the claim to recite the cerium dopant concentration based on the final crystal composition—rather

than the composition of the melt from which the crystal is made—did not narrow the scope of the claim. Even assuming, for the sake of argument, that the amendment somehow narrowed the scope of the claim, it still would not give rise to prosecution history estoppel because the rationale for the amendment bore no more than a tangential relation to the equivalent in question (*i.e.*, 10% Y LYSO as opposed to LSO). *Insituform Techs., Inc. v. CAT Contracting, Inc.*, 385 F.3d 1360, 1370 (Fed. Cir. 2004). Moreover, when triggered by the amendment of a claim, prosecution history estoppel is presumed only to operate as a surrender of "all subject matter **between the broader and the narrower language.**"[1] *Festo Corp. v. Shoketsu Kinzoku Kogyo Kabushiki Co.*, 535 U.S. 722, 740 (2002). The equivalent in question here—10% Y LYSO crystals—was never within the literal scope of the original claim, and so was not within any territory that could have been surrendered by the amendment. As such, the Court should grant summary judgment on Saint-Gobain's half-hearted and belated prosecution history estoppel defense

## IV. STATEMENT OF FACTS

The material facts are set forth below in the appropriate sections of the Argument.

## V. ARGUMENT

### A. Legal Standard

Summary judgment should be granted when "the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). No genuine issue of material fact

---

[1] All emphasis added herein unless otherwise indicated.

exists "[w]here the record taken as a whole could not lead a rational trier of fact to find for the non-moving party." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp*., 475 U.S. 574, 587 (1986). "Summary judgment is as available in patent cases as in other areas of litigation," *Continental Can Co. USA, Inc, v. Monsanto Co*., 948 F.2d 1264, 1265 (Fed. Cir. 1991), and in particular is available on the defenses for which Siemens now moves for summary judgment, *see, e.g., Ecolab, Inc. v. Envirochem, Inc*., 264 F.3d 1358, 1371-72 (Fed. Cir. 2001) (affirming summary judgment of no laches and no equitable estoppel); *Gart v. Logitech, Inc*., 254 F.3d 1334, 1339 (Fed. Cir. 2001) ("[C]ompliance with the marking statute, 35 U.S.C. § 287(a), is a question of fact [that can be] properly decided upon summary judgment.") (internal citation omitted); *Bai v. L & L Wings, Inc*., 160 F.3d 1350, 1353-54 (Fed. Cir. 1998) (addressing prosecution history in the context of summary judgment). Indeed, laches, equitable estoppel, and prosecution history estoppel are all matters to be decided by the Court,[2] not the jury, making these inquiries especially appropriate for summary disposition by the Court.

**B. Summary Judgment that Laches Does Not Bar Siemens from Seeking Relief Against Saint-Gobain Should Be Granted.**

To prove its affirmative defense of laches, Saint-Gobain bears the burden of showing that "(1) [Siemens] delayed filing suit for an ***unreasonable*** and ***inexcusable*** length of time ***from the time [Siemens] knew or reasonably should have known of its claim against [Saint-Gobain], and*** (2) the delay operated to the prejudice or injury of [Saint-Gobain]." *A.C. Aukerman Co. v. R.L. Chaides Constr. Co*., 960 F.2d 1020, 1032 (Fed. Cir. 1992) (*en banc*).

---

[2] *See Festo Corp. v. Shoketsu Kinzoku Kogyo Kabushiki Co.*, 344 F.3d 1359, 1367-68 (Fed. Cir. 2003) (prosecution history estoppel turns on "questions of law for the court, not a jury, to decide"); *A.C. Aukerman Co. v. R.L. Chaides Constr. Co*., 960 F.2d 1020, 1028 (Fed. Cir. 1992) (en banc) (laches and equitable estoppel "committed to the sound discretion of the trial judge").

Saint-Gobain cannot make either of these required showings, so its laches defense fails as a matter of law.[3]

### 1.    Saint-Gobain Suffered No Economic or Evidentiary Prejudice as a Result of any Delay in Filing this Suit.

To assert a laches defense, Saint-Gobain must show that it suffered economic or evidentiary prejudice as a result of Siemens' delay in filing suit.  *A.C. Aukerman*, 960 F.2d at 1033.  Even if Saint-Gobain were able to show that there was a question of fact concerning the length of Siemens' alleged "delay"—which, as explained below, it can not—summary judgment on Saint-Gobain's laches defense is still appropriate because Saint-Gobain has never identified (and can not identify) any prejudice it suffered as a result of the alleged delay.

In particular, Saint-Gobain has pointed to no evidentiary prejudice—in the form of the loss of records, the death of a witness, or the unreliability of witness memories of past events—that it has suffered as a result of Siemens' alleged "delay" in filing suit.  *A.C. Aukerman*, 960 F.2d at 1033 ("Evidentiary [harm] may arise by reason of a defendant's inability to present a full and fair defense on the merits due to the loss of records, the death of a witness, or unreliability of memories of long past events . . . .").  All of the relevant witnesses identified by Saint-Gobain are not only alive today, but most are still Saint-Gobain employees.  And as Siemens' submissions in this case have demonstrated, Saint-Gobain was able (albeit belatedly) to locate and produce the relevant documents regarding its development and sales of the infringing 10% Y LYSO crystal.  Notably, Saint-Gobain did not identify any document it could not locate

---

[3] Even if Saint-Gobain could make the required showings, in light of Saint-Gobain's willful disregard for Siemens' patent rights, equity would still preclude application of laches in this case. *See, e.g., A.C. Aukerman*, 960 F.2d at 1033 ("A patentee may also defeat a laches defense if the infringer 'has engaged in particularly egregious conduct which would change the equities significantly in plaintiff's favor'" such as conscious copying.)

and produce due to its destruction.  (Ex. 1, 8/31/07 Saint-Gobain's Resp. to First Set of Interrogs. No. 12; Ex. 2, 7/27/07 Siemens' First Set of Document Requests to Def. at 8 (instructing Saint-Gobain to identify any relevant documents of which it has knowledge but that have been destroyed).)

With respect to economic prejudice, there is no evidence to support any economic loss that would justify a laches defense.  To find economic prejudice, "courts must look for a *change* in the economic position of the alleged infringer during the period of delay."  *A.C. Aukerman*, 960 F.2d at 1033 (emphasis in original). ████████████████████

████████████████████████████████████████████

████████████████████████████████████████████

████████████████████████████████████████████

████████████████████████████████████████████

████████████████████████████████████████████

████████████████████████████████████████████

████████████    ████████████████████████████

████████████████████████████

The only "harm" Saint-Gobain suffered after March 2006 is that the amount of infringement damages that it now owes Siemens grew as a result of infringing sales made after March 2006.  But as a matter of law, infringement liability itself does not support a laches defense.  *State Contracting & Eng'g Corp. v. Condotte Am., Inc*., 346 F.3d 1057, 1066 (Fed. Cir. 2003) ("[E]conomic prejudice asserted by the [defendant] is limited to the amount of their infringement liability and thus is not sufficient to support the laches defense."); *A.C. Aukerman*, 960 F.2d at 1033 (economic losses "attributable to a finding of liability for infringement" are not

considered in laches analysis; if they were considered, "[e]conomic prejudice would then arise in every suit").

       In fact, to show prejudice supporting a laches defense, a defendant must show that an earlier filing would have led customers to adopt a non-infringing alternative and that the defendant would have altered their behavior as a result of an earlier filing. *State Contracting & Eng'g*, 346 F.3d at 1066-67. "It is not enough that the alleged infringer changed his position— i.e., invested in production of the allegedly infringing device. The change must be because of and as a result of the delay, ***not simply a business decision to capitalize on a market opportunity***." *Gasser Chair Co. v. Infanti Chair Mfg. Corp.*, 60 F.3d 770, 774 (Fed. Cir. 1995).



Thus, no matter when the delay period for laches began, any harm Saint-Gobain suffered was the result of Saint-Gobain's deliberate decision—despite the risks—to make and sell 10% Y LYSO, and not the result of any purported delay by Siemens in filing suit and Saint-Gobain's reliance on that alleged delay. Thus, as a matter of law, Saint-Gobain can not show prejudice sufficient to make its laches defense. *Meyers v. Brooks Shoe, Inc*., 912 F.2d 1459, 1463 (Fed. Cir. 1990), *overruled in non-pertinent part by A.C. Aukerman*, 960 F.2d at 1038 (no prejudice because "[f]rom all that appears, [the accused infringer] would have followed the same course regardless of what [the plaintiff] did or did not do").

2.     **Any "Delay" by Siemens in Filing Suit Was Neither Unreasonable nor Inexcusable.**

To succeed on its laches defense Saint-Gobain would also be required to show that Siemens inexcusably delayed filing suit for an unreasonable length of time. Even assuming, for the sake of argument, that Saint-Gobain could show that it suffered prejudice because of some alleged inaction by Siemens, the "delay" by Siemens in filing suit simply cannot, as a matter of law, be considered unreasonable or inexcusable. The period of delay to consider for laches is "measured from the time the plaintiff knew or reasonably should have known of the defendant's alleged infringing activities to the date of suit." *A.C. Aukerman*, 960 F.2d at 1032. Here, Siemens did not know—and could not have known—that Saint-Gobain was selling LSO-equivalent LYSO crystals to Philips for use in infringing PET scanners until immediately before it filed suit on April 3, 2007. There was no delay, let alone an unreasonable and inexcusable delay.

The defense of laches is "personal to the particular party." *Id.* at 1032. Accordingly, Saint-Gobain's laches defense must be based on the date Siemens first knew or could reasonably be expected to have known that ***Saint-Gobain***, not some other party, like direct infringer Philips, was infringing the '080 patent. In this case, Philips first announced the release of its directly-infringing LYSO-based PET scanner (the "Gemini TF") in March 2006. (Ex. 8, 3/14/08 Lusser Dep. Tr. at 10:15-21; Ex. 9, SMS000557, 6/6/07 article discussing release of LYSO-based Gemini TF.). At that time, the identify of Philips' crystal supplier was not publicly available, and Siemens could not confirm the composition or performance of the LYSO crystals in Philips' newly announced PET scanner. ████████████████

████████████████████████████████████████

████████████████████████ Siemens first learned that Saint-Gobain was

11

supplying LYSO crystals to Philips in Fall 2006.  Even then, however, Siemens could not have known whether the particular LYSO composition Saint-Gobain was marketing was an equivalent of the LSO scintillator recited in the '080 patent until Siemens obtained a sample of Saint-Gobain's crystal and tested its scintillation and physical properties—indeed, Siemens had no way of even confirming the composition of the crystal without such testing.  (Ex. 11, Weber Expert Report at 9 ("[T]heoretical calculations of all scintillation properties of a given material cannot be made; experimental measurement is the final arbiter.")

In December 2006, promptly after learning that Saint-Gobain was Philips' supplier for the suspected crystals, Siemens located and purchased a sample of Saint-Gobain's LYSO crystal.  (D.I. 21, Doshi Aff. ISO Mot. for Preliminary Injunction ¶ 3.)  Siemens received the sample in February 2007 (*id.*) and immediately began the required testing (Ex. 12, Exhibit C to D.I. 21, 2/27/07 Northern Analytical Lab Report).  This testing was a necessary part of Siemens' pre-filing investigation, as the Federal Circuit has previously held that a plaintiff cannot allege patent infringement based solely on an accused infringer's marketing materials, but must instead first test a sample of the accused product if such testing is possible.  *View Eng'g, Inc. v. Robotic Vision Sys., Inc.*, 208 F.3d 981, 985-87 (Fed. Cir. 2000) (pre-filing investigation inadequate where plaintiff patentee relied solely on information about accused product in defendant's marketing materials for infringement analysis); *Judin v. United States*, 110 F.3d 780, 784 (Fed. Cir. 1997) ("no doubt that [counsel] failed to meet the minimum standards imposed by Rule 11" because he "failed to obtain, or attempt[] to obtain, a sample of the accused device").  Under these circumstances, the time it took Siemens to test Saint-Gobain's crystals and confirm infringement cannot properly be counted as "delay" for purposes of Saint-Gobain's laches defense.  *See, e.g.*, *Wanless v. Fedders Corp.*, 145 F.3d 1461, 1467 (Fed. Cir. 1998) (district

court erred by calculating delay before testing completed: "infringement could not be determined without purchasing the accused air conditioner, dismantling it, and testing the motor inside"). Once the required testing and analysis was completed, Siemens filed suit immediately on April 3, 2007.

When the date Siemens confirmed Saint-Gobain was contributing to and inducing Philips' direct infringement of the '080 patent is used as the starting point, Siemens' alleged "delay" in filing suit amounts, at the very most, to approximately one month. Such a short period of time before filing suit is "obviously" reasonable and excusable and cannot provide the basis for a laches defense. *See, e.g.*, *eSpeed, Inc. v. Brokertec USA, L.L.C.*, 417 F. Supp. 2d 580, 599 (D. Del. 2006) (where delay was one month, "[o]bviously, there was no unreasonable delay in bringing this suit"), *aff'd*, 480 F.3d 1129 (Fed. Cir. 2007).

Rather than look to the relevant time period beginning when Siemens knew or should have known that ***Saint-Gobain*** was infringing, Saint-Gobain's laches defense relies on the wholly irrelevant date that Siemens first suspected Philips was infringing. The fact that Siemens notified ***Philips*** that it may have been infringing the '080 patent approximately a year before Siemens sued Saint-Gobain has nothing to do with whether Saint-Gobain can assert a laches defense.



Siemens did send a letter to Philips in

March 2006 regarding the '080 patent.  (Ex. 13, PH1169-70, 3/17/06 Letter from Siemens to Philips.)  But even if Saint-Gobain could rely on that letter to show that Siemens knew or should have known in March 2006 that ***Saint-Gobain*** was infringing, a one year delay simply does not constitute unreasonable delay.  *Joy Techs., Inc. v. Flakt, Inc*., 954 F. Supp. 796, 802 (D. Del. 1996) ("laches defense is meritless" where alleged delay was approximately one year); *Studiengesellschaft Kohle mbH v. Dart Indus., Inc*., 549 F. Supp. 716, 759 (D. Del. 1982) (no laches because "relatively short period [of three years and eight months] was not unreasonable or inexcusable"), *aff'd*, 762 F.3d 724 (Fed. Cir. 1984).  Indeed, where, as here, a patent owner has been actively enforcing his patent rights, delays of several years are commonly excused.  *See, e.g., Hemstreet v. Computer Entry Sys. Corp*., 972 F.2d 1290, 1293 (Fed. Cir. 1992) (under the circumstances, including fact that patentee was "busy enforcing his patent rights elsewhere," alleged 13-year "delay involved here could not be considered unreasonable and inexcusable").  In this case, Siemens has been diligent in enforcing the '080 patent.  It filed this suit less than a year after it successfully obtained an injunction against another LYSO manufacturer, Photonic Materials, based on the European equivalent to the '080 patent.  (Ex. 14, SMS001890, 4/26/06 Scottish Interdict.)  There is therefore no basis for concluding that Siemens unreasonably and inexcusably delayed filing this suit.

C.     **Summary Judgment that Siemens Is Not Equitably Estopped from Asserting the '080 Patent Against Saint-Gobain Should Be Granted.**

In asserting an affirmative defense of equitable estoppel, Saint-Gobain bears the burden of proving three elements: "(i) [Siemens] must communicate to the accused infringer (by words, conduct or silence) that [Siemens] will not pursue an infringement claim; (ii) [Saint-Gobain] must rely on that communication; and (iii) [Saint-Gobain] must establish that it would be materially prejudiced if [Siemens] is now permitted to proceed with the infringement claim."

*B. Braun Med., Inc. v. Abbott Labs*., 124 F.3d 1419, 1425 (Fed. Cir. 1997).  Saint-Gobain has

failed to point to any facts supporting any of these elements, and there are no facts from which to

fashion a plausible estoppel defense in this case.

> **1.    Siemens Never Represented to Saint-Gobain that It Would Not Enforce the '080 Patent to Stop Sales of LYSO Crystals.**



       To the contrary, Siemens gave every indication that it would vigorously enforce

its '080 patent.  Siemens sued a Scottish company, Photonic Materials, for infringing a European

counterpart to the '080 by selling a similar low-Y LYSO crystal in 2005.  (Ex. 14, SMS001890,

4/26/06 Scottish Interdict.)  Siemens also notified Philips in 2006 that Siemens would enforce its

'080 patent against infringers.  (Ex. 13, PH1169-70, 3/17/06 Letter from Siemens to Philips.)

Indeed, the evidence shows that Siemens could not have known that Saint-Gobain was supplying an infringing 10% Y LYSO crystal to PET scanner manufacturers like Philips until Spring 2007 when Siemens in fact sued Saint-Gobain for infringement.  (*See* section V.B.2, *supra*.)  Without knowing Saint-Gobain was making an infringing product, Siemens could not have made any claim that Saint-Gobain's production and sales thereof was an act of infringement.  *A.C. Aukerman*, 960 F.2d at 1042 (to show the first element of equitable estoppel, the "alleged infringer also must know or reasonably be able to infer that the patentee has known of the former's activities for some time").

Nor is there any factual basis from which to infer that Siemens is somehow estopped by reason of its silence regarding the '080 patent.  For inaction or silence to form the basis for equitable estoppel, it "must be combined with other facts respecting the relationship or contacts between the parties to give rise to the necessary inference that the claim against the defendant is abandoned."  *A.C. Aukerman*, 960 F.2d at 1042.  "[S]ilence alone will not create an estoppel **unless there was a clear duty to speak, or** somehow the patentee's continued silence reenforces the defendant's inference from the ***plaintiff's known acquiescence*** that the defendant will be unmolested."  *Id*. at 1043-44 (citation omitted).  Saint-Gobain has not alleged—nor are there any—facts even remotely suggesting Siemens had any "relationship or contacts" with Saint-Gobain, let alone any duty to Saint-Gobain.  Nor can Saint-Gobain plausibly assert Siemens' "acquiesced" to infringement of its '080 patent.  Siemens was actively enforcing and policing its '080 intellectual property against LYSO manufacturers and PET scanner manufacturers using LYSO.

   2.     **Saint-Gobain Admits It Never Relied on any Representation by Siemens.**

Even assuming *arguendo* that Siemens had somehow represented to Saint-Gobain that it would not sue for infringement of the '080 patent, there is no evidence that Saint-Gobain actually relied on such a representation by Siemens. *A.C. Aukerman*, 960 F.2d at 1042-43 (to make out the second element of equitable estoppel, the "accused infringer must show that, in fact, it substantially relied on the misleading conduct of the patentee in connection with taking some action"). To the contrary, the evidence shows that ████████████████████ ████████████████████████████████████████████████████████ ████████████████████████████████████████████████████████ ████████████████████████████████████████████████████████ ████████████████████████████████████████████████████████ ████████████████████████████████████████████████████████ ████████████████████████████████████████████████████████ ████████████████████████████████████████████████████████ ████████████████████████████████████ ██ ██████████████████████████████████ ██ ████████████████████ ██ ██ ██ ████████████████████████████████████ ██ ████████████ ██ ████████████████████████████████████████████████████ Under these circumstances, Saint-Gobain cannot be heard to argue that it proceeded with its LYSO program in reliance on any alleged representation by Siemens that it would not sue Saint-Gobain. *Cf.*

17

*Hall v. Aqua Queen Mfg., Inc.*, 93 F.3d 1548, 1558 (Fed. Cir. 1996) (second element not met if evidence suggests defendant acted due to a belief of something other than plaintiff's representation that it would not sue, such as defendant's belief that the patent was invalid). Further, Saint-Gobain has not, and can not, point to the existence of any "relationship or communication with the plaintiff which lull[ed] [Saint-Gobain] into a sense of security in going ahead with" its LYSO program, as would be required to prove the second element of Saint-Gobain's equitable estoppel defense. *A.C. Aukerman*, 960 F.2d at 1043.

### 3. As with Its Laches Defense, Saint-Gobain's Equitable Estoppel Defense Should also Be Rejected Because Saint-Gobain Has Not Identified any Harm Suffered.

Finally, Saint-Gobain has not pointed to any economic or evidentiary prejudice it has suffered or will suffer as a result of any purported representation by Siemens. As explained in section V.B.1, *supra*, Saint-Gobain has not pointed to and cannot point to any legally cognizable prejudice it suffered with respect to its sales of infringing crystals. *A.C. Aukerman*, 960 F.2d at 1043 ("As with laches, the prejudice [for equitable estoppel] may be a change of economic position or loss of evidence."). No relevant evidence has been lost and the only economic "harm" Saint-Gobian will incur is liability for its infringing sales. Any change in economic position by Saint-Gobain occurred before Siemens knew—or even could have known—that Saint-Gobain was making infringing crystals. Such facts preclude an equitable estoppel defense as a matter of law. *Aqua Queen Mfg.*, 93 F.3d at 1558 (no prejudice supporting equitable estoppel defense because defendant "utterly failed to demonstrate that the allegedly prejudicial events occurred after [patentee] knew or should have known of the allegedly infringing activities").



Under these circumstances, there is no plausible basis for an equitable estoppel defense and summary judgment should be granted.

**D.    Summary Judgment on Saint-Gobain's Waiver Defense Should Be Granted.**

In its answer to Siemens' complaint, Saint-Gobain also references a "waiver" defense.  (Ex. 16, 4/7/08 Saint-Gobain's Answer to Siemens' Amended Complaint.)  But Saint-Gobain has never explained the legal and factual bases for that contention in response to Siemens' interrogatories.  Indeed, its response provides no factual allegations or legal theories that even remotely relate to, let alone support, a waiver defense.  (Ex. 1, 8/31/07 Saint-Gobain's Resp. to First Set of Interrogs. No. 12.)  There is no evidence suggesting that Siemens waived any rights or claims related to this case.  Saint-Gobain should not be permitted to proceed with an ambiguous and undeveloped defense at this stage, and summary judgment on Saint-Gobain's "waiver" defense should be granted.

**E.      Summary Judgment that the Marking Statute Does Not Bar Pre-Suit Damages for the '080 Patent Should Be Granted.**

Saint-Gobain's Answer also included a defense that Siemens is barred from seeking pre-suit monetary damages because it allegedly failed to meet the marking requirement set forth in 35 U.S.C. § 287.  Under that statute, a patentee may give notice to the public that its own products are covered by a patent by "fixing thereon the word 'patent' or the abbreviation 'pat.', together with the number of the patent, or . . . a label containing a like notice."  If a patentee does not mark its patented products, it may only recover pre-suit damages that were incurred after it gives the accused infringer actual notice of infringement.  *Id.*

Here, Siemens has continually marked its patented Biograph PET scanners since at least 2005, when Saint-Gobain began contributorily infringing and inducing the infringement of the '080 patent by selling its infringing LYSO crystals.  Siemens marks its Biograph scanners containing LSO crystals with a label clearly indicating that fact.   (Ex. 17, SMS000864, SMS000894 (Biograph 16 patent label providing that "one or more of these U.S. and foreign patents apply to this device" and listing the '080 patent); Ex. 18, SMS001101, SMS001130 (Biograph 2 and 6); Ex. 19, SMS001336, SMS001366 (Biograph 64); Ex. 20, SMS001579, SMS001613 (Biograph TruePoint PET-CT); *see also* Ex. 21, SMS003558-SMS003564 (engineering order form instructing update to Biograph labels).)  By marking its Biograph PET scanner, Siemens met its obligation to mark its patented products.  When a patentee marks its own patented products, the patentee is not required to give actual notice to an accused infringer to recover pre-suit damages.  35 U.S.C. § 287.  There is therefore no merit to Saint-Gobain's contention that § 287 bars pre-suit damages in this case, and summary judgment on this defense is appropriate.

**F.    Saint-Gobain Should Not Be Permitted to Present Its Fourth Affirmative Defense or any Prosecution History Estoppel Defense.**

**1.    The Court Should Strike Saint-Gobain's Fourth Affirmative Defense.**

The Federal Rules of Civil Procedure "were designed to prevent" a "trial by ambush." *See, e.g., United States v. Noe*, 821 F.2d 604, 608 (11th Cir. 1987). To that end, Rule 37(c)(1) precludes the use of improperly or untimely disclosed evidence at trial if the improper disclosure is without "substantial justification" and in any way prejudicial to the party seeking the discovery. Saint-Gobain, ***after the deadline for serving new discovery***, has attempted to breath life into its ambiguous and undeveloped Fourth Affirmative Defense, by now contending that the defense is based on prosecution history estoppel barring infringement under the doctrine of equivalents.

In its answer to Siemens' complaint, Saint-Gobain pled its Fourth Affirmative Defense as follows:

> Siemens is estopped from construing any claim of the '080 Patent to be infringed or to have been infringed, either literally or under the doctrine of equivalents, by any method or product manufactured, used, imported, sold or offered for sale by Saint-Gobain, in view of the prior art and/or because of admissions and statements made to the United States Patent and Trademark Office during prosecution.

(Ex. 16, 4/7/08 Saint-Gobain's Answer to Siemens' Amended Complaint; *see also* D.I. 7, Saint-Gobain's 5/14/07 Saint-Gobain's Answer to Siemens Complaint (using same language for Fourth Affirmative Defense).) Although Saint-Gobain now appears to take the view that its Fourth Affirmative Defense pertains to prosecution history estoppel, Saint-Gobain's pleading does not squarely raise that defense. For instance, prosecution history estoppel has no applicability to literal infringement, *see, e.g., Fromson v. Advance Offset Plate, Inc.*, 720 F.2d 1565, 1571 (Fed. Cir. 1983), and only tangentially has anything to do with prior art, yet both of those concepts are included in Saint-Gobain's pleading. Rather than a defense of prosecution

history estoppel, Saint-Gobain's Fourth Affirmative Defense appears to have been a placeholder for whatever defenses Saint-Gobain might stumble onto later in the case.

Given the vague and amorphous nature of Saint-Gobain's pleading, nearly a year ago, Siemens sought the factual and legal bases for Saint-Gobain's Fourth Affirmative Defense by interrogatory.  (Ex. 22, 7/27/07 Siemens' First Set of Interrogs. No. 10.)  Similarly, to the extent Saint-Gobain contended Siemens was barred from asserting infringement under the doctrine of equivalents, Siemens also sought by interrogatory the factual and legal bases for such a contention.  (Ex. 22, 7/27/07 Siemens' First Set of Interrogs. No. 4.)  In August 2007 Saint-Gobain objected to those interrogatories as premature, but promised to "supplement as more facts become available."  (Ex. 1, 8/31/07 Saint-Gobain's Resp. to First Set of Interrogs. (8/31/07).)  Because Saint-Gobain already possessed any information it might have needed to assert this defense, Siemens promptly requested that Saint-Gobain provide valid responses to Interrogatory Nos. 4 and 10 or confirm that Saint-Gobain would not pursue a prosecution history estoppel defense.  (Ex. 23, 9/7/07 Letter from Gregg LoCascio, P.C., Kirkland & Ellis, to Kelly Farnan, Richards, Layton & Finger, at 3, 5 ("[A]ll of the evidence that would seem to be necessary for Saint-Gobain's [prosecution history estoppel] defense, namely, the '080 patent and its prosecution history file, were disclosed to Saint-Gobain well over a month ago.  Accordingly, there is no reason for Saint-Gobain to withhold [its response to Siemens' Interrogatory No. 10 regarding prosecution history]—please respond to the interrogatory at once.").)  Saint-Gobain ignored Siemens' letter, and it did not supplement its response to Interrogatory No. 10 at that time.  With respect to Interrogatory No. 4, Saint-Gobain stated in September 2007 that "***Saint-Gobain does not contend that Siemens is 'barred' from arguing that the [accused] crystal is the equivalent*** of the LSO crystal [in the asserted claims]."  (Ex. 24, 9/25/07 Saint-Gobain's

Supplemental Resp. to First Set of Interrogs.)  In reliance on Saint-Gobain's response, Siemens did not press for further discovery on a prosecution history estoppel defense.

Then, on April 4, 2008—three weeks after the deadline for fact discovery in this case and just a month before expert reports were due—Saint-Gobain advised Siemens that it "intends to prove at trial, that Siemens **is barred** from asserting infringement under the doctrine of equivalents for reasons that we have [supposedly] previously identified.  The principal bases of this defense are discussed in **Saint-Gobain's responses to Siemens' Interrogatories Nos. 4 and 10**, as supplemented."   (Ex. 25, 4/4/08 Letter from John Ohman, Thelen Reid Brown Raysman & Steiner, to Charanjit Brahma, Kirkland & Ellis.)  That "intention" is expressly contrary to Saint-Gobain's September 25, 2007 response to Interrogatory No. 4, and, contrary to Saint-Gobain's assertion in that letter, the bases for Saint-Gobain's prosecution history estoppel defense are nowhere to be found in Saint-Gobain's interrogatory responses.  Amazingly, even though Saint-Gobain's letter points to its "response" to Interrogatory No. 10, no such response has **ever** been provided.[4]  Saint-Gobain's April 4, 2008 letter goes on to state that Saint-Gobain now intends to support its defense with the arguments set forth in a March 2006 opinion letter from Saint-Gobain's outside counsel.

---

[4] Saint-Gobain never responded to Interrogatory No. 10, other than to object to the interrogatory as premature.  And the full text of Saint-Gobain's supplemental response to Interrogatory No. 4 is: "Saint-Gobain does not contend that Siemens is 'barred' from arguing that the LYSO crystal is the equivalent of the LSO crystal, but as set forth in response to Interrogatory No. 2, Saint-Gobain believes that Siemens is not entitled to a range of equivalents that would include the LYSO crystal manufactured and sold by Saint-Gobain.  Notwithstanding this conclusion, for at least the reasons set forth above, the LYSO crystal is not an equivalent to the LSO crystal for purposes of the DOE."   (Ex. 24, 9/25/07 Saint-Gobain's Supplemental Resp. to First Set of Interrogs.)

Saint-Gobain offered no explanation for its reversal on whether it would mount a prosecution history estoppel defense. Clearly, Saint-Gobain cannot point to any newly-discovered evidence as the basis for its change of heart—Saint-Gobain received the opinion letter from its outside counsel more than a year before Siemens filed this suit. Yet, until April 4, 2008, neither that opinion letter nor the arguments made therein were ever referenced in connection with any prosecution history estoppel argument that Saint-Gobain intended to pursue.

Saint-Gobain's delay prejudiced Siemens' case preparation. Siemens had no ability to serve document requests, interrogatories, or requests for admission after Saint-Gobain's disclosure. Saint-Gobain witnesses were selected and scheduled for depositions before Saint-Gobain made its belated disclosure. Indeed, Siemens was midway through its expert disclosures and analysis before Saint-Gobain even mentioned its plan. Having previously failed to identify any basis for a prosecution history estoppel defense in response to Siemens interrogatories, Saint-Gobain's "supplementation" of its response to Siemens' Interrogatory Nos. 4 and 10 cannot be viewed as "timely" as required under Rule 26(e)(1)(A), and any prosecution history estoppel argument encompassed with Saint-Gobain's amorphous Fourth Affirmative Defense should be stricken. *See, e.g., CPC Int'l Inc. v. Archer Daniels Midland Co.*, 831 F. Supp. 1091, 1102-03 (D. Del. 1993) (defendant waived its right to certain infringement defenses because it failed to raise those defenses in response to plaintiff's interrogatories during discovery), *aff'd*, 31 F.3d 1176 (Fed. Cir. 1994).

## 2. In the Alternative, Summary Judgment on Saint-Gobain's Prosecution History Estoppel Defense Should Be Granted.

Even if Saint-Gobain were permitted to argue a prosecution history estoppel defense based on the limited grounds set forth in the March 2006 opinion letter it received from its outside counsel, summary judgment on that defense should be granted. Prosecution history

estoppel bars a patentee from recapturing subject matter surrendered by amendment as a condition of obtaining the patent. *See, e.g., Regents of Univ. of Cal. v. Dakocytomation Cal., Inc.*, 517 F.3d 1364, 1376 (Fed. Cir. 2008). When a narrowing amendment has been made and the reason for that amendment was a "substantial one relating to patentability," courts "presume[] that the patentee has surrendered all territory between the original claim limitation and the amended claim limitation." *Festo Corp. v. Shoketsu Kinzoku Kogyo Kabushiki Co., Ltd.*, 344 F.3d 1359, 1366-67 (Fed. Cir. 2003). A patentee can rebut that presumption by showing that the "equivalent [was] unforeseeable at the time of the application," that "the rationale underlying the amendment . . . bear[s] no more than a tangential relation to the equivalent in question," or that there is "some other reason suggesting that the patentee could not reasonably be expected to have described the insubstantial substitute in question." *Festo Corp. v. Shoketsu Kinzoku Kogyo Kabushiki Co.*, 535 U.S. 722, 740-41 (2002).

The prosecution history shows, however, that the February 1989 changes did not narrow the literal scope of the claim so as to exclude LYSO crystals that had been literally covered by the claims as originally written. Moreover, even if those amendments had narrowed the scope of the claim in such a way, the rationale for the changes was "peripheral, or not directly relevant, to the alleged equivalent"—LSO crystals with 10% of the Lu substituted with Y. *Insituform Tech., Inc. v. CAT Contracting, Inc.*, 385 F.3d 1360, 1370 (Fed. Cir. 2004). There are no disputed facts

underlying these conclusions, and judgment as a matter of law that prosecution history estoppel does not preclude infringement by equivalents in this case should be granted.

### a. Amending the Claim to Expressly Recite that the Crystal Must Be "Transparent" Does Not Give Rise to Prosecution History Estoppel.

████████████████████████████████████████████████████████

████████████████████████████████████████████████████████

████████████████████████████████████████ That change did not narrow the literal scope of the claim because a scintillator must, by definition, be transparent. (D.I. 117, 5/2/08 Joint Claim Construction Chart (defining "scintillator" as a "transparent single crystal that responds to radiation by emitting observable light"); '080 patent, col. 1, ll.15 (scintillator used in gamma ray detection is "a transparent single crystal").) Thus, the original claim—which recited "a scintillator composed of a single crystal"—inherently and necessarily limited the claim to transparent crystals. Under these circumstances, the amendment does not give rise to prosecution history estoppel because it is not a "narrowing" amendment. *See Primos, Inc. v. Hunter's Specialties, Inc.*, 451 F.3d 841, 849 (Fed. Cir. 2006) (no estoppel where claim amended to specify that recited "plate" had a "length" because all objects inherently have a length); *Business Objects, S.A. v. Microstrategy, Inc.*, 393 F.3d 1366, 1375 (Fed. Cir. 2005) (no estoppel where amendment from "SQL" to "predetermined query language" did not narrow limitation because original language inherently required that query language be predetermined) (emphasis omitted).

Even if this change were somehow viewed as narrowing, however, the presumption of prosecution history estoppel is clearly rebutted in this case because the rationale for the amendment bears no more than a tangential relationship to the equivalent in question (i.e., the rationale is "not directly relevant" to the alleged equivalent). *Insituform Tech.*, 385 F.3d at

1370. The "transparent" limitation was added to resolve any doubt that the claim referred to crystals rather than phosphor powders. (Ex. 27, 2/27/89 Amendment at 4, 8.) Saint-Gobain does not dispute that its 10% Y LYSO crystal is a transparent crystal. (Ex. 28, 11/2/07 McClellan Dep. Tr. at 136:11-13 ("Q. The 10% Y LYSO crystal, that's transparent, right? A. Yes.") Indeed, to function as a scintillator, a crystal must be transparent. ('080 patent, col. 2, ll.41-54.) The equivalent in question is substituting a small amount of yttrium for lutetium, a substitution that in no way affects the classification of the crystal as transparent. (Ex. 11, Weber Expert Report at 22 (adding "transparent" did not change scope of claim 1.) Amending the claim to explicitly recite the "transparent" limitation does not, therefore, bar a finding of equivalence in this case. *Primos, Inc.*, 451 F.3d at 849 (no prosecution history estoppel because amendment requiring "plate" to be "differentially spaced" from membrane was tangentially related to assertion that differentially spaced dome was equivalent to recited plate).

> **b. Amending the Claim to Recite the Crystal Composition Directly Rather than in Relation to Melt Composition Does Not Give Rise to Prosecution History Estoppel.**

██████████████████████████████████████████████████

██████████████████████████████████████████████████

███████████████████████████████████ The original claim specified the percentage of cerium dopant (correlated to the value of "x" in claim 1) in terms of the concentration range of dopant in the melt from which the crystal was made. The examiner viewed that way of specifying the dopant concentration in the resulting crystal as impermissible and rejected the claim under 35 U.S.C. § 112, ¶ 2. (Ex. 29, 11/28/88 Office Action at 3.) In response, the applicant amended the claim to specify the concentration range of cerium dopant present in the final crystal itself. (Ex. 27, 2/27/89 Amendment.) The applicant explained that the dopant concentration in a crystal is approximately 20-30% of the dopant concentration in the

melt from which that crystal was made.  (Ex. 27, 2/27/89 Amendment at 3.)  Thus, to obtain the x-values for the amended claim, the applicant simply multiplied the x-values from the original claim (melt-concentration basis) by 20-30% and removed the claim's reference to melt concentration.  In that way, to the extent possible, the amendment preserved the original scope of claim 1, but expressed the cerium dopant concentration on a different basis.   Thus, the amendment was not narrowing and there is no basis for prosecution history estoppel arising from this amendment.  (Ex. 11, Weber Expert Report at 22-23.)

Even if that amendment were considered narrowing, the *Festo* presumption would not bar application of the doctrine of equivalents in this case.  The "*Festo* presumption" is that the patentee "has surrendered all territory **between** the original claim limitation and the amended claim limitation."  *Festo*, 344 F.3d at 1366-67.  Here, the accused equivalent (LSO containing 10% Y) does not fall within the territory between the literal scope of the original and amended claim.  Rather, LSO containing Y is beyond the literal scope of the amended claim just as it was beyond the literal scope of the original claim.  Thus, the amendment could not have surrendered the equivalent in question, and the *Festo* presumption does not bar the doctrine of equivalents in this case.

Moreover, even if the amendment in the way the claim specifies cerium dopant concentration triggered the *Festo* presumption with respect to the accused equivalent—10% Y LYSO scintillator crystals—that presumption is rebutted because the rationale for the amendment was no more than tangential to the asserted equivalent.  *Festo*, 535 U.S. at 740-41.  If the amendment had any effect on the scope of claim 1 it could only be to alter the percentage of dopant in the crystal.  The applicant explained that the amendment was merely to "define the cerium concentration by reference to the crystal alone," in order to overcome the examiner's

objection to reciting the concentration in terms of melt concentration.    (Ex. 27, 2/27/89 Amendment at 3.)  The asserted equivalent (substituting a small amount of yttrium for lutetium) has nothing to do with cerium dopant concentration, and the rationale for the amendment bears no more than a tangential relationship to the equivalent in question (*i.e.*, the rationale is "not directly relevant" to the alleged equivalent).  *Insituform Tech.*, 385 F.3d at 1370.  (Ex. 11, Weber Expert Report at 22-23.)  As a matter of law, therefore, there is no basis for a prosecution history estoppel defense based on the February 1989 amendment of the claims of the '080 patent.

## VI.    CONCLUSION

For these reasons, Siemens respectfully requests the Court grant summary judgment on Saint-Gobain's laches, estoppel, waiver, and marking defenses.  Siemens further respectfully requests the Court strike Saint-Gobain's Fourth Affirmative Defense or, in the alternative, grant Siemens summary judgment that Siemens is not barred by prosecution history estoppel from arguing that Saint-Gobain's 10% Y LYSO crystals satisfy the "scintillator" element of the '080 patent claims under the doctrine of equivalents.

MORRIS, NICHOLS, ARSHT & TUNNELL LLP

*/s/ Maryellen Noreika*

Jack B. Blumenfeld (#1014)
Maryellen Noreika (#3208)
1201 North Market Street
P.O. Box 1347
Wilmington, DE  19899
(302) 658-9200
jblumenfeld@mnat.com
mnoreika@mnat.com

*Attorneys for Plaintiff*
   *Siemens Medical Solutions USA, Inc.*

29

*OF COUNSEL:*

Gregg F. LoCascio
Charanjit Brahma
Sean M. McEldowney
KIRKLAND & ELLIS LLP
655 15th Street, N.W.
Washington, D.C. 20005-5793
(202) 879-5000

May 9, 2008
2322704

## CERTIFICATE OF SERVICE

I, the undersigned, hereby certify that on May 16, 2008, I electronically filed the foregoing with the Clerk of the Court using CM/ECF, which will send notification of such filing(s) to the following:

> Kelly E. Farnan, Esquire
> RICHARDS, LAYTON & FINGER, P.A.

I also certify that copies were caused to be served on May 16, 2008 upon the following in the manner indicated:

### BY HAND DELIVERY AND ELECTRONIC MAIL

Kelly E. Farnan, Esquire
RICHARDS, LAYTON & FINGER, P.A.
One Rodney Square
Wilmington, DE  19801

### BY ELECTRONIC MAIL

Frederick L. Whitmer, Esquire
THELEN REID BROWN RAYSMAN & STEINER LLP
875 Third Avenue
New York, NY  10022


*/s/ Maryellen Noreika*
Maryellen Noreika (#3208)