IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| SIEMENS MEDICAL SOLUTIONS USA, INC., | ) ) ) | |
| Plaintiff, | ) ) | |
| v. | ) ) | C.A. No.  07-190 (SLR) |
| SAINT-GOBAIN CERAMICS & PLASTICS, INC., | ) ) ) | **REDACTED – PUBLIC VERSION** |
| Defendant. | ) ) | |

**SIEMENS' REPLY BRIEF IN SUPPORT OF MOTION FOR SUMMARY
JUDGMENT ON SAINT-GOBAIN'S AFFIRMATIVE DEFENSES AND
MOTION TO STRIKE SAINT-GOBAIN'S FOURTH AFFIRMATIVE DEFENSE**

MORRIS, NICHOLS, ARSHT & TUNNELL LLP
Jack B. Blumenfeld (#1014)
Maryellen Noreika (#3208)
1201 North Market Street
P.O. Box 1347
Wilmington, DE  19899
(302) 658-9200
jblumenfeld@mnat.com
mnoreika@mnat.com

*Attorneys for Plaintiff*
  *Siemens Medical Solutions USA, Inc.*

OF COUNSEL:

Gregg F. LoCascio
Charanjit Brahma
Sean M. McEldowney
Michael A. Pearson, Jr.
KIRKLAND & ELLIS LLP
655 15th Street, N.W.
Washington, D.C. 20005-5793
(202) 879-5000

Original Filing Date:  June 11, 2008
Redacted Filing Date: June 17, 2008

## TABLE OF CONTENTS

**Page(s)**

I.    INTRODUCTION ....................................................................................................1

II.   ARGUMENT ...........................................................................................................3

    A.    Summary Judgment Should Be Granted Against Saint-Gobain's
        Affirmative Defense of Laches. ...................................................................3

        1.    Siemens Did Not Unreasonably or Inexcusably "Delay". ............3

        2.    Saint-Gobain Suffered No Prejudice. ...........................................8

    B.    Summary Judgment Should Be Granted On Equitable Estoppel .........................11

        1.    Saint-Gobain Has Nothing To "Rely" Upon. ..............................11

        2.    Saint-Gobain Did Not Rely On Anything.....................................12

        3.    Saint-Gobain Identifies No Harm Suffered. ................................13

    C.    Saint-Gobain's Waiver Defense Also Fails. .....................................................13

    D.    Summary Judgment on the "Non-Marking" Defense Is Proper. .........................14

    E.    Saint-Gobain's Belated Prosecution History Estoppel Arguments Should
        Be Stricken or Dismissed on Summary Judgment...............................................15

        1.    The Court Should Strike Saint-Gobain's Fourth Affirmative
            Defense. .......................................................................................15

        2.    Even if Saint-Gobain is Allowed to Pursue a Prosecution History
            Estoppel Defense, Summary Judgment Should be Granted. ....................17

III.  CONCLUSION.......................................................................................................20

# TABLE OF AUTHORITIES

**Page(s)**

## Cases

*A.C. Aukerman Co. v. R.L. Chaides Constr. Co.*,
   960 F.2d 1020 (Fed. Cir. 1992) (en banc).........................................................9, 11, 12, 13

*Antonious v. Spalding & Evenflo Cos.*,
   275 F.3d 1066 (Fed. Cir. 2002)..............................................................................5

*CPC Int'l Inc. v. Archer Daniels Midland Co.*,
   831 F. Supp. 1091 (D. Del. 1993), *aff'd*, 31 F.3d 1176 (Fed. Cir. 1994) ........................16

*Cybor Corp. v. FAS Techs., Inc.*,
   138 F.3d 1448 (Fed. Cir. 1998)...............................................................................7

*Eastman Kodak Co. v. Goodyear Tire & Rubber Co.*,
   114 F.3d 1547 (Fed. Cir. 1997).............................................................................7

*Enzo Biochem, Inc. v. Gen-Probe, Inc.*,
   424 F.3d 1276 (Fed. Cir. 2005).............................................................................2

*Festo Corp. v. Shoketsu Kinzoku Kogyo Kabushiki Co.*,
   344 F.3d 1359 (Fed. Cir. 2003) (en banc)...........................................................16

*Festo Corp. v. Shoketsu Kinzoku Kogyo Kabushiki Co.*,
   535 U.S. 722 (2002)..........................................................................................17, 19

*Genzyme Corp. v. Atrium Medical Corp.*,
   Case No. 00-958, 2003 U.S. Dist. LEXIS 12784 (D. Del. July 22, 2003) ........................4

*Leading Edge Tech. Corp. v. Sun Automation Inc.*,
   23 U.S.P.Q.2d 1161 (D. Md. 1991) .......................................................................4

*Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*,
   475 U.S. 574 (1986)............................................................................................1

*Meyers v. Brooks Shoe, Inc.*,
   912 F.2d 1459 (Fed. Cir. 1990).............................................................................9

*Nursery Supplies Inc. v. Lerio Corp*,
   45 U.S.P.Q.2d 1332 (M.D. Pa. 1997) ....................................................................13

*Shomide v. ILC Dover, Inc.*,
   521 F. Supp. 2d 324 (D. Del. 2007)......................................................................10

*Symantec Corp. v. Computer Assocs. Int'l, Inc.*,
  522 F.3d 1279 (Fed. Cir. 2008) ..................................................................... 4

*Wanlass v. Fedders*,
  145 F.3d 1461 (Fed. Cir. 1998) ................................................................... 7, 8

*Wesley-Jessen Corp. v. Pilkington Visioncare, Inc.*,
  844 F. Supp. 987 (D. Del. 1994) .................................................................. 16

*Winn Inc. v. Eaton Corp.*,
  272 F. Supp. 2d 968 (C.D. Cal. 2003) ......................................................... 20

**Statutes**

35 U.S.C. § 287 ............................................................................................... 14

**Rules**

Fed. R. Civ. P. 33 .............................................................................................. 1

Fed. R. Civ. P. 37 ......................................................................................... 1, 16

Fed. R. Civ. P. 56 .............................................................................................. 1

Fed. R. Civ. P. 56(c) .............................................................................. 1, 2, 3, 14

Fed. R. Civ. P. 56(e) .......................................................................................... 1

Fed. R. Civ. P. 56(e)(2) .................................................................................. 2, 13

iii

## I.    INTRODUCTION

From Saint-Gobain's opposition brief, one might wonder if Rule 56 (as well as perhaps Rules 33 and 37) have been torn out of its copy of the Federal Rules. Those rules —largely or completely ignored in Saint-Gobain's response — remain in effect, govern these proceedings, and support the grant of summary judgment on Saint-Gobain's affirmative defenses and the strike of its belated prosecution history estoppel defense. Saint-Gobain's opposition, despite its length, says little and suffers from at least three significant failings.

First, Saint-Gobain ignores fundamental legal maxims to avoid summary judgment, including:

- A party must disclose its contentions and the basis therefore in response to interrogatories under Federal Rule 33;

- A party who does not properly respond to an interrogatory is generally not allowed to take the undisclosed position at trial under Rule 37; and

- Summary judgment under Rule 56 allows this Court to narrow the issues for trial by eliminating issues that are legally foreclosed or not factually in dispute.

Second, Saint-Gobain's belief that it is entitled to a "trial by jury" on any issue of its choosing is wrong. Indeed, if Saint-Gobain's unsupported cries of "material issues are in dispute" were sufficient to avoid summary judgment, Rule 56 would have no purpose at all. Saint-Gobain's brief is exactly the sort of response that calls for oft-cited language reminding non-movants that more than a metaphysical doubt and more than mere attorney argument are required to avoid summary judgment. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986); Fed. R. Civ. P. 56.

Throughout its brief, Saint-Gobain ignores the express language of sections 56(c) and 56(e) and the summary judgment framework and burdens they establish. Rule 56(c) instructs that the summary "judgment sought should be rendered if the pleadings, the discovery and

disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." Siemens' opening brief does exactly that, triggering Rule 56(e)(2), which specifically requires Saint-Gobain to "set out specific facts showing a genuine issue for trial," because "an opposing party may not merely rely on allegations or denials in its own pleading." Along those lines, the Federal Circuit has recognized that "attorney argument is no substitute for evidence," and that once the moving party satisfies its burden under Rule 56(c), "it [is] incumbent upon [] the moving party to produce some evidence refuting [movant's] claim." *Enzo Biochem, Inc. v. Gen-Probe, Inc.,* 424 F.3d 1276, 1284 (Fed. Cir. 2005) (affirming summary judgment grant where non-movant "failed to establish the existence of a genuine issue of material fact sufficient to avoid summary judgment"). Yet Saint-Gobain's brief offers attorney argument standing alone, without factual support or citation. Saint-Gobain's response brief falls far short of its Rule 56(e)(2) obligation and fails to "demonstrate a genuine issue for trial" necessary to avoid summary judgment.

Third, Saint-Gobain ignores the ***undisputed admissions*** of its witnesses and other undisputed facts that compel summary judgment, including:

Regarding its laches and equitable estoppel arguments:

- ***Siemens never made any representations*** or statements to Saint-Gobain;

- Even Saint-Gobain's alleged "delay" is ***only one year*** and Siemens spent much of the actually much-shorter amount of time it was aware of Saint-Gobain's involvement working to obtain a sample crystal for pre-filing testing;

- Saint-Gobain took ***"no action"*** in supposed reliance of its alleged belief that it would not be sued;

Regarding marking of Siemens' products:

- The only evidence presented demonstrates that Siemens has consistently marked;

- Siemens asserted willfulness, thus satisfying its pleading requirement;

2

Regarding prosecution history estoppel:

- Saint-Gobain took the position during discovery and through April 2008 that it was *not* asserting prosecution history estoppel;

- Saint-Gobain has *never* provided a response to Siemens' contention interrogatories on this issue; and

- Saint-Gobain's own expert admits that the 10% Y LYSO crystal was not in the territory allegedly surrendered by either amendment.

Through these and other facts set forth in Siemens' opening brief, Siemens has met its burden under Rule 56(c) and demonstrated that summary judgment should be granted. Because Saint-Gobain did not (and could not) "set out specific facts showing a genuine issue for trial" in its opposition, Siemens' motion should be granted.

## II.    ARGUMENT

### A.    Summary Judgment Should Be Granted Against Saint-Gobain's Affirmative Defense of Laches.

For all of the discussion of alleged laches (and virtually-identical estoppel and waiver arguments) in its opposition brief, the most critical fact gets the least mention by Saint-Gobain: even under Saint-Gobain's legally-incorrect timekeeping measure, the entire delay Saint-Gobain relies upon would be *only one year*. Given that the alleged delay is far less than the six years necessary to trigger a laches presumption, the burden rests with Saint-Gobain to prove two elements to succeed on its laches claim: (i) that Siemens unreasonably and inexcusably delayed in bringing suit; *and* (ii) that such a delay operated to the prejudice of Saint-Gobain. As discussed in Siemens' opening brief, Saint-Gobain's own witnesses have admitted that it cannot satisfy either element and summary judgment on laches should be granted.

#### 1.    Siemens Did Not Unreasonably or Inexcusably "Delay".

As a threshold matter, Saint-Gobain does not cite a single case (and Siemens is not aware of one) where a one-year delay or less has satisfied the "unreasonable" delay standard necessary

for defendant to invoke a laches defense. To the contrary, the limited authority cited by Saint-Gobain indicates that it was an open question whether any period of alleged "delay" shorter than *six years* could ever be "unreasonable." D.I. 128, Opp. Br. at 15 (citing *Genzyme Corp. v. Atrium Medical Corp.*, Case No. 00-958, 2003 U.S. Dist. LEXIS 12784 (D. Del. July 22, 2003). *But see Leading Edge Tech. Corp. v. Sun Automation Inc.*, 23 U.S.P.Q.2d 1161, 1168 (D. Md. 1991) (concluding "as a matter of law that the doctrine of laches does not apply" in case with only three years between knowledge of infringement and filing). Similarly, Saint-Gobain cites no authority for its "sliding scale" argument that the measure of "unreasonable and inexcusable" delay under laches somehow becomes shorter as the patent's expiration approaches.

Given its lack of legal support, Saint-Gobain instead suggests that laches is an amorphous factual issue that the Court is ill-prepared to address on summary judgment, allegedly based upon generic language from the Federal Circuit's *Aukerman* decision. Again, Saint-Gobain is incorrect. Summary judgment is properly and routinely granted to eliminate meritless defenses, and that includes laches, just like it includes any other claim or defense lacking a genuine disputed issue of fact. For instance, in *Symantec Corp. v. Computer Assocs. Int'l, Inc.*, 522 F.3d 1279, 1294-95 (Fed. Cir. 2008), the Federal Circuit affirmed a district court's summary judgment decision dismissing a laches defense even where the lawsuit was not filed until 6 years after the patentee sent a notice letter to a predecessor company of the defendant.[1] While Saint-Gobain

---

[1]    Saint-Gobain admits that neither it, nor its affiliated corporate entities, received any letter or contact from Siemens alleging infringement. Instead, Saint-Gobain concocts its one-year "delay" by starting its clock as of a letter not to it, but dated March 2006 from Siemens to Philips, a customer of Saint-Gobain.

(Continued...)

routinely cites to the *Aukerman* decision, what goes unmentioned in its brief is the ***nine-and-a-half year delay*** in that case between the patentee's 1979 cease-and-desist letter to the defendant and the filing of a lawsuit in 1988. The fact that Saint-Gobain purports to rely on a one-year period (at most) in this case and that no court has found such a short period of time to be sufficient precludes the application of laches as a matter of law, especially on these facts.

Siemens has put forth evidence that the time between learning about Saint-Gobain's involvement and the filing of this suit was a matter of months and that during that window, Siemens dutifully took steps to acquire a sample of Saint-Gobain's 10% Y LYSO so that it could be tested. Saint-Gobain scoffs at this idea and appears to suggest a patentee should file a lawsuit first, and investigate its claims later. (Opp. Br. at 14-15.) That is neither the law nor a logical policy and Saint-Gobain cannot now attempt to use against Siemens the relatively short amount of time that it took Siemens to investigate its claims before initiating a lawsuit. *See, e.g., Antonious v. Spalding & Evenflo Cos.*, 275 F.3d 1066, 1073-76 (Fed. Cir. 2002).

Having made its requisite showing, Siemens is entitled to summary judgment unless Saint-Gobain demonstrates that Siemens unreasonably and inexcusably delayed filing suit, based on the time period ***from the point at which Siemens knew or reasonably should have known that Saint-Gobain was infringing*** until the date the lawsuit was filed. Yet Saint-Gobain has offered no competent evidence to contradict that the length of that period was a matter of months and certainly less than one year. Saint-Gobain cannot and does not point to any evidence that Siemens ***actually knew*** that Saint-Gobain was offering 10% Y LYSO crystals to customers for use in PET scanners or otherwise. ██████████████████████████████████

---

██████████████████████████████████████████████ Citations to
"Ex. __" refer to the Declaration of Michael A. Pearson, Jr., submitted herewith.



Attempting to manufacture a laches claim in light of this short time period and Siemens' lack of knowledge of Saint-Gobain's efforts to develop a lutetium-based scanner with Philips, Saint-Gobain contends that Siemens *should have guessed* – or "constructively" known – that Saint-Gobain was supplying Philips with LYSO crystals and what percentage of yttrium was being used.[2] Saint-Gobain's "constructive notice" argument has no merit. Saint-Gobain does not (because it cannot) point to a single document that was available to Siemens before it filed suit that linked Saint-Gobain to Philips in this context, much less as Philips' supplier of a 10% Y LYSO crystal.[3] Indeed, to try to support this argument, Saint-Gobain in its opposition brief had to resort to relying on an "internal email" from Saint-Gobain, ignoring the obvious fact that

---

[2]  This "constructive notice" argument is nowhere to be found in Saint-Gobain's response to Siemens' Interrogatory No. 12, which asked Saint-Gobain to describe the basis for its laches defense. Saint-Gobain should not be permitted to try to gin up a "constructive notice" argument at the eleventh hour and in violation of its discovery obligations.

[3]  Saint-Gobain did not produce any such document in response to discovery requests nor was any such document identified in its response to Interrogatory No. 12.

Siemens was never privy to that document.  (Opp. Br. at 13.)  ███████████

███████████████████████████████████████████

███████████████████████████████████████████

███████████████████████████

In addition to providing no facts sufficient to avoid summary judgment, Saint-Gobain's "constructive notice" caselaw is also inapt and actually supports Siemens' motion.  In *Eastman Kodak*, the Federal Circuit affirmed a district court's denial of an infringer's laches defense where:  (1) the defendant maintained a "policy of secrecy for the alleged infringement," and  (2) "deni[ed] infringement upon inquiry."  *Eastman Kodak Co. v. Goodyear Tire & Rubber Co.*, 114 F.3d 1547, 1559 (Fed. Cir. 1997), *abrogated on other grounds by Cybor Corp. v. FAS Techs., Inc.*, 138 F.3d 1448 (Fed. Cir. 1998).  Insofar as Saint-Gobain contends it can avail itself of the Siemens and Philips 2006 correspondence, it cannot have it both ways.  It is undisputed that Philips — in response to that letter — ███████████████████████████ and that Philips did not disclose either the supplier of its LYSO crystals or the yttrium percentage used in those crystals, thereby excusing any delay that was being measured from that exchange per *Eastman Kodak*.  The Federal Circuit's decision in *Wanlass v. Fedders*, 145 F.3d 1461 (Fed. Cir. 1998), goes even further against Saint-Gobain's position.  There, the Federal Circuit affirmed the district court's rejection of the "constructive notice" argument and related laches defense espoused here by Saint-Gobain, and the lower court's determination that a finding of constructive notice of infringement would effectively impose an "unreasonable" duty on the

---

4    The only other document Saint-Gobain mentions — a 2005 scientific article (D.I. 129, Opp. Br. Ex. 12) comparing the properties of the patented LSO with two different LYSO crystals produced by Saint-Gobain and another company – makes no reference to Saint-Gobain selling such crystals to Philips (or to anyone else).

plaintiff to "periodically test[] all others' products." *Id.* at 1465. Despite that, it remains unrefuted that Siemens undertook steps to acquire the Saint-Gobain crystal promptly after learning that it was commercially supplying Philips and others in the industry with an LYSO crystal, tested that crystal, and then sued Saint-Gobain within weeks of obtaining that test data.[5]

Faced with Philips' denial of infringement and the secrecy surrounding the identity of Philips' LYSO supplier, Siemens undertook the type of prudent inquiry necessary prior to filing suit against Saint-Gobain. The "delay" hypothesized by Saint-Gobain, even if true, would not be unreasonably long nor would it be inexcusable. Saint-Gobain cannot establish the first prong of its laches argument with a few-month delay used to obtain and test its product.

### 2.    Saint-Gobain Suffered No Prejudice.

Saint-Gobain's discussion of "prejudice" is based only on attorney argument, and fails to identify any supporting evidence or to dispute the evidence set forth by Siemens. █████████

████████████████████████████████████████████████████

████████████████████████████

█  █████████████████████████████████████

█  █████████████████████████████████

█  █████████████████████████████████████

█  ████████████████████████████████████

---

5  Saint-Gobain's off-hand quip on page 15 of its opposition brief suggesting that Siemens' testing data is nowhere to be found is wrong and evidences another example of Saint-Gobain ignoring the record. As cited on page 12 of Siemens' Opening Brief for this motion, ████████████████████████████████████████████████████████████████████████████████████████████████████████

████████████████████████████████████████████████

████████████████████████████████████████████████

████████████████████████████████████████████████

████████████████████    Mr. Field's attempt, however, cannot save Saint-Gobain's laches defense.

Mere speculation from a witness is insufficient to defeat Siemens' motion for summary judgment

on this issue.[6] *See Meyers v. Brooks Shoe, Inc.*, 912 F.2d 1459, 1463 (Fed. Cir. 1990), *overruled*

*in non-pertinent part by A.C. Aukerman Co. v. R.L. Chaides Constr. Co.*, 960 F.2d 1020, 1038

(Fed. Cir. 1992) (en banc).

In the face of Saint-Gobain's admissions that it made a "business decision" to seize a

"market opportunity" with the infringing product, Saint-Gobain opts not to try to refute that fatal

admission, but instead attempts to distinguish other "business decision" cases, specifically the

*Gasser Chair* and *Hemstreet* decisions. These cases (cited in Siemens' opening brief at 9 and

14) hold that an infringer's *ordinary business decision* to infringe a patent does not give rise to

"prejudice" unless that business decision is made in reliance upon a patentee's delay in enforcing

the patent. Purporting to distinguish these cases in response, ████████████████████

████████████████████████████████████    (Opp. Br. at 17-18). That

fact, however, only confirms that Saint-Gobain did not rely on any "delay" by Siemens, would

suffer no "delay-induced" prejudice, and that summary judgment should be granted. Moreover,

---

6  ████████████████████████████████████████████████
████████████████████████████████████████████████
████████████████████████████████████████████████
████████████████████████████████████████████████
████████████████████    However, as the Federal Circuit recognized in *A.C. Aukerman*, "other litigation" like the Photonic Materials dispute, has served as a justification negating delay. *A.C. Aukerman*, 960 F.2d at 1033.

Saint-Gobain's timeline does not add up and is refuted by undisputed facts  Just as in *Gasser Chair* and *Hemstreet*, and as admitted by its corporate representative Mr. Rothan, Saint-Gobain made a business decision to infringe, and that came with the risk of being sued.[7]

Lastly, Saint-Gobain's speculation (without any affidavit or other factual support) that it was prejudiced because it "might well have centered manufacture upon" other crystals if Siemens had notified it earlier of its infringement is also insufficient to avoid summary judgment. In addition, Saint-Gobain is judicially estopped from making this argument because Saint-Gobain said exactly the opposite when it successfully opposed Siemens' motion for preliminary injunction last year, and knows its current statements to be incorrect. *See, e.g., Shomide v. ILC Dover, Inc.*, 521 F. Supp. 2d 324, 335 (D. Del. 2007) (Robinson, J.). At that time, Saint-Gobain argued that it began making the infringing LYSO crystals, because, once Philips rejected its lanthanum bromide crystal product, it *"had no practical alternative but to discontinue its La-bromide R&D for PET and refocus its effort and research and development dollars to ... LYSO* for the PET scanners that Philips was developing."[8]

---

7 

8 *See* D.I. 40, Saint-Gobain's Opp. Br. to Siemens' Mot. for Prelim. Inj. at 14 (emphasis added); *see also id.* at 11-12.

To avoid summary judgment, Saint-Gobain needed to identify "a change in the economic position of the alleged infringer during the period of delay," that is "not merely those attributable to a finding of liability for infringement."[9] *A.C. Aukerman*, 960 F.2d at 1033. Saint-Gobain has not done so. As such, summary judgment is appropriate.

## B.　Summary Judgment Should Be Granted On Equitable Estoppel.

Saint-Gobain's equitable estoppel defense fails for some of the same reasons as its laches defense (no reliance by and no prejudice to Saint-Gobain), as well as at least one additional reason — it is undisputed that Siemens did not make any representation to Saint-Gobain that it would not enforce the '080 patent. As each of these defects is fatal to the defense, summary judgment should be granted on Saint-Gobain's equitable estoppel defense.

### 1.　Saint-Gobain Has Nothing To "Rely" Upon.

Saint-Gobain does not dispute that Siemens never made any affirmative statement that it would not sue Saint-Gobain for its sales of 10% Y LYSO. Rather, Saint-Gobain's own corporate representative admitted as much:



---

[9]　Although Saint-Gobain asserts in passing that it has suffered *both* economic and evidentiary prejudice in its opposition, (Opp. Br. at 16), it actually does not make any evidentiary prejudice argument or id/entify any particular evidence that is no longer available anywhere in its brief.

███████████████████████████████████████ With no representation
to rely upon, Saint-Gobain places its hope on a "reliance on silence" argument. For silence to be
the basis of an estoppel, however, Siemens would have had to have a clear duty to speak or have
demonstrated that it was acquiescing to infringers. *A.C. Aukerman*, 960 F.2d at 1042. Saint-
Gobain has offered no evidence of either and they are not legitimately in dispute.[10] It is
undisputed that in 2005-2006 Siemens was asserting a foreign equivalent of the '080 patent
against another manufacturer — Photonic Materials, Ltd. — to prevent its similar Low-Y LYSO
crystal from being used to infringe ███████████████████████████
████████████████████████████ With no legal duty to inform Saint-Gobain
whether or not it believed Saint-Gobain's provision of LYSO crystals for PET infringed the '080
patent, Siemens cannot be equitably estopped from enforcing the patent against Saint-Gobain.

### 2.    Saint-Gobain Did Not Rely On Anything.

As with laches above, Saint-Gobain's corporate representative, ██████████████
████████████████████████████████████████████████
████████████████████████████████████████████████
████████████████████████████████████████████████
██████████ The bare attorney argument in Saint-Gobain's opposition brief that "Saint-Gobain
ultimately relied on Siemens [sic] delay in filing suit against Philips, Siemens [sic] direct
competitor, ... to assure itself that Saint-Gobain would not be sued"[11] cannot overturn the

---

10   Saint-Gobain seems to suggest that such a duty could somehow arise from Siemens'
     correspondence not with Saint-Gobain, but *with Philips*. Saint-Gobain, however, provides no
     legal or factual basis to impose such a duty even vis-à-vis Philips, much less transport this
     personal defense over to Saint-Gobain.

11   Saint-Gobain also references, without citation, "subsequent communications between Philips
     and Siemens that it would not sue on Gemini." (Opp. Br. at 21.) Siemens is unaware of such
                                                                            (Continued...)

admission of its corporate representative. Because it is undisputed that Saint-Gobain did not rely on any representation or silence by Siemens in any way, summary judgment on the equitable estoppel defense is proper.

### 3.    Saint-Gobain Identifies No Harm Suffered.

Saint-Gobain recognizes that it must show that it "would be harmed materially" to proceed on its estoppel claim. (Opp. Br. at 19, citing *A.C. Aukerman*, 960 F.2d at 1041). Saint-Gobain has, however, failed to show that it changed its economic position because of any action by Siemens. Indeed, its suggestion that it did so based on an opinion of counsel[12] (as opposed to a representation by Siemens) and to seize a "market window" puts it squarely within cases like *Nursery Supplies Inc. v. Lerio Corp*, 45 U.S.P.Q.2d 1332, 1342 (M.D. Pa. 1997), that refuse to apply equitable estoppel to such situations. Having proffered evidence to show that no genuine issue of material fact exists, Siemens' summary judgment motion should be granted where Saint-Gobain fails to present any rebuttal evidence. Fed. R. Civ. P. 56(e)(2).

### C.    Saint-Gobain's Waiver Defense Also Fails.

Saint-Gobain's one-paragraph discussion of "waiver" is noteworthy for its failure to cite a single case or a shred of evidence in support of that defense. At bottom, Saint-Gobain must be forced to define the basis for this supposed defense before it can be "left to the jury to determine at trial whether the evidence supports [that] defense," as Saint-Gobain suggests. (Opp. Br. at

---

communications, and neither Saint-Gobain nor Philips has produced any document or identified any discussions evidencing to such a communication.

[12]  ████████████████████████████████████████████████████████████

23.) Saint-Gobain identifies nothing in dispute and, frankly, its mere recycling of its laches and estoppel points demonstrates that there is no valid waiver defense. Having failed to develop or disclose it for this long, Saint-Gobain's inability to concoct something in opposition here only confirms that summary judgment is appropriate on this "defense."

### D.    Summary Judgment on the "Non-Marking" Defense Is Proper.

As an initial matter, Saint-Gobain's suggestion that Siemens has not pled marking is wrong. Siemens' pleading obligations were met when it alleged, in both its original Complaint (D.I. 1, ¶ 17) and Amended Complaint (D.I. 107, ¶ 18), that Saint-Gobain's infringement was willful, which has been held to satisfy the pleading obligation with respect to marking. Although it was not cited by Saint-Gobain, a binding 2005 Federal Circuit decision resolves this issue in Siemens' favor. In *Sentry Prot. Prods., Inc. v. Eagle Mfg. Co.*, 400 F.3d 910 (Fed. Cir. 2005), the Federal Circuit held that the patentee's "pleading that the 'infringements have been willful and with full knowledge of the [asserted] patents' was sufficient" to satisfy the patentee's pleading obligation and preserve its right to rely on marking. *Id.* at 918. The complaint is clear; there is no dispute that Siemens has pled the requirements to recover pre-suit damages.

Saint-Gobain then tries to create a fact issue on marking by stating that Siemens has not offered proof that Siemens' patented Biograph PET scanners were consistently marked with the '080 patent number since 2005, the first year in which Saint-Gobain sold its LYSO. (Opening Br. Ex. 3.) That is untrue and plainly ignores the evidence presented in Siemens' opening brief, specifically the Operator's Guides for each of the Siemens' Biograph PET scanner models showing the label on each Biograph machine indicating that U.S. Patent No. "4,958,080" applies to the scanner. (D.I. 122, Opening Br. Exs. 17-21.) As such, Siemens has made a prima facie showing that it has complied with the notice provisions of 35 U.S.C. § 287 and met its Rule 56(c) burden, putting the ball in Saint-Gobain's court. But in response, Saint-Gobain put forth

14

*absolutely no rebuttal evidence* and the entire record on this issue is undisputed and in Siemens' favor. As such, summary judgment on this affirmative defense is appropriate.

### E.    Saint-Gobain's Belated Prosecution History Estoppel Arguments Should Be Stricken or Dismissed on Summary Judgment.

#### 1.    The Court Should Strike Saint-Gobain's Fourth Affirmative Defense.

While Saint-Gobain tries to parse its Fourth Affirmative Defense — a catch-all paragraph that generally relates to defending a patent case — it is a far cry from a simple assertion of "prosecution history estoppel" ("PHE"), a black-letter term that is notably absent from Saint-Gobain's language. But even under Saint-Gobain's view that PHE was intended to be and was in fact buried in that language, that defense should still be stricken. Indeed, *because* of the cryptic catch-all nature of the Fourth Affirmative Defense, Siemens followed the rules and this Court's procedures and schedule and served contention Interrogatory No. 10 seeking the legal and factual bases for that defense in July 2007. Despite repeated requests, Saint-Gobain even today has not provided a response to Interrogatory No. 10 other than a "prematurity" objection that wasn't even valid at the time it was made. (*See* Opening Br. at 21-24.)

Saint-Gobain virtually ignores its inadequate discovery record on this and other similar interrogatories in its response, with the exception of one remarkable phrase:

> "[I]t is of *no consequence* that until April 4, 2008, neither the opinion letter nor the arguments made therein [thus, nothing in any written discovery response] were ever referenced in connection with any prosecution history estoppel argument that Saint-Gobain intended to pursue."

(Opp. Br. at 7.) Saint-Gobain's admission that it failed to describe its basis for this defense until at least April 4, 2008 — three weeks after the close of fact discovery — while at the same time displaying a cavalier attitude toward discovery deadlines and obligations is astounding. Worse still, Saint-Gobain fails to acknowledge that, until April 4, 2008, Saint-Gobain *actively denied that it would pursue a prosecution history estoppel defense.* Throughout all of fact discovery,

15

Saint-Gobain had taken the position that it "does not contend that Siemens is 'barred' from arguing [equivalence]." (D.I. 122, Opening Br. Ex. 24, Saint-Gobain Supp. Resp. to Interrog. No. 4.)[13]

It is simply improper for Saint-Gobain to now argue that Siemens should have figured out what Saint-Gobain intended to argue from its production of ████████████████ Saint-Gobain's previous interrogatory responses are particularly problematic because Saint-Gobain now contends that "material fact questions indeed remain," despite the fact that PHE is purely a question of law based on a closed set of facts — the statements and actions of the patentee before the Patent Office. *Festo Corp. v. Shoketsu Kinzoku Kogyo Kabushiki Co.*, 344 F.3d 1359, 1367 (Fed. Cir. 2003) (en banc) (*Festo IX*).

While Saint-Gobain may view its interrogatory response and late PHE disclosure as "of no consequence," the Federal Rules say otherwise. Rule 37 precludes a party from using untimely disclosed evidence and theories at trial when the untimely disclosure is without "substantial justification" and in any way prejudicial to the party seeking the discovery. *See, e.g., CPC Int'l Inc. v. Archer Daniels Midland Co.*, 831 F. Supp. 1091, 1102-03 (D. Del. 1993) (defendant waived infringement defenses because it failed to raise those defenses in response to plaintiff's interrogatories during discovery), *aff'd*, 31 F.3d 1176 (Fed. Cir. 1994); *Wesley-Jessen Corp. v. Pilkington Visioncare, Inc.*, 844 F. Supp. 987, 990 (D. Del. 1994) (warning that Court will not allow a party to present contentions that were not disclosed in response to contention

---

13  Saint-Gobain purports to offset its discovery failings and reversals with a claim that it provided several documents – that it never identified as the basis for a PHE argument – "prior to the deadline for serving new discovery." (Opp. Br. at 5.) However, again, Saint-Gobain's statement is wrong. ████████████████████████████████████████████████████████████

interrogatories). Here, there is no justification for Saint-Gobain's delay or change of heart, ██

████████████████████████████████████████████████████████████

████████████████████████████████████████ .

Moreover, despite Saint-Gobain's arguments to the contrary, Siemens has been prejudiced by Saint-Gobain's discovery gamesmanship. While Saint-Gobain points to Siemens ability to subpoena ████████████████████████████████████████████████████

████████████████████████████████████████████████████████████

██████████████████ Moreover, Siemens has not focused on getting admissions from Saint-Gobain's fact and expert witnesses that would undercut Saint-Gobain's facially-deficient prosecution history estoppel arguments, since Siemens had been told and believed that defense was not at issue. As a consequence of Saint-Gobain's dilatory and prejudicial discovery tactics, Saint-Gobain's Fourth Affirmative Defense should be stricken.

**2.    Even if Saint-Gobain is Allowed to Pursue a Prosecution History Estoppel Defense, Summary Judgment Should be Granted.**

Even if this Court were to decide not to strike Saint-Gobain's Fourth Affirmative Defense, summary judgment that prosecution history estoppel does not limit the scope of claim 1 of the '080 patent to exclude Saint-Gobain's LYSO crystals should be granted. Saint-Gobain points to two claim amendments as the bases for PHE, but neither of those amendments narrowed the scope of the claim limitation. So neither amendment "surrender[ed] the exact equivalent in question," *i.e.*, LYSO crystal scintillators, which Saint-Gobain concedes is a requisite for PHE. (Opp. Br. at 8, citing *Festo Corp. v. Shoketsu Kinzoku Kogyo Kabushiki Co.*, 535 U.S. 722, 740-41 (2002) (*Festo VIII*).)

### a. The Claims were not Narrowed by Expressly Requiring that the Scintillator Element be "Transparent."

As an initial matter, the doctrine of prosecution history estoppel has no bearing on the limitation that the claimed "scintillator" be "transparent" — even Saint-Gobain's own technical expert, Dr. Kenneth McClellan, admits that Saint-Gobain's LYSO crystals meet that limitation literally. (D.I. 122, Opening Br. Ex. 24, 11/2/07 Deposition of Kenneth McClellan at 136:11-13 ("Q. The 10%Y LYSO crystal, that's transparent, right? A. Yes.") Saint-Gobain ignores that its crystals literally meet the "transparent" limitation and its own expert's admission to that effect in its effort to create an estoppel from the "transparent" amendment. If Saint-Gobain literally meets the "transparent" limitation, then Saint-Gobain's defense of prosecution history estoppel is moot with respect to that limitation, as there is no issue of reclaimed scope.

But, even if Siemens needed to assert the doctrine of equivalents to show that Saint-Gobain's LYSO crystals met the "transparent" limitation, prosecution history estoppel would not bar Siemens from doing so, as Saint-Gobain would have this Court believe. As discussed in Siemens' opening brief (at 26), when the parties submitted their proposed constructions of claim terms for the '080 patent, Saint-Gobain agreed that the ordinary meaning of the term "scintillator" in the field meant a "*transparent* single crystal that responds to radiation by emitting observable light." (D.I. 117, 5/2/08 Joint Claim Construction Chart.) That construction mirrors the definition of a scintillator that has always been applied by the patentee, including in drafting the claims in the original patent application: "A well-known form of detector … employs *a transparent single crystal, known as a scintillator* …." (D.I. 122, Opening Br. Ex. 27 (relevant portion of U.S. Patent Appl. Ser. No. 07/389,502).)

Thus, the premise of Saint-Gobain's PHE argument — that the agreed construction of "scintillator" jointly proposed to the Court as the ordinary meaning of those terms is just a "post-

prosecution" meaning and is different from the meaning when the patentee drafted the original patent application — is wrong. The patentee did not narrow the scope of the claims when it amended the "scintillator" limitation to add the word "transparent," and the *Festo* presumption of prosecution history estoppel does not apply.

Furthermore, even if the presumption applied, as Saint-Gobain itself admits, that presumption would be rebutted if "the amendment did not surrender the exact equivalent in question." (Opp. Br. at 8, citing *Festo VIII*, 535 U.S. at 740-41.) There is no question that Saint-Gobain's LYSO crystals are no more literally covered by the original patent applications claims than they are by the patent claims as issued — both sets of claims literally cover cerium-doped LSO crystals. (D.I. 122, Opening Br. Ex. 11 at 22: "None of these amendments relate to the comparison between LSO and 10% Y LYSO. Thus, the amendments to the claims did not change whether 10% Y LYSO would be within the literal scope of the claims of the '080 patent.") Saint-Gobain offers no evidentiary support for its contrary argument that this amendment was narrowing. Nor has Saint-Gobain identified any "material fact question" still in dispute with respect to this limitation. Consequently, this Court should grant summary judgment that, to the extent it is even necessary to assert the doctrine of equivalents with respect to the "transparent" limitation, Siemens is not barred by prosecution history estoppel from doing so.

**b. Amending the Claim to Recite the Crystal Composition Directly Does Not Give Rise to Prosecution History Estoppel.**

As explained in Siemens' Opening Brief (at 27-28), and as Saint-Gobain apparently agrees (Opp. Br. at 10-11), the amendment to recite the final crystal composition (rather than the composition of the melt from which the crystal was pulled) ensured that the same range of crystals was claimed. In short, the crystals claimed were no different, only the point of measurement of the crystals' composition went from before to after the crystal boule's

19

manufacturing. Saint-Gobain speculates that there might be crystals that: (1) behave as scintillators; (2) fall within the scope of the original claims' melt composition ranges; and (3) fall outside the issued claims' final crystal composition ranges. Notably, Saint-Gobain does not suggest if 10% Y LYSO is such a crystal. Moreover, that speculation does not substitute for evidence that this amendment actually surrendered subject matter from the original claim scope.

Even if this Court accepted Saint-Gobain's speculative view that this was a narrowing amendment, it has absolutely nothing to do with whether 10% Y LYSO would fall within the literal scope of the claim. Therefore, the amendment is tangential to the equivalent specifically in question in this case, and any *Festo* presumption that might arise is rebutted. The reason that LYSO does not literally infringe claim 1 of the '080 patent is that an element is present in its crystal lattice that is not present in the claimed crystal lattice — yttrium. Amending the manner in which the amount of cerium-activator in the crystal lattice is measured has nothing to do with this comparison. Thus, 10% Y LYSO was not covered by the literal scope of the claim before it was amended, just as it is not literally covered by the claim after the amendment. Because the equivalent in question was not surrendered, no estoppel bar can apply. *See, e.g., Winn Inc. v. Eaton Corp.*, 272 F. Supp. 2d 968, 980 (C.D. Cal. 2003) ("For prosecution history estoppel to apply, the patentee would have to narrow his claims during the prosecution of the patent to an extent that the accused device is excluded from the claims of the patent."). For this reason also, Siemens' motion should be granted.

## III.   CONCLUSION

For the reasons set forth herein, Siemens respectfully requests the Court (i) grant summary judgment on Saint-Gobain's laches, estoppel, waiver, and marking defenses; and (ii) either strike Saint-Gobain's Fourth Affirmative Defense or grant Siemens summary judgment against that defense.

MORRIS, NICHOLS, ARSHT & TUNNELL LLP

*/s/ Maryellen Noreika*

Jack B. Blumenfeld (#1014)
Maryellen Noreika (#3208)
1201 North Market Street
P.O. Box 1347
Wilmington, DE  19899
(302) 658-9200
jblumenfeld@mnat.com

*Attorneys for Plaintiff*
  *Siemens Medical Solutions USA, Inc.*

OF COUNSEL:

Gregg F. LoCascio
Charanjit Brahma
Sean M. McEldowney
Michael A. Pearson, Jr.
KIRKLAND & ELLIS LLP
655 15th Street, N.W.
Washington, D.C. 20005-5793
(202) 879-5000


June 11, 2008

2365870

21

## CERTIFICATE OF SERVICE

I, the undersigned, hereby certify that on June 17, 2008, I electronically filed the foregoing with the Clerk of the Court using CM/ECF, which will send notification of such filing(s) to the following:

> Kelly E. Farnan, Esquire
> RICHARDS, LAYTON & FINGER, P.A.

I also certify that copies were caused to be served on June 17, 2008, upon the following in the manner indicated:

### VIA ELECTRONIC MAIL AND HAND DELIVERY

Kelly E. Farnan, Esquire
RICHARDS, LAYTON & FINGER, P.A.
One Rodney Square
Wilmington, DE 19801

### VIA ELECTRONIC MAIL

Frederick L. Whitmer, Esquire
THELEN REID BROWN RAYSMAN & STEINER LLP
875 Third Avenue
New York, NY 10022

*/s/ Maryellen Noreika*

Maryellen Noreika (#3208)