IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -X

SIEMENS MEDICAL SOLUTIONS USA, INC.,

Plaintiff,

C. A. No. 07-190 (SLR)

v.

**REDACTED
PUBLIC VERSION**

SAINT-GOBAIN CERAMICS & PLASTICS,
INC.,

Defendant

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -X

## DEFENDANT'S ANSWERING BRIEF IN OPPOSITION TO PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT ON SAINT-GOBAIN'S AFFIRMATIVE DEFENSES AND MOTION TO STRIKE SAINT-GOBAIN'S FOURTH AFFIRMATIVE DEFENSE

OF COUNSEL

Frederick L. Whitmer
John C. Ohman
Thelen Reid Brown Raysman & Steiner LLP
875 Third Avenue
New York, New York 10022
(212) 603-2000

Dated: May 30, 2008

Jesse A. Finkelstein (#1090)
Finkelstein@rlf.com
Jeffrey L. Moyer (#3309)
Moyer@rlf.com
Kelly E. Farnan (#4395)
Farnan@rlf.com
Richards, Layton & Finger, P.A.
One Rodney Square, P.O. Box 551
Wilmington, DE 19899
(302) 651-7700
*Attorneys for Defendant/Counterclaim-
Plaintiff Saint-Gobain Ceramics &
Plastics, Inc.*

# TABLE OF CONTENTS

Page

TABLE OF AUTHORITIES .......................................................................................................... iii

INTRODUCTION ............................................................................................................................ 1

ARGUMENT .................................................................................................................................... 4

A.    Legal Standard ...................................................................................................................... 4

B.    Siemens has Long Known that Saint-Gobain Asserted as a Defense the Legal
Consequence of Amendments Made to the Application of the '080 Patent and the
Factual Basis for that Defense has been Disclosed to Siemens Since September
2007 ........................................................................................................................................ 4

    1.    Saint-Gobain's Fourth Affirmative Defense Respecting Prosecution
History Estoppel Depends on Trial Resolutions ............................................... 4

    2.    The '080 Amendments go to the Patentability of the Invention ...................... 7
        a    Amending the Claim to Expressly Recite that the Crystal Must Be
"Transparent" Gives Rise to Prosecution History Estoppel ....................... 8

        b.    Amending the Claim to Recite the Crystal Composition Directly,
Rather than in Relation to Melt Composition also Gives Rise to
Prosecution History Estoppel ..................................................................... 10

C.    Fact Issues Remain to be Resolved Relative to Saint-Gobain's Laches Defense As
Well ....................................................................................................................................... 11

    1.    Siemens Unreasonably and Inexcusably Delayed in Filing Suit ...................... 12

    2.    Siemens' Unreasonable Delay in Filing Suit Caused Saint-Gobain
Prejudice ............................................................................................................. 16

D.    Summary Judgment that Siemens Is Not Equitably Estopped from Asserting the
'080 Patent Against Saint-Gobain Should Be Denied ...................................................... 19

    1.    Siemens' Obstinate Silence Induced Saint-Gobain Into Believing Siemens
Would Not Sue For Infringement of the '080 Patent in Relation to Gemini ....... 19

    2.    Saint-Gobain Relied on Siemens' Silence ........................................................ 20

    3.    Saint-Gobain Suffered Economic Harm As a Direct Result of Siemens'
Silence ................................................................................................................. 22

E.    Siemens' Motion for Summary Judgment on Saint-Gobain's Waiver Defense
Should Be Denied ............................................................................................................... 23

F.    Summary Judgment on the Marking Statute Defense Should Be Denied ...................... 23

i

CONCLUSION...................................................................................................................... 25

ii

# TABLE OF AUTHORITIES

## CASES

*A.C. Aukerman Co. v. R. L. Chaides Construction Co.,*
  960 F.2d 1020 (Fed. Cir. 1992) .................................................................. *passim*

*American Medical System v. Medical Engineering Corp.,*
  6 F.3d 1523 (Fed. Cir. 1993), *cert. denied*, 511 U.S. 1070 (1994) ..............23, 24

*Amsted Industrial v. Buckeye Steel Castings Co.,*
  24 F.3d 178 (Fed. Cir. 1994) ...............................................................................23

*Anderson v. Liberty Lobby, Inc.,*
  477 U.S. 242 (1986) ...............................................................................................4

*Augustine Medical, Inc. v. Gaymar Industrial,*
  181 F.3d 1291 (Fed. Cir. 1999) .............................................................................6

*Baxter International, Inc. v. Cobe Laboratories, Inc.,*
  88 F.3d 1054 (Fed. Cir. 1996) .........................................................................4, 23

*Crown Packaging Tech., Inc. v. Rexam Beverage Can Co.,*
  498 F. Supp. 2d 718 (D. Del. 2007) ....................................................................24

*Dunlap v. Schofield,*
  152 U.S. 244 (1894) .........................................................................................24, 25

*Eastman Kodak Co. v. Goodyear Tire & Rubber Co.,*
  114 F.3d 1547 (Fed. Cir. 1997) ...........................................................................12

*Eon-Net LP v. Flagstar Bancorp,*
  249 Fed. Appx. 189 (Fed. Cir. 2007) ..................................................................14

*Festo Corp. v. Shoketsu Kinzoku Kogyo Kabushiki Co.,*
  344 F.3d 1359 (Fed. Cir. 2003) .............................................................................8

*Festo Corp. v. Shoketsu Kinzoku Kogyo Kabushiki Co.,*
  535 U.S. 722 (2002) ...................................................................................6, 8, 11

*Gasser Chair Co. v. Infanti Chair Manufacturing Corp.,*
  60 F.3d 770 (Fed. Cir. 1995) .........................................................................16, 17

*Genzyme Corp. v. Atrium Medical Corp.,*
  No. 00-958, 2003 U.S. Dist. LEXIS 12784 (D. Del. July 22, 2003) ..................15

*Goodman v. Mead Johnson & Co.*,
    534 F.2d 566 (3d Cir. 1976), *cert. denied*, 429 U.S. 1038 (1977) ....................4

*Hemstreet v. Computer Entry Systems Corp.*,
    972 F.2d 1290 (Fed. Cir. 1992)..................................................................16, 17

*Maxwell v. J. Baker, Inc.*,
    86 F.3d 1098 (Fed. Cir. 1996)......................................................................24, 25

*Rome Grader & Machinery Corp. v. J. D. Adams Manufacturing Co.*,
    135 F.2d 617 (7th Cir. 1943) .............................................................................18

*Symbol Techs., Inc. v. Proxim Inc.*,
    Civ. No. 01-801-SLR, 2004 U.S. Dist. LEXIS 14949
    (D. Del. July 28, 2004)........................................................................................12

*Tenneco Automobile Operating Co. v. Visteon Corp.*,
    375 F. Supp. 2d 360 (D. Del. 2005)...................................................................25

*Transmatic, Inc. v. Gulton Industrial, Inc.*,
    53 F.3d 1270 (Fed. Cir. 1995)........................................................................4, 23

*View Engineering, Inc. v. Robotic Vision System*,
    208 F.3d 981 (Fed. Cir. 2000).......................................................................14, 15

*Wanlass v. Fedders Corp.*,
    145 F.3d 1461 (Fed. Cir. 1998).........................................................................12

*Wanlass v. General Electric Co.*,
    148 F.3d 1334 (Fed. Cir. 1998).........................................................................12

*Warner-Jenkinson Co. v. Hilton Davis Chemical Co.*,
    520 U.S. 17 (1997)................................................................................................8

## STATUTES

35 U.S.C. § 287.................................................................................................*passim*

Fed. R. Civ. P. 11......................................................................................14, 15

Fed. R. Civ. P. 56(c) ............................................................................4, 19, 22

iv

## INTRODUCTION

Defendant Saint-Gobain Ceramics & Plastics, Inc. ("Saint-Gobain") submits this answering brief to demonstrate that the Court should deny the motions of Plaintiff Siemens Medical Solutions USA, Inc. ("Siemens") for partial summary judgment seeking dismissal of Saint-Gobain's affirmative defenses and to strike Saint-Gobain's fourth affirmative defense ("Partial Summary Judgment Motion"). The ultimate results of these defenses must await trial, not be decided on motion because there remain triable issues of fact as to each of Saint-Gobain's affirmative defenses of (1) laches; (2) equitable estoppel; (3) waiver; (4) failure on Siemens part to comply with the marking statute, 35 U.S.C. § 287; and (5) prosecution history estoppel. Siemens understandably wishes to suppress the legal consequences of its failure timely to press its impingement claim against its competitor for PET scanners, Philips, in this action against one of Philips' suppliers of the LYSO crystal, alleged to contribute to the infringement of the '080 Patent; yet, as this brief and the record demonstrate, whether Siemens' assertions of patent infringement liability against Saint-Gobain measure up in the face of the facts respecting Siemens' delay in pressing its asserted claims, must await resolution after a weighing of the evidence by the jury.

The issues respecting the consequences to Siemens of the amendment to the '080 Patents' application is even clearer and more significant for trial. There is no dispute that there was at least the amendment to the application, required by the Examiner, to limit the claimed scintillator crystal from all scintillator crystals to "transparent" scintillator crystals. Saint-Gobain has repeatedly advised Siemens that it intended to rely on this amendment as a part of Saint-Gobain's defense, to restrict Siemens' ability to assert a claim of patent infringement based on

the Doctrine of Equivalents.[1] This brief also demonstrates that there is no legitimate or substantial basis to deny Saint-Gobain the benefit of prevailing law respecting the scope of a claim of infringement by the Doctrine of Equivalents.

The factual basis for this defense has been made aware to Siemens since September 2007 when Saint-Gobain produced the Foley & Lardner LLP opinion letter that details the factual basis and the legal consequence of these facts to constrain Siemens' arguments respecting equivalence. Siemens' current claim of "ambush" is rhetoric devoid of substance. They would neither have asked nor moved were they "surprised,"

# REDACTED

Just what that consequence

is must await rendition at trial. To foreclose Saint Gobain's argument on this point now would deny Saint-Gobain the due process of trial.

Saint-Gobain has from the first, and re-asserted in December 2007, its reliance on the facts and conclusions set forth in the Non-Infringement Opinion For U.S. Patent No. 4,958,080 provided to Saint-Gobain by Foley & Lardner LLP dated March 16, 2006 (the "Non-Infringement Opinion"), which, despite Siemens' litigation flourishes of "ambush," "prejudice," and "unfair surprise" was produced to Siemens on September 20, 2007 (Ex 1[2], SGCP002151-SGCP002190; and Ex. 2, 9/20/07 Letter from John Ohman, Esq., Thelen Reid Brown Raysman & Steiner LLP, to Charanjit Brahma, Esq., Kirkland & Ellis LLP), that opinion succinctly encapsulates Saint-Gobain's position of which Siemens has been long aware. Siemens concedes that amendments were made to the application that matured into the '080 patent-in-suit. What is

---

[1] There is no dispute that there is no claim of direct infringement here.
[2] Citations to "Ex __" refer to the Declaration of Frederick L. Whitmer filed contemporaneously herewith.

2

disputed as is whether those amendments addressed the patentability of Dr. Melcher's invention. This too is no surprise: Saint-Gobain signaled this argument in its successful opposition to Siemens preliminary injunction motion. (D.I. 40, p.3-4, 10/17/07, Defendant's Brief In Opposition To Plaintiff's Application For A Preliminary Injunction.).

As to the other elements of Siemens' blunderbuss motions, Saint-Gobain has valid bases for all affirmative defenses of laches, equitable estoppel, and waiver. All these were disclosed by Saint-Gobain in discovery responses timely served last Fall. "Saint-Gobain states that Siemens has unreasonably delayed in asserting the '080 Patent having just notified Philips of potential infringement over a year before first bringing suit against Saint-Gobain without prior notice." (Ex. 3, 9/5/07, Defendant's Responses and Objections to Plaintiff's First Set of Interrogatories ). There is no doubt that Siemens contacted Philips but not Saint-Gobain, threatening infringement of the '080 patent in May 2006, Siemens' actions at that time put Siemens on constructive notice that Saint-Gobain supplied Philips with LYSO crystals. Yet Siemens did nothing vis-a-vis Philips then --- or now. And, significantly, at that time, Siemens sat silently respecting Saint-Gobain's activities. That silence was broken only after Saint-Gobain had been supplying Philips with LYSO crystals for over a year. Siemens' delay in filing this suit against Saint-Gobain is accordingly unreasonable.

Finally, granting Siemens an order foreclosing application of the marking statute, 35 U.S.C. § 287, to Siemens from recovering pre-suit damages is unjustified. Siemens has not pled compliance with the marking statute, nor did it give any notice to Saint-Gobain of alleged patent infringement *prior* to filing this suit. Notwithstanding Siemens' failure to meet its burden to plead compliance and any proof that its machines were appropriately marked, Siemens has the duty to *prove* that it completely and continually complied with the marking statute. Siemens'

3

failure to prove compliance with the marking statute requires denial of summary judgment on this issue.

## ARGUMENT

### A.    Legal Standard

This Court well knows the standard for summary judgment, which is only proper "if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is *no* genuine issue as to *any* material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). In determining whether there is a genuine issue of material fact, the court "views the evidence in the light most favorable to the party opposing the motion, with doubts resolved in favor of the non-movant." *Baxter Int'l, Inc. v. COBE Lab, Inc*, 88 F.3d 1054, 1057 (Fed. Cir. 1996), *citing Transmatic, Inc. v. Gulton Indus., Inc*, 53 F.3d 1270, 1274 (Fed. Cir. 1995). The "non-movant's allegations must be taken as true, and when these assertions conflict with those of the movant, the former must receive the benefit of the doubt." *Goodman v. Mead Johnson & Co.*, 534 F.2d 566, 573 (3d Cir. 1976) (footnote omitted), *cert. denied*, 429 U.S. 1038 (1977). "[D]isputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment." *Anderson v. Liberty Lobby, Inc*, 477 U.S. 242, 248 (1986). Under this standard, Siemens' motions should be denied.

### B.    Siemens has Long Known that Saint-Gobain Asserted as a Defense the Legal Consequence of Amendments Made to the Application of the '080 Patent and the Factual Basis for that Defense has been Disclosed to Siemens Since September 2007.

#### 1.    Saint-Gobain's Fourth Affirmative Defense Respecting Prosecution History Estoppel Depends on Trial Resolutions

Siemens' argument that Saint-Gobain's fourth affirmative defense should be dismissed is unfounded. Saint-Gobain raised the affirmative defense of prosecution history estoppel in its

answer and has repeatedly asserted in this litigation,

REDACTED                    Siemens has long known that the

argument is based on the '080 Patent, its prosecution history, the Non-Infringement Opinion,

and additional documents such as correspondence between Foley & Lardner and Saint-Gobain,

(Ex. 1, SGCP002151-SGCP002190), and the Foley & Lardner "freedom to operate"

memorandum, dated April 28, 2006 (Ex. 4, SGCP093220 -- SGCP093231), all of which have

been produced to Siemens *prior to the deadline for serving new discovery*. Saint-Gobain has

always made Siemens aware that these documents detail the substance of Saint-Gobain's

argument respective the Claims' restrictions on Siemens' ability to utilize the Doctrine of

Equivalents. Siemens "ambush" argument is accordingly without merit, for Siemens has been

aware of Saint-Gobain's prosecution history estoppel argument since Saint-Gobain served its

Answer to Siemens' Complaint on *May 14, 2007* and in the discovery Saint-Gobain produced, as

Saint-Gobain stated in its fourth affirmative defense,

> [Siemens is] estopped from construing any claim of the '080 Patent to be
> infringed or to have been infringed, either literally or by application of the
> doctrine of equivalents, by any method or product manufactured, used, imported,
> sold or offered for sale by Saint-Gobain in view of the prior art and/or because of
> admissions and statements made to the United States Patent and Trademark
> Office *during prosecution of the application leading to the issuance of the '080
> Patent*, because of disclosure or language in the specification of the '080 Patent,
> and/or *because of limitations in the claims of the '080 Patent*

(D.I. 114, 4/7/08 Saint-Gobain's Answer to Siemens' Amended Complaint, see also D.I. 7,

5/14/07 Saint-Gobain's Answer to Siemens' Complaint (using the same language for the fourth

affirmative defense) (emphasis added).).

It is noteworthy that Siemens, in its quote of Saint-Gobain's fourth affirmative defense,

did not include most of the italicized portion quoted above. The italicized portion of Saint-

Gobain's affirmative defense, of which Siemens has been aware since the original answer was

5

filed on May 14, 2007, clearly pertains to prosecution history estoppel. "Specifically, prosecution history estoppel prevents a patentee from recapturing subject matter surrendered *during prosecution of the patent.*" *Augustine Med., Inc. v. Gaymar Indus*, 181 F.3d 1291, 1298 (Fed. Cir. 1999) (emphasis added).

Siemens manifestly bears "the burden of showing that the amendment does not surrender the particular equivalent in question. . . The patentee, as the author of the claim language, may be expected to draft claims encompassing readily known equivalents. A patentee's decision to narrow his claims through amendment may be presumed to be a general disclaimer of the territory between the original claim and the amended claim." *Festo Corp v. Shoketsu Kinzoku Kogyo Kabushiki Co (Festo VIII)*, 535 U.S. 722, 740 (2002). Therefore, subject matter is lost under prosecution history estoppel where, as here, due to a narrowing amendment made for patentability, there is a limitation in the claims. Therefore, the fourth affirmative defense, served on May 14, 2007 and again on April 7, 2008, exemplifies Saint-Gobain's continued intent to raise a prosecution history estoppel defense.

That Siemens conducted discovery of Saint-Gobain's prosecution history estoppel defense, is clear, for Siemens served a Non-Party Subpoena on Leon Radomsky, attorney at Foley & Lardner who prepared the Non-Infringement Opinion. (Ex. 5, D.I. 92, 2/15/08 Non-Party Subpoena of Leon Radomsky) Request No. 2 of the Non-Party subpoena addresses precisely the issue of prosecution history estoppel:

> All Documents and things Concerning any analysis conducted by or on behalf of Saint-Gobain regarding the '080 Patent, whether Saint-Gobain's products infringe or would infringe the '080 Patent, or the validity or enforceability of the '080 Patent, including without limitation any written or oral opinions of counsel provided to Saint-Gobain, drafts of such opinions, all Documents and things Concerning Saint-Gobain's request for such opinions, all Documents and things Concerning any information about Saint-Gobain's products

6

considered in performing such analyses or preparing such opinions, and all
communications regarding such opinions or analyses.

(Ex. 5).

Therefore, it is of no consequence that until April 4, 2008 neither the opinion letter nor

the arguments made therein were ever referenced in connection with any prosecution history

estoppel argument that Saint-Gobain intended to pursue because Siemens had been made aware

of the fact that Saint-Gobain had raised a prosecution history estoppel defense and disclosed the

Non-Infringement Opinion and other documents regarding that defense. All documents upon

which Saint-Gobain is developing its defense were produced to Siemens by Saint-Gobain during

discovery. More, Foley & Lardner produced responsive documents to Siemens on February 29,

2008 (Ex. 6, 2/29/08 Letter from Kenneth Krosin, Foley & Lardner, to Charanjit Brama, Esq.,

Kirkland & Ellis). Foley & Lardner's "Freedom to Operate" Opinion by Foley & Lardner, dated

April 28, 2006, was produced to Siemens on April 16, 2008. Mr. Radomsky's deposition has yet

to be taken because of disputes between Siemens and Foley. Siemens accordingly cannot be

heard legitimately to complain that Saint-Gobain did not disclose the explicit grounds for its

prosecution history estoppel argument. Siemens has suffered neither harm nor prejudice.

Siemens is free to depose Mr. Radomsky on the issue of prosecution history estoppel at his

forthcoming deposition and knows, as it has known for a conscionable time, what the factual

predicate for this argument is.

### 2.    The '080 Amendments go to the Patentability of the Invention

Siemens' argument that it should escape the consequences of the prosecution history of

the '080 Patent fails in all material respects on the merits. Saint-Gobain has repeatedly argued

that the fact that the applicant for the '080 Patent amended its claims limited the scope of the

claim for equivalents captured and, accordingly, surrendered ground to gain allowance.

7

REDACTED

Indeed, the documents that Siemens had available to it before commencing this suit, the '080 Patent itself and the prosecution history (Ex. 7, '080 Patent Prosecution History, Patent Application Serial No. 07/389502, including the '080 Patent, SMS003145 - SMS003287), make clear the prosecution history estoppel that restricts the scope of the scintillator limitation of claim 1 of the '080 Patent.

Here, the applicant's narrowing amendments create the presumption of estoppel which the patentee may only rebut by proving either (1) that the amendment was made for a purpose unrelated to patentability, *Festo VIII*', 535 U.S. 722 at 740 (2002) (*citing Warner-Jenkinson Co. v. Hilton Davis Chemical Co*, 520 U.S. 17, 33 (1997)), or (2) that the amendment did not surrender the exact equivalent in question. *Festo VIII*, 535 U.S. 722 at 740-41. Rebuttal of the presumption of surrender is a question of law to be determined by the court. *Festo Corp v. Shoketsu Kinzoku Kogyo Kabushiki Co* ("*Festo IX*")), 344 F.3d 1359, 1367-68 (Fed. Cir. 2003). Siemens carries the burden of showing that the narrowing amendment here does not surrender a particular equivalent. *See Festo VIII*, 535 U.S. 740. Siemens has not met its burden by merely stating, albeit incorrectly, that LYSO "does not fall within the territory between the literal scope of the original and amended claim." ( p. 28, Partial Summary Judgment Motion). This is simply insufficient to overcome one bar that the amendment created.

### a. Amending the Claim to Expressly Recite that the Crystal Must Be "Transparent" Gives Rise to Prosecution History Estoppel

The '080 applicant amended original Claim 1 in response to an Examiner's rejection to recite that the claimed scintillator crystal compound must be "transparent." This objectionable amendment thus modified the range of claimed crystals to those that are "transparent," surrendering non-transparent scintillator Siemens incorrectly states that "a scintillator must, by

8

definition, be transparent." ( p.26, Partial Summary Judgment Motion). That is simply not true
For this contention Siemens cites to the joint claim construction chart, (D.I. 117, 5/2/08 Joint
Claim Construction Chart), which Siemens drafted and Saint-Gobain approved with the
understanding that the definitions were for the limited purpose of defining terms as used in the
'080 Patent, post prosecution. In any event, the parties have agreed to "common meanings" of
the terms. For Siemens to now point to the claim construction chart for a definition of a term as
it is generally used and was used prior to the amendment misses the point. When the parties
agreed to "common meanings," the claim phrase "transparent," modifying "scintillator" was one
of those terms. What was clarified by the amendment was a "scintillator" of a certain compound
LSO whether transparent or not. By adding the modifier "transparent," the patentee was not
being redundant; the amendment limited the nature of the scintillator being claimed to being
transparent crystal. That amendment, made in order to gain allowance of the patent, surrendered
non-transparent crystals of a certain compound in the claim. A scintillator is a material that
reacts to gamma or x-rays by emitting light or electrical impulses in response to charged
particles. A scintillator need neither be a crystal, nor transparent. Persons of ordinary skill in the
art recognize this, for research articles have been written referring to non-transparent
scintillators: "[f]or optically transparent scintillators one can expect sharp light pulses. *In non-
transparent scintillators* the pulse height spectra becomes broad . . . ." (Ex.8, article entitled
'Boron Nitride, A Neutron Scintillator With Deficiencies,' IEEE Trans. Nucl. Sci. N35-31
(2005) 1318.). Thus, contrary to Siemens' arguments, the insertion of "transparent" to the
clarified scintillator was not a unsubstantial act, but a substantive limitation.

Melcher's amendment during prosecution of the '080 Patent for a claim of "a scintillator
composed of a single crystal . . ." to a claim of "a scintillator composed of a *transparent* single

crystal" thus narrowed the scope of the scintillator limitation by modifying the claimed scintillator crystals to a sub-group of all scintillators, *transparent* scintillator crystals, to which Saint-Gobain agreed in claim construction. Saint-Gobain did not agree and did not understand scintillator to equal "transparent scintillator". This, however, does not mean that there are no consequences under prevailing law to the fact of amendment.

### b. Amending the Claim to Recite the Crystal Composition Directly, Rather than in Relation to Melt Composition also Gives Rise to Prosecution History Estoppel

Claim 1 of the '080 Patent contains a second scintillator limitation. The amendment filed on December 27, 1989 narrowed the scope of the scintillator composition to recite a cerium concentration in the transparent single crystal scintillator instead of reciting the cerium concentration in the melt from which the crystal was pulled (Ex. 7, '080 Patent Prosecution History, Patent Application Serial No. 07/389502 at SMS03211). This amendment also narrowed the scope of claim 1 because claim 1 as originally filed recited that the cerium concentration "is the concentration in the *melt* from which the crystal is pulled and is within the range of from approximately 0.001 to approximately 0.1." (Ex. 7, at SMS03210) (emphasis added) In the December 27, 1989 amendment, claim 1 was then amended to recite that the cerium concentration in the crystal "is within the range of from approximately $2x10^{-4}$ to approximately $3x10^{-2}$. . . ." (Ex.7, at SMS03210). The low end of the amended range was obtained by multiplying the 0.001 concentration in the melt by 20% and the high end of the amended range was obtained by multiplying the 0.1 concentration by 30%, since the specification of the '080 Patent disclosed that the cerium concentration in the crystal was 20% to 30% of the cerium concentration in the melt.

Thus, for crystals in which the cerium concentration is less than 20% or more than 30%, status of that melt, it was possible to infringe claim 1, as originally drafted by the inventor, but

would not infringe the amended claim 1. Therefore, contrary to Siemens' contention that the amendment was not narrowing (p.28, Summary Judgment Motion), the amendment of the cerium concentration range to that found in the melt effected a narrowing of the claim to surrender previously claimed components.

The cerium concentration amendment moreover was made to overcome an indefiniteness rejection of the claim, (Ex. 7, '080 Patent Prosecution History, Patent Application Serial No. 07/389502 at SMS003212). Thus this composition amendment was made precisely for a reason of patentability to gain issuance of the '080 Patent. The LYSO scintillator differs from the claimed LSO scintillator by its composition. Accordingly, an amendment which narrows the claimed composition, as that here, cannot be considered to bear only a tangential relation to LYSO; it is directly relevant. Siemens simply has not overcome the bar prosecution history estoppel sets and should, as a matter of law, be denied reliance on the doctrine of equivalents to claim infringement through the LYSO scintillator sold by Saint-Gobain. *See, Festo VIII"*, 535 U.S. 722 at 740 (2002).

Material fact questions indeed remain whether the '080 Patent limitations are narrowing indeed, as we have argued here, and whether LYSO falls between the '080 Patent's original claim limitation and the patent's amended claim limitation based on LYSO's composition and the cerium concentration of the LYSO crystal compared to its melt. The issue of prosecution history estoppel is accordingly one to be decided after trial, not on summary judgment.

C.    **Fact Issues Remain to be Resolved Relative to Saint-Gobain's Laches Defense As Well**

Siemens also misses the point respecting Saint-Gobain's laches defense. This motion, too, should be denied. Laches is an equitable defense "committed to the sound discretion of the trial judge." *A.C. Aukerman Co. v. R.L. Chaides Constr. Co.*, 960 F.2d 1020, 1028 (Fed. Cir.

11

1992). "With its origins in equity, a determination of laches is not made upon the application of 'mechanical rules.' The defense, being personal to the particular party and equitable in nature, must have flexibility in its application. A court must look at all of the particular facts and circumstances of each case and weigh the equities of the parties." *A.C. Aukerman Co. v. R.L. Chaides Constr. Co.*, 960 F.2d 1020, 1032 (Fed. Cir. 1992). "If the decision on laches is made on summary judgment, there must . . . be no genuine issues of material fact . . . and all pertinent factors must be considered." *A.C. Aukerman Co.*, 960 F.2d at 1039 (Fed. Cir. 1992).

The two critical factual predicates for the equitable bar of laches are unreasonable delay by the plaintiff and prejudice to the defendant. *See A.C. Aukerman Co.*, 960 F.2d 1020. Here, at a minimum, there exist material questions of fact as to both of these predicates, which make judgment on motion inappropriate.

### 1. Siemens Unreasonably and Inexcusably Delayed in Filing Suit

The first prong of a laches defense, unreasonable delay, requires that the patent holder had either actual or constructive knowledge of the allegedly infringing activity. *See Eastman Kodak Co. v. Goodyear Tire & Rubber Co.*, 114 F.3d 1547, 1559 (Fed. Cir. 1997). Constructive-knowledge imposes upon patent holders the duty to police their rights. *See Wanlass v. Fedders Corp*, 145 F.3d 1461, 1464-67 (Fed. Cir. 1998); *Wanlass v. General Elec. Co.*, 148 F.3d 1334, 1338 (Fed. Cir. 1998) As this Court has stated, "[u]nder the constructive knowledge theory, a patentee is charged with 'such knowledge as he might have obtained upon inquiry, provided the facts already known by him were such as to put upon a man of ordinary intelligence the duty of inquiry.'" *Symbol Techs., Inc. v. Proxim Inc.*, 2004 U.S. Dist. LEXIS 14949 (D. Del. July 28, 2004).

Here, As of March 2006, Siemens should be charged as a matter of law and fact with constructive knowledge of Saint-Gobain's alleged infringement. In March 2006, Philips publicly

12

announced the release of its allegedly infringing Gemini Raptor PET/CT system with time-of-flight capability ("Gemini"). (Ex. 9, 3/7/06 internal email containing a public announcement of Philips' Gemini launch, SGCP006210 – SGCP006211; Ex.10, 2006 IEEE Medical Imaging Conference Presentation on Gemini, SMS013231 – SMS013265). At that time the facts known to Siemens imposed upon Siemens a duty of inquiry concerning the source of Philips' LYSO scintillation crystals utilized in the Gemini product.[3] Siemens, in fact, sent a letter to Philips, *dated March 17, 2006,* stating relevant part:

> [Y]our Gemini Raptor' PET/CT system uses a detector scintillator composed of lutetium yttrium oxyorthosilicate ("LYSO") that [Siemens] believe[s] infringes [the '080 Patent]. . . . Siemens has closely investigated LYSO as a scintillator material. *We believe there is no substantive difference between the two materials designated LSO and LYSO.* The investigation of Siemens regarding the properties of LYSO is born out by a recently published paper, entitled 'Large Size LYSO Crystals for Future High Energy Physics Experiments,' IEEE Trans. Nucl. Sci. NS-52 (2005) 3133. This paper states in its conclusion 'Ce doped LSO and LYSO crystals have identical emission, excitation and transmission spectra. . . . We believe it would be advantageous to meet with representatives of Phillips to discuss this matter so that we may try to resolve this issue.

(Ex. 11, 3/17/06 Letter from Mr. Schmidt, Siemens to Mr. Schouten, Philips Intellectual

Properties & Standards, PH1169 – PH1170).

Despite its March 17, 2006 letter to Philips, Siemens now disputes that it cannot be legally charged with knowledge of Saint-Gobain's alleged infringement until "immediately before it filed suit on April 3, 2007" (p.11, Partial Summary Judgment Motion). That argument, however, is as blind to Siemens' duty to investigate as Siemens was indifferent to Saint-Gobain's actions. Under the doctrine of constructive notice however, Siemens is charged with such

---

[3] There was, also, nothing to prevent Siemens from acting on its expressed belief to Philips of Philips' alleged infringement by suing Philips, which would have focused Siemens' litigation efforts precisely on the source of the allegedly infringing product made by Siemens' direct PET Scanner Competitor.

13

knowledge as it might have obtained upon reasonable inquiry in March 2006 when Siemens knew of Gemini and Philips' use of LYSO scintillation crystals.

Siemens offers no explanation why it did not inquire of Philips as to its LYSO sources. This silence is especially curious when the precise IEEE article, cited in Siemens' letter to Philips, expressly compares LYSO, identified as supplied by both Saint-Gobain and Crystal Photonics, Inc., two potential sources for Philips' LYSO scintillators, with LSO supplied by CTI Molecular Imaging, Inc.[4], (Ex. 12, a copy of the article "Large Size LYSO Crystals for Future High Energy Physics Experiments," IEEE Trans. Nucl. Sci. NS-52 (2005) 3133, SMS002417 – SMS002425). Thus, nearly one year before bringing suit in this action, Siemens was on actual notice that Saint-Gobain had been identified in publicly available documents as a source of Philips' LYSO. This fact raises at least a question of material fact when Siemens should be legally charged with having knowledge of Saint-Gobain's allegedly infringing LYSO sales and whether, as a consequence, Saint-Gobain's laches defense should be sustained.

Siemens also claims that its delay in filing suit once it admits knowing that Saint-Gobain was Philips' LYSO supplier was due to Siemens' "need" to test the LYSO crystals as part of its requisite Fed. R. Civ. P. 11 ("Rule 11") pre-filing investigation. (p.11-12, Partial Summary Judgment Motion). Where was that "need" when Siemens charged Philips with infringement. The Federal Circuit only requires that a patentee, prior to filing suit, "apply the claims of each and every patent that is being brought into the lawsuit to an accused device and conclude that there is a reasonable basis for a finding of infringement of at least one claim of each patent so asserted." *Eon-Net LP v. Flagstar Bancorp*, 249 Fed. Appx. 189, 195 (Fed. Cir. 2007), *citing*, *View Eng'g, Inc. v. Robotic Vision Sys., Inc.*, 208 F.3d 981, 986 (Fed. Cir. 2000). Rule 11 is

---

[4] CTI, the Court will recall, is a predecessor to Siemens that was previously a joint venture partner with Siemens until it was acquired by Siemens in a 2005 merger.

14

satisfied where the patentee "if challenged, [is] prepared to demonstrate to both the court and the alleged infringer exactly why it believed before filing the claim that it had a reasonable chance of proving infringement." *View Eng'g, Inc. v. Robotic Vision Sys.*, 208 F.3d 981, 986 (Fed. Cir. 2000). Siemens did not have to delay filing based on any Rule 11 pre-filing investigation because the experiments reported on LYSO's scintillation and optical properties in the IEEE article Siemens cited in its March 2006 letter to Philips were performed using Saint-Gobain's LYSO, presumably fulfilled the "need" to run extensive pre-filing tests on the same LYSO. Indeed, Siemens' letter to Philips makes abundantly clear Siemens' belief in the alleged infringement of the '080 Patent by the use of LYSO in a detector, and did so, apparently, without the "need" of the now-vanished test of the LYSO crystal.

Finally, Siemens is incorrect in its contention that "a one year delay simply does not constitute unreasonable delay." (p. 14, Partial Summary Judgment Motion). To the contrary, "The length of time which may be deemed unreasonable has *no fixed boundaries* but rather depends on the circumstances." *A.C. Aukerman Co v. R.L. Chaides Constr Co.*, 960 F.2d 1020, 1032 (Fed. Cir. 1992); *See, Genzyme Corp. v. Atrium Med Corp.*, No. 00-958, 2003 U.S. Dist. LEXIS 12784 (D. Del. July 22, 2003) ("it is within the court's prerogative, based on its evaluation of *all relevant evidence*, to determine whether a delay of fewer than 6 years is unreasonable or inexcusable."). Where, as here, the patent was in its waning days, it is reasonable to conclude that *any* delay signals an intention not to sue and is unreasonable to permit a patentee to lie low and spring a tardy attack.

On these facts, a jury could well find that (1) Siemens had contacted Philips threatening suit in May 2006, (2) Siemens was on constructive notice as of May 2006 that Saint-Gobain supplied Philips with LYSO crystals, (3) in May 2006 Siemens had sufficient data to fulfill its

15

Rule 11 requirement, and (4) that Siemens delay in filing this suit was unreasonable. These facts create genuine issues of material fact as to the first prong of Saint-Gobain's laches defense.

### 2. Siemens' Unreasonable Delay in Filing Suit Caused Saint-Gobain Prejudice

The second prong of Saint-Gobain's laches defense is that Saint-Gobain suffered material prejudice attributable to Siemens' delay. *See, A C Aukerman Co v. R.L. Chaides Constr. Co,* 960 F.2d 1020, 1028 (Fed. Cir. 1992). "Such prejudice may be either economic or evidentiary." *A.C. Aukerman Co v. R L Chaides Constr Co.,* 960 F.2d 1020, 1033 (Fed. Cir. 1992). Both are present here. Economic prejudice includes damage "where an [alleged] infringer, if he had had notice, could have switched to a noninfringing product." *Id..* Saint-Gobain's willingness to sell its LYSO crystals to Philips notwithstanding, a risk of suit does not preclude a finding of prejudice, and nothing in Siemens' cited authority warrants a different conclusion.

Siemens cites *Gasser Chair Co. v Infanti Chair Mfg. Corp.,* 60 F.3d 770, 775 (Fed. Cir. 1995) for its contention that a business decision to capitalize on the market cannot constitute economic prejudice. Siemens misreads the authority. Both *Gasser* and *Hemstreet v. Computer Entry Sys. Corp.,* 972 F.2d 1290, 1294 (Fed. Cir. 1992), the case to which *Gasser* cites, state that a business decision *without a nexus* to the delay would not suffice to show prejudice. In *Gasser* the court stated:

> the evidence of record showed that [the defendant] was indifferent to whether [the plaintiff] would sue because of [the defendant's] *personal belief that the patent was invalid.* . . . Even a considerable investment during a delay period is not a result of the delay if it was 'a deliberate business decision to ignore [a] warning, and to proceed as if nothing had occurred.'

*Gasser Chair Co,* 60 F.3d 770 at 775. In *Hemstreet,* the Federal Circuit explained that the defendant's "prejudice argument is severely undercut by [the plaintiff's] provision of . . . implicit suggestion that [the defendant] would soon face litigation if it refused to license." *Hemstreet,*

16

972 F 2d 1290 at 1294. The court stated that "[the defendant] apparently made a deliberate business decision to ignore that warning, and to proceed as if nothing had occurred." *Id.* Here, Saint-Gobain received no warning from Siemens of infringement; indeed, no implicit suggestion of litigation exists to impede a finding of prejudice in the present case.

Siemens cites to the deposition testimony of Dominique Rothan, Saint-Gobain's corporate representative, in an attempt to analogize the present case with *Gasser* and *Hemstreet*, (p.9-10, Partial Summary Judgment Motion). Siemens' citation is misleading Rothan's testimony in full, relevant part was as follows:

> Q:    Sir, if Saint-Gobain allegedly is on the hook for damages that the jury awards for the infringement, if any, is paying legal fees relating to defending the LYSO crystal that's used in Philips' product and others and is losing, according to you, money selling it to Philips, why get into the LYSO business, sir?
>
> A:    I believe we can be profitable in the future.
>
> Q:    Then why not wait, sir, until the patent expired to get into the business since then you wouldn't have at least two of those expenses or risks?
>
> A:    The market window is now. *We had a legal opinion*
>
> Q:    So you thought if you waited until the patent expired in late 2008, you would have let someone else get in the position of being the early supplier to Philips and others in the area?
>
> A:    That's right.

(Ex.13, 4/22/08 Rothan Dep. at 40:11-41:8 (form objection omitted) (emphasis added) )

Mr. Rothan's testimony clearly distinguishes the present case from *Gasser* and *Hemstreet*. Saint-Gobain was not relying on its own personal belief that LYSO does not infringe the '080 Patent, rather, Saint-Gobain's reliance upon Siemens' inaction was fortified by the Non-Infringement Opinion of reputable counsel                                    It

17

entered the market    REDACTED    in order to take advantage of a market opportunity as to which Siemens had remained silent. After Siemens gave an infringement warning to Philips, and then apparently recanted the warning as evidenced by Siemens' subsequent inaction, Saint-Gobain reasonably proceeded to market and sell the LYSO crystal. *See, Rome Grader & Machinery Corp v. J. D. Adams Mfg. Co.*, 135 F.2d 617, 619 (7th Cir. Ind. 1943).

Saint-Gobain has thus suffered economic damage as a result of Siemens' unreasonable and inexcusable delay in filing this suit. Saint-Gobain makes and markets other crystals, which Siemens does not claim infringe the '080 Patent, and might well have centered manufacture upon them if infringement had been promptly asserted and established. The apparent acquiescence of Siemens to Philips' marketing of competitive PET scanners, in light of Siemens' failure to bring an infringement claim against the alleged direct infringer, Philips, after claiming that Gemini infringed the '080 Patent justified Saint-Gobain to believe that no necessity existed to incur the expense of changing over exclusively to the production of other types of crystals or forego the opportunity to sell the LYSO crystal.

As stated by the Federal Circuit, "economic prejudice is not a simple concept but rather is likely to be a slippery issue to resolve." *A.C. Aukerman Co. v. R.L. Chaides Constr. Co.*, 960 F.2d 1020, 1033 (Fed. Cir. 1992). Therefore where, as here, a question of material fact exists to both prongs of a two prong test: (1) Siemens unreasonable delay in bringing suit, and (2) prejudice to Saint-Gobain as a result of the unreasonable delay, summary judgment should be denied.

**D.    Summary Judgment that Siemens Is Not Equitably Estopped from Asserting the '080 Patent Against Saint-Gobain Should Be Denied**

"Like laches, equitable estoppel is not limited to a particular factual situation nor subject to resolution by simple or hard and fast rules." *A.C. Aukerman Co. v. R.L. Chaides Constr Co.*, 960 F.2d 1020, 1041 (Fed. Cir. 1992). Equitable estoppel is based on what the defendant has been led to reasonably believe from the plaintiff's conduct.

> An [equitable] estoppel case . . . has three important elements. [1] The actor, who usually must have knowledge of the true facts, communicates something in a misleading way, either by words, conduct or silence. [2] The other relies upon that communication. [3] And the other would be harmed materially if the actor is later permitted to assert any claim inconsistent with his earlier conduct.

*Id* In order to prevail on a motion of summary judgment Siemens must show that there is no genuine issue as to any material fact and that Siemens is entitled to judgment on the issue of equitable estoppel as a matter of law. *See* Fed. R. Civ. P. 56(c). Siemens cannot meet that burden here.

**1.    Siemens' Obstinate Silence Induced Saint-Gobain Into Believing Siemens Would Not Sue For Infringement of the '080 Patent in Relation to Gemini**

Silence has been acknowledged as an action inducing reliance in equitable estoppel. The most common situation for application of the doctrine is, as here, when "the patentee specifically objects to the activities currently asserted as infringement in the suit and then does not follow up . . . ." *A.C. Aukerman Co. v. R.L. Chaides Constr. Co.*, 960 F.2d 1020, 1042 (Fed. Cir. 1992). That is precisely what Siemens did here; claim infringement by Philips, Saint-Gobain's customer, and then go silent and inactive.

Saint-Gobain's corporate representative has already testified that Siemens misled Saint-Gobain by threatening litigation against Philips for direct infringement and then failed to follow through on the threat, only later to bring suit against Saint-Gobain for allegedly *contributorily*

infringing through and inducing infringement of the Philips product that Siemens had threatened with suit, but against which it failed to move.

> Q.    [P]rior to the filing of this lawsuit, did Siemens do anything or fail to do anything that led Saint-Gobain to believe that Siemens wouldn't sue it for infringement of the '080 Patent?
>
> A.    Yes.
>
> Q.    What was that?
>
> A.    Siemens threatened Philips with a lawsuit and then didn't follow up on that threat for some time.

(Ex. 17, 4/9/08 Field Dep. at 23:6-17. (objection to form omitted).)

By threatening to bring suit against a product and then not bringing such suit, Siemens clearly induced a sense of security in both Philips and Saint-Gobain, the producer's suppliers, that no suit will be brought in relation to the accused product.

### 2.    Saint-Gobain Relied on Siemens' Silence

As Saint-Gobain has testified, Saint-Gobain relied on Siemens' silence toward Philips, toward Saint-Gobain's LYSO and its inaction in regard to suit against Philips' Gemini to continue its economic activity. Saint-Gobain was thereby misled, to its injury by now shouldering the defense of this action. Siemens' letter to Philips threatening infringement of the '080 Patent by Philip's Gemini, and Siemens subsequent failure to sue Saint-Gobain, Philips LYSO supplier for Gemini, created the reasonable belief that Saint-Gobain would not be sued for infringement of the '080 Patent for Saint-Gobain's sale of LYSO to Philips for use in Gemini. At a minimum, again, these facts raise triable issues for the jury.

Saint-Gobain was aware of the '080 Patent and took all precautions to ensure its Prelude 420 LYSO product did not come within the scope of the '080 Patent, including licensing the right to sell LYSO crystals from the University of Central Florida, holder of United States Patent

20

No. 6,624,420 (the "'420 Patent"), which covers the compound Saint-Gobain manufactures and sells, and obtaining a non-infringement opinion. Armed with this license and the Non-Infringement Opinion Saint-Gobain proceeded with its LYSO project with the belief that Saint-Gobain's LYSO did not infringe the '080 Patent. The LYSO development team at Saint-Gobain was careful to avoid any potential infringement of the '080 Patent (Ex. 18, SGCP029966 (internal Saint-Gobain email from 2003 asking for advice on "What is the minimum yttrium content that we can have in order to be safe [in order not to infringe the '080 Patent].").

Still, Saint-Gobain was nevertheless unsure whether Siemens would sue for infringement even though it had an opinion of competent counsel

As Mr. Field testified, Saint-Gobain ultimately relied on Siemens delay in filing suit against Philips, Siemens direct competitor, and subsequent communications between Philips and Siemens that it would not sue on Gemini to assure itself that Saint-Gobain would not be sued.

Q:    Earlier you indicated that Saint-Gobain at some point came to believe that it wouldn't be sued or that Siemens didn't intend to sue it for infringement of the '080 patent based on Siemens' delay in bringing suit against Philips; is that right?

A:    That's true.

Q:    And I believe you said that the delay that led to that belief was something around a year, is that correct?

A:    That's my recollection.

. . . . . . . . . .

Q:    [D]id either you or Saint-Gobain receive any information about Siemens' efforts to enforce the 080 patent with Philips?

A:    Yes, I believe so.

Q:    What information did you or Saint-Gobain receive?

A:      Mr. McKnight would contact me with updates.

Q:      Can you tell me how frequently Mr. McKnight would update you?

A:      Perhaps monthly.

. . . .   . . . . .

Q:      And what did Mr. McKnight tell you?

A:      Mr. McNight told me he did not believe that Siemens was going to sue Philips.

(Ex. 14, 4/9/08 Field Dep. at 106:1-13; 108:6-18; 110:24-111:4).

The jury should be allowed to consider these facts in the context of the entire action at trial to determine the merits of Saint-Gobain's defense.

### 3.      Saint-Gobain Suffered Economic Harm As a Direct Result of Siemens' Silence

The facts here thus show that Saint-Gobain changed its economic position in the face of and as a result of Siemens' silence regarding Saint-Gobain's LYSO, a silence that misled Saint-Gobain into a false sense of security that Siemens would not sue for infringement of the '080 Patent for the Gemini products' employment of Saint-Gobain's LYSO crystals. As shown above, Saint-Gobain manufactures and markets other crystals and could have centered manufacture upon them, instead of LYSO, if infringement had been promptly asserted and established. Had Saint-Gobain believed there remained a possible threat of suit, it could have assessed the situation when Siemens first asserted infringement --- before investing additional money into LYSO.

Here, as with Saint-Gobain's laches defense, there exist material questions of fact to be resolved at trial. It is not Saint-Gobain's burden for it to prove all elements of its defense, rather, it is Siemens' burden to show that there is *no* genuine issue as to *any* material fact and that the movant is entitled to judgment as a matter of law with any doubt resolved in favor of Saint-

22

Gobain. *See, Baxter Int'l, Inc. v. Cobe Lab., Inc*, 88 F.3d 1054, 1057 (Fed. Cir. 1996), *citing Transmatic, Inc. v. Gulton Indus., Inc.*, 53 F.3d 1270, 1274 (Fed. Cir. 1995); *see also*, Fed. R. Civ. P. 56(c). Siemens cannot meet that burden: summary judgment accordingly should be denied.

**E.     Siemens' Motion for Summary Judgment on Saint-Gobin's Waiver Defense Should Be Denied.**

Saint-Gobain raised a waiver defense in its answer as an alternative pleading in its fifth affirmative defense (4/7/08 Saint-Gobain's Answer to Siemens' Amended Complaint.) The legal and factual basis for Saint-Gobain's laches defense was laid out earlier in our argument for laches and equitable estoppel. The fact is that it should be left to the jury to determine at trial whether the evidence supports a waiver defense. There exist material questions of fact whether Siemens' actions, including threatening to bring an infringement suit against Philips for its sale of Gemini and then lulling Philips and Saint-Gobain, Philips' LYSO supplier for Gemini, into believing that Siemens would not sue waives Siemens right to later bring suit against Saint-Gobain based on its sale of LYSO to Philips for Gemini.

**F.     Summary Judgment on the Marking Statute Defense Should Be Denied**

Section 287(a) of Title 35 provides a limitation on damages where the plaintiff fails to mark its patented product or to notify the alleged infringer that it is infringing the patent. The statute requires that in the event of a failure to mark, no damages shall be recovered by the patentee in any action for infringement, except on proof that the infringer was notified of the infringement and continued to infringe thereafter, in which event damages may be recovered only for infringement occurring after such notice. 35 U.S.C. § 287(a); *see also Amsted Indus. v. Buckeye Steel Castings Co.*, 24 F.3d 178, 187 (Fed. Cir. 1994); *American Med. Sys. v. Medical Eng'g Corp.*, 6 F.3d 1523, 1534-38 (Fed. Cir. 1993), *cert. denied*, 511 U.S. 1070 (1994). It is

23

irrelevant for purposes of the notice requirement that the infringer knew of either the patent or of its own infringement. *Amsted Indus.*, 24, F.3d at 187, *Crown Packaging Tech., Inc. v. Rexam Beverage Can Co*, 498 F. Supp. 2d 718, 725 (D. Del. 2007).

Here, the affirmative defense raised by Saint-Gobain that Siemens failed to comply with 35 U.S.C. § 287 is appropriate because Siemens did not in its complaint (Ex.19, D.I. 1, 4/3/07, Complaint for Patent Infringement) nor in its amended complaint (Ex.20, D.I. 107, 3/24/08, Amended Complaint for Patent Infringement) affirmatively allege any public marking of its PET scanner and Siemens undisputedly had not given *any* notice to Saint-Gobain of alleged patent infringement prior to institution of suit. *See, Dunlap v. Schofield*, 152 U.S. 244, 248 (1894) (noting that the patentee has "the duty of alleging *and the burden of proving*" compliance with the marking statute) (emphasis added); *see also Maxwell v. J. Baker, Inc.*, 86 F.3d 1098, 1111 (Fed. Cir. 1996) (noting that the patentee "had the burden of pleading *and proving at trial* that she complied with [§ 287(a)]") (emphasis added).

Even assuming *arguendo* that Siemens complied with the pleading portion of 35 U.S.C. § 287 by pleading that "Saint-Gobain's infringement of the '080 patent has been . . . willful." (Ex. 19, D.I. 1, 4/3/07, ¶17, Complaint for Patent Infringement), the allegation does not meet Siemens burden to prove at trial that it complied with 35 U.S.C. § 287.

Here, there remain material questions of fact whether Siemens has complied with the marking statute. Siemens now claims that it marked its Biograph PET scanners "since at least 2005." (Ex. 3, p. 20, Partial Summary Judgment Motion). However, "once marking has begun, it must be substantially consistent and continuous in order for the party to avail itself of the constructive notice provisions of the statute." *American Med. Sys., Inc. v. Medical Eng'g Corp.*, 6 F.3d 1523, 1538-39 (Fed. Cir. 1993). That proof has not been made here. In addition, as the

24

patentee, Siemens has the burden of pleading and *proving at trial* that it complied with the statutory requirements. *Dunlap*, 152 U.S. at 248. More, "[c]ompliance with 35 U.S.C. § 287 (a) is a question of fact." *Maxwell v. J. Baker, Inc.*, 86 F.3d 1098, 1111 (Fed. Cir. 1996); *Tenneco Auto. Operating Co. v. Visteon Corp*, 375 F. Supp. 2d 360, 365 (D. Del. 2005). Here, there remain questions of material fact whether the marking claimed by Siemens is sufficient to comply with 35 U.S.C. § 287, therefore the issue should be heard at trial.

### CONCLUSION

For the foregoing reasons, Siemens' Summary Judgment Motion on Saint-Gobain's laches, estoppel, waiver, marking defense, and prosecution history estoppel defenses should be denied in all respects. There remain material questions of fact on each of Saint-Gobain's affirmative defenses, therefore summary judgment should be denied and these fact intensive issues should be heard at trial. In addition, Saint-Gobain's fourth affirmative defense of prosecution history estoppel was properly and timely raised and therefore Siemens motion to strike should also be denied.

OF COUNSEL

Frederick L. Whitmer
John C. Ohman
Thelen Reid Brown Raysman & Steiner LLP
875 Third Avenue
New York, New York 10022
(212) 603-2000

Dated: May 30, 2008

Jesse A. Finkelstein (#1090)
Finkelstein@rlf.com
Jeffrey L. Moyer (#3309)
Moyer@rlf.com
Kelly E. Farnan (#4395)
Farnan@rlf.com
Richards, Layton & Finger, P.A.
One Rodney Square, P.O. Box 551
Wilmington, DE 19899
(302) 651-7700
*Attorneys for Defendant/Counterclaim-
Plaintiff Saint-Gobain Ceramics &
Plastics, Inc.*

25

RLF1-3288343-1

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

## CERTIFICATE OF SERVICE

I hereby certify that on May 30, 2008, I electronically filed the foregoing document with

the Clerk of the Court using CM/ECF which will send notification of such filing to the following

and which has also been served as noted:

**BY E-MAIL AND HAND DELIVERY**

Jack B. Blumenfeld
Maryellen Noreika
Morris, Nichols, Arsht & Tunnell LLP
1201 North Market Street
Wilmington, DE 19899

I hereby certify that on May 30, 2008, the foregoing document was sent to the following

non-registered participants in the manner indicted:

**BY E-MAIL**

Gregg F. LoCascio
Charanjit Brahma
Sean M. McEldowney
Kirkland & Ellis LLP
655 15th Street, N.W.
Washington, DC 20005-5793

Kelly E. Farnan

Kelly E. Farnan (#4395)

## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF DELAWARE

### CERTIFICATE OF SERVICE

I hereby certify that on June 30, 2008, I electronically filed the foregoing document with

the Clerk of the Court using CM/ECF which will send notification of such filing to the following

and which has also been served as noted:

### BY HAND DELIVERY

Jack B. Blumenfeld
Maryellen Noreika
Morris, Nichols, Arsht & Tunnell LLP
1201 North Market Street
Wilmington, DE  19899

I hereby certify that on June 30, 2008, the foregoing document was sent to the following

non-registered participants in the manner indicted:

### BY FEDERAL EXPRESS

Gregg F. LoCascio
Charanjit Brahma
Sean M. McEldowney
Kirkland & Ellis LLP
655 15th Street, N.W.
Washington, DC  20005-5793

Kelly E. Farnan (#4395)