IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| SIEMENS MEDICAL SOLUTIONS USA, INC., </br></br>          Plaintiff, </br></br>     v. </br></br> SAINT-GOBAIN CERAMICS & PLASTICS, INC., </br></br>          Defendant. | ) </br> ) </br> ) </br> ) </br> ) </br> ) Civ. No. 07-190-SLR </br> ) </br> ) </br> ) </br> ) </br> ) |

**MEMORANDUM ORDER**

At Wilmington this 20th day of August, 2008, having reviewed various outstanding motions and the papers submitted in connection therewith, and having heard oral argument on the same;

IT IS ORDERED that plaintiff Siemens Medical Solutions USA, Inc.'s ("Siemens") motion to exclude portions of the expert testimony of Dr. Kenneth J. McClellan (D.I. 139) is granted, for the reasons that follow:

1. Dr. McClellan in his expert report opined that "LSO and LYSO are different substances and the differences between their properties are such that they cannot be considered to be equivalent." (D.I. 140, ex. 2 at 1-2) He based the above opinion in part on his "experience with the scintillator crystals under consideration," more specifically, two studies undertaken at the Los Alamos National Laboratory ("LANL").

2. Dr. McClellan has been employed since 1996 by Los Alamos National

Security ("LANS"), which is the prime contractor operating LANL for the Department of Energy. Dr. McClellan is a research scientist, working in the field of Materials Science and Engineering with experience in development of rare earth oxyorthosilicate and other scintillators. Because his work deals with homeland protection and national security, he is under significant restrictions on his use of government property, to wit, he neither is permitted to use any "work related materials for **anything** related to this case," nor is he permitted "to produce any LANL documents" to any of the parties to the instant litigation. (D.I. 144)

    3. In his deposition, Dr. McClellan testified that, although there should be documents at LANL relating to the studies referenced in his expert report, nevertheless, he did not look at them to refresh his recollection, nor was he permitted to produce them in this litigation consistent with LANL policy. (D.I. 140, ex. 1 at 18-21, 94-97, 168-172) Siemens moves to strike that part of his expert report and opinion relating to his work done or reviewed at LANL for which there is no supporting documentation that is publicly available.

    4. I start and end my analysis with the fundamental principle of fairness. A party should not be allowed to use confidential information as both a shield and a sword. If Dr. McClellan is not permitted to share his work product with the parties in this litigation, he should not be allowed to rely on his recollection of said work product in this litigation. Aside from the serious question of whether his recollection of data generated several years ago can possibly constitute a sufficient basis for an expert opinion under Fed. R. Evid. 702, there clearly is no principled way to test his recollection and opinion. For these reasons, Siemens' motion to strike the portions of Dr. McClellan's expert opinion

relating to studies performed at LANL is granted.

IT IS FURTHER ORDERED that Siemens' motion to strike the fourth affirmative defense asserted by defendant Saint-Gobain Ceramics & Plastics, Inc. ("Saint-Gobain") (D.I. 120) shall be held in abeyance until the pretrial conference, for the reasons that follow:

1. In answer to the complaint, Saint-Gobain pled as its fourth affirmative defense the following:

> [Siemens is] estopped from construing any claim of the '080 patent to be infringed or to have been infringed, either literally or by application of the doctrine of equivalents, by any method or product manufactured, used, imported, sold or offered for sale by Saint-Gobain in view of the prior art and/or because of admissions and statements made to the United States Patent and Trademark Office during prosecution of the application leading to the issuance of the '080 patent, because of disclosure or language in the specification of the '080 patent, and/or because of limitations in the claims of the '080 patent.

(D.I. 7) Siemens sought the factual and legal bases for the defense through interrogatory, specifically, interrogatories numbered 4 and 10 of its first set of interrogatories. (D.I. 122, ex. 22) Saint-Gobain objected to said interrogatories as being "premature at this stage of the proceedings" but, with respect to interrogatory numbered 10, promised to "supplement as more facts become available." (Id., ex. 1) In September 2007, Saint-Gobain filed its only supplemental response to Siemens' first set of interrogatories. Saint-Gobain asserted in response to interrogatory numbered 4 that it did "not contend the Siemens [was] 'barred' from arguing that the LYSO crystal is the equivalent of the LSO crystal," but believed that Siemens was "not entitled to a range of equivalents that would include the LYSO crystal manufactured and sold by"

Saint-Gobain. Saint-Gobain did not supplement its original response to interrogatory numbered 10. (Id., ex. 24)

2. In February 2008, Siemens served a third-party subpoena on Leon Radomsky, an attorney at Foley & Lardner LLP who prepared a noninfringement opinion in March 2006.[1] (Id., ex. 26) Request numbered 2 of the subpoena asked that the following be produced:

> All documents and things concerning any analysis conducted by or on behalf of Saint-Gobain regarding the '080 patent, whether Saint-Gobain's products infringe or would infringe the '080 patent, or the validity or enforceability of the '080 patent, including without limitation any written or oral opinions of counsel provided to Saint-Gobain, drafts of such opinions, all documents and thing concerning Saint-Gobain's request for such opinions, all documents and things concerning any information about Saint-Gobain's products considered in performing such analyses or preparing such opinions, and all communications regarding such opinions or analyses.

(Id.) The documents requested were timely produced. The deposition of Mr. Radomsky apparently has yet to be taken, because of disputes between Siemens and the law firm of Foley & Lardner, LLP.

3. On April 4, 2008, after the close of fact discovery, Saint-Gobain formally advised Siemens that it intended to prove at trial that Siemens "is barred from asserting infringement under the doctrine of equivalents for reasons that Saint-Gobain ha[s] previously identified. The principal bases of this defense are discussed in Saint-Gobain's responses to Siemens' Interrogatories Nos. 4 and 10, as supplemented, and are more fully set forth in Foley & Lardner's March 2006 non-infringement opinion

---

[1] In said opinion, the issue of prosecution history estoppel was specifically addressed. (D.I. 122, ex. 26)

respecting the '080 Patent." (Id., ex. 25)

    4. The record created by the parties vis a vis Saint-Gobain's defense of prosecution history estoppel is far from clear. Therefore, in order to determine whether Siemens' claims of prejudice have merit, I will defer ruling on the motion until the following information has been exchanged:

    a. On or before **August 26, 2008,** Saint-Gobain shall submit to Siemens and the court a proffer of the evidence it intends to admit at trial[2] in support of said defense.

    b. Siemens shall be prepared to identify for me, at the pretrial conference, what prejudice it will suffer if Saint-Gobain is permitted to pursue its defense by means of such evidence; i.e., Siemens must specifically identify what of such evidence was not available prior to the close of fact discovery and what follow-up discovery Siemens would have pursued, but did not pursue, because of the state of the record.

_____
United States District Judge

---

[2]The issue of prosecution history estoppel is a matter for the court, not a jury.

5