IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

SIEMENS MEDICAL SOLUTIONS        )
USA, INC.,                       )
                                 )
            Plaintiff,           )
                                 )
        v.                       )        C.A. No.  07-190 (SLR)
                                 )
SAINT-GOBAIN CERAMICS &          )
PLASTICS, INC.,                  )
                                 )
            Defendant.           )

## PLAINTIFF'S AND DEFENDANT'S LISTS
## OF ISSUES TO BE RAISED *IN LIMINE*

As stated in the Joint Proposed Pretrial Order submitted on August 25, 2008 (D.I. 163 at 6), attached are issues the parties would like to raise *in limine* at the Pretrial Conference or during trial.  (Ex. A is Plaintiff's list; Ex. B is Defendant's).

MORRIS, NICHOLS, ARSHT & TUNNELL LLP

*/s/ Maryellen Noreika*

_____
Jack B. Blumenfeld (#1014)
Maryellen Noreika (#3208)
1201 North Market Street
P.O. Box 1347
Wilmington, DE  19899
(302) 658-9200
mnoreika@mnat.com

OF COUNSEL:

*Attorneys for Plaintiff*
    *Siemens Medical Solutions USA, Inc.*

Gregg F. LoCascio, P.C
Charanjit Brahma
Sean M. McEldowney
KIRKLAND & ELLIS LLP
655 15th Street, N.W.
Washington, D.C. 20005-5793
(202) 879-5000

August 27, 2008
2466416

## <u>CERTIFICATE OF SERVICE</u>

I, the undersigned, hereby certify that on August 27, 2008, I electronically filed the foregoing with the Clerk of the Court using CM/ECF, which will send notification of such filing(s) to the following:

Kelly E. Farnan, Esquire
RICHARDS, LAYTON & FINGER, P.A.

I also certify that copies were caused to be served on August 27, 2008, upon the following in the manner indicated:

## <u>VIA ELECTRONIC MAIL</u>

Kelly E. Farnan, Esquire
RICHARDS, LAYTON & FINGER, P.A.
One Rodney Square
Wilmington, DE  19801

Frederick L. Whitmer, Esquire
THELEN REID BROWN RAYSMAN & STEINER LLP
875 Third Avenue
New York, NY  10022

*/s/ Maryellen Noreika*

_____

Maryellen Noreika (#3208)

# EXHIBIT A

Siemens' In Limine Issues to Address at Pretrial Conference

1. ***Other Non-Produced Legal Opinions.*** The Court should preclude evidence regarding legal opinions or analyses, including the alleged existence or conclusions thereof, that were not produced concerning infringement or other analysis of the '080 patent or the freedom to make LYSO scintillator crystals. Specifically, Saint-Gobain has only produced during discovery opinions of counsel Saint-Gobain received from Leon Radomsky at Foley & Lardner LLP. Other opinions and analyses, while tangentially mentioned in some documents produced by Saint-Gobain or Philips, were never waived and, thus, never produced in discovery. Attorney-client privilege continues to be asserted for all such non-produced opinions. Moreover, there is no evidence to indicate that Saint-Gobain actually reviewed, much less relied upon, such legal opinions or analyses.

2. ***Undisclosed LYSO Crystal Properties.*** Saint-Gobain should be precluded from offering evidence of test data regarding the properties of its 10% LYSO crystals, as none was ever produced in discovery nor relied upon by its experts. The only test data in this case is Siemens' test data of the accused crystal by Dr. Niraj Doshi, which Saint-Gobain has never disputed. Moreover, despite Siemens' request for production served at the outset of discovery, Saint-Gobain failed to produce a sample of its 10% Y LYSO crystal before the close of either fact or expert discovery. Although Saint-Gobain has to date refused to stipulate that the test data from Siemens' testing of an independently obtained Saint-Gobain 10% Y LYSO crystals (attached to the Affidavit of Dr. Doshi submitted with Siemens' preliminary injunction motion) is representative of Saint-Gobain's accused crystals, Saint-Gobain should not be allowed to contest Dr. Doshi's test data with undisclosed information.

3. ***Karp "Test Data" Concerning Crystal Properties.*** Saint-Gobain and its expert witness, Joel Karp, should be precluded from offering any evidence about Dr. Karp's purported testing of any crystals. Dr. Karp was not asked to do any tests and did not disclose any in his report. His report contained one passing reference to a measurement of the decay time of one Saint-Gobain 10% Y LYSO crystal to be 47 nanoseconds, a measurement almost 20% higher than the usual quoted value. Siemens requested, but neither Saint-Gobain nor Dr. Karp has produced, any documentation supporting this measurement.

4. ***Manufacturing Properties Of LSO And LYSO.*** Saint-Gobain should be precluded from offering evidence, including expert witness testimony, regarding the manufacturing properties of its 10% Y LYSO crystals or the claimed LSO crystals. In its Memorandum Opinion on Siemens' preliminary injunction motion, this Court found that evidence regarding manufacturing differences between these materials is "not helpful" to deciding whether Saint-Gobain's 10% Y LYSO crystals are equivalent to the claimed LSO crystals. (D.I. 79 at 10).

5. ***LYSO Patents Or Patent Applications Other Than U.S Patent No. 6,624,420.*** Saint-Gobain relies on its license under the Chai '420 patent as a defense. But, Saint-Gobain should be precluded from discussing any other LYSO patents, the abandoned McClellan '489 patent, or any reference to plural or multiple LYSO patents.

6. ***Siemens' HRRT Research Scanner.***  Saint-Gobain should be precluded from offering evidence regarding Siemens' High Resolution Research Tomograph (HRRT) scanner, some versions of which incorporate an LYSO scintillator crystal including ***70% yttrium*** to offer contrasting scintillation properties to an LSO scintillator crystal.  Siemens has readily admitted that LYSO crystals that contain substantially higher amounts of yttrium have different scintillation properties than Saint-Gobain's accused 10% Y LYSO crystals and do not infringe the '080 patent, (*see, e.g.,* Siemens' Resp. to Saint-Gobain RFA No. 25), and Saint-Gobain's own scientists agree.  Saint-Gobain's evidence regarding the properties of a seven-fold higher, high-Y LYSO crystal would only serve to confuse the jury and distract it from the actual question of equivalence between the claimed LSO crystals and Saint-Gobain's 10% Y LYSO crystals.

7. ***Other LYSO Suppliers.***  Saint-Gobain should be precluded from offering evidence regarding other companies, including Crystal Photonics, that may also supply low-Y LYSO to Philips for use in PET/CT scanners.  In particular, Saint-Gobain should be precluded from offering evidence regarding low-yttrium LYSO crystals marketed by other suppliers as evidence of the availability of non-infringing alternatives.  Because those other crystals are infringing if Saint-Gobain's crystals infringe, and because no such crystals have been produced by Saint-Gobain or any third party for conclusive testing, information about other LYSO crystal suppliers and their products has no legal relevance to any issue in this case.

8. ***Basis For Individualized PET Customer Demand.***  Saint-Gobain (and any Philips witness called by Saint-Gobain) should be precluded from offering evidence or eliciting testimony regarding any particular buyer for Philips' PET scanners, why they purchased a Philips scanner, or whether particular customers would have selected Siemens' Biograph PET/CT scanners if Philips' Gemini TF PET/CT scanner (which incorporates Saint-Gobain's accused 10% Y LYSO scintillator crystals) was not available on the market.  Siemens sought discovery from Philips regarding the customers of its Gemini TF PET/CT scanner and asked questions in depositions so that such an analysis could be undertaken, and Philips refused to provide the identity of any of its customers and blocked questioning on these topics.  Saint-Gobain made no independent effort to obtain this information from Philips and did not provide that information either.  Saint-Gobain and Philips share a common interest in this case, have signed agreements to cooperate in this case, and Saint-Gobain is receiving funding from Philips to offset its litigation costs.  Siemens' efforts to determine both who was purchasing Gemini TF PET/CT scanners and their reasons for doing so were frustrated.

9. ***Siemens' arbitration with Crystal Photonics, Inc.***  Saint-Gobain should be precluded from offering evidence relating to an unrelated 2004 arbitration proceeding over a supply agreement between Siemens and Crystal Photonics, Inc., a former contract manufacturer of LSO.

10. ***Prosecution history statements.***  To the extent the Court does not grant Siemens' motions to strike Saint-Gobain's prosecution history estoppel defense and for summary judgment denying that defense, Saint-Gobain should be precluded from presenting any evidence supporting a prosecution history estoppel defense to the jury, as that defense is a matter of law for the Court to decide.

2

11. ***The Preliminary Injunction Proceedings.*** As it has no relevance to the issues in dispute, or, to the extent it may have any relevance, would be extremely prejudicial to Siemens' case, The Court should preclude any reference to Siemens' motion for a preliminary injunction in this case, the Court's denial of that motion, or the proceedings generally.

**SAINT-GOBAIN HAS AGREED NOT TO PRESENT EVIDENCE WITHIN THIS CATEGORY.**

12. ***Settlement discussions.*** Saint-Gobain should be precluded from offering evidence regarding Siemens' and Saint-Gobain's efforts to settle this litigation. Saint-Gobain has, for example, designated deposition testimony of Thomas Kinisky in which Mr. Kinisky discusses negotiations between Siemens and Saint-Gobain regarding settlement efforts. This type of evidence is plainly inadmissible under Fed. R. Evid. 408.

**SAINT-GOBAIN HAS AGREED NOT TO PRESENT EVIDENCE WITHIN THIS CATEGORY.**

# EXHIBIT B

<u>In Limine Motions Proposed by Saint-Gobain</u>

1.     Siemens should not be permitted to argue to the effect that it is entitled to lost profits as a basis for damages in this action because of the absence of the factual and legal predicates to demonstrate that "but for" the alleged infringement of the '080 Patent, Siemens would, in fact, have made the sales that Philips achieved for its Gemini TOF Scanner.

2.     Siemens' damages, if any, should be based on the financial results of the named Plaintiff, not of any other Siemens entity, for the ultimate Siemens' parent entity is not the Plaintiff here.  To the extent that Siemens' damage expert purports to add back "profit" to the Plaintiff on the basis of expenses that the Plaintiff incurred, which may have increased the revenues of other Siemens' entities, that inclusion is error and should be excluded

3.     The Court should exclude evidence respecting the Common Interest Agreement between Philips and Saint-Gobain on relevance and Fed.R.Evid. 403 grounds.

4.     The Court should exclude any argument or suggestion that Saint-Gobain's indemnity to Philips respecting the '080 Patent somehow acts to benefit Siemens as a third party beneficiary, relieving Siemens of the obligation to bring suit against Philips before seeking or calculating damages on the basis of Philips' sales of allegedly infringing PET/CT scanners.

5.     The Court should either give the jury a cautionary instruction that the terms, "interchangeable", "interchangeably", "equivalent" and "equivalence" have specific, legal significance in this action for the purposes of the Patent Code, the definitions of which the Court will instruct at the end of the case, or, alternatively, exclude, under Rule 403, any evidence of the use of those terms by non-lawyers.  The fact that non-lawyer individuals may have used those

terms in a colloquial or conversational (or otherwise non-legal) sense should not be regarded as having any legal significance for the jury's consideration of the issue of legal equivalence in this action.

6.  Siemens must prove by clear and convincing evidence that Saint-Gobain's LYSO crystal is the legal equivalent of the claimed LSO crystal in the '080 Patent, for to hold otherwise would have the consequence of invalidating a claim of a duly and validly issued United States patent on a diminished evidentiary standard different from that required by prevailing law.  That is so because the LYSO crystal that Saint-Gobain supplies Philips for the Gemini TOF Scanner falls within the scope of the claims of a valid United States Patent (the '420 Patent to Chai) and is not a mere improvement over LSO, so that any conclusion or judgment that a LYSO crystal with an yttrium content within the scope of the claims of the '420 Patent, irrespective of the percentage of yttrium, falls within the scope of the claims of the '080 Patent under the doctrine of equivalents is inconsistent with the validity of the LYSO crystal as claimed in the '420 Patent.

NY #1742724 v2