IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| SIEMENS MEDICAL SOLUTIONS USA, INC., | ) ) ) | |
| Plaintiff, | ) ) | |
| v. | ) ) | C.A. No. 07-190 (SLR) |
| SAINT-GOBAIN CERAMICS & PLASTICS, INC., | ) ) ) | **REDACTED - PUBLIC VERSION** |
| Defendant. | ) ) | |

## JOINT PRETRIAL ORDER

MORRIS, NICHOLS, ARSHT & TUNNELL LLP
Jack B. Blumenfeld (#1014)
Maryellen Noreika (#3208)
1201 North Market Street
Wilmington, DE 19899
(302) 658-9200
jblumenfeld@mnat.com
mnoreika@mnat.com

*Attorneys for Plaintiff*
  *Siemens Medical Solutions USA, Inc.*

RICHARDS, LAYTON & FINGER, P.A.
Jesse A. Finkelstein (#1090)
Jeffrey L. Moyer (#3309)
Kelly E. Farnan (#4395)
One Rodney Square
Wilmington, DE 19899
(302) 651-7700
finkelstein@rlf.com
moyer@rlf.com
farnan@rlf.com

*Attorneys for Defendant*
  *Saint-Gobain Ceramics & Plastics, Inc.*

August 25, 2008  - Original Filing Date
September 4, 2008 - Redacted Filing Date

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| SIEMENS MEDICAL SOLUTIONS USA, INC., | ) ) ) | |
| Plaintiff, | ) ) | |
| v. | ) ) | C.A. No.  07-190 (SLR) |
| SAINT-GOBAIN CERAMICS & PLASTICS, INC., | ) ) ) | **CONFIDENTIAL – FILED UNDER SEAL** |
| Defendant. | ) ) | |

## JOINT PRETRIAL ORDER

On August 28, 2008 at 4:30 p.m. counsel for plaintiff Siemens Medical Solutions USA, Inc. ("Siemens Medical") and defendant Saint-Gobain Ceramics & Plastics, Inc. ("Saint-Gobain") will participate in a pretrial conference before this Court pursuant to Rule 16 of the Federal Rules of Civil Procedure, Rule 16.3 of this Court, and this Court's June 28, 2007 Scheduling Order.  The following matters as to the jury trial scheduled to begin on September 15, 2008, are hereby ordered by the Court.

## I.    NATURE OF THE ACTION

### A.    Pleadings

1.    Siemens Medical filed this suit on April 3, 2007, alleging that Saint-Gobain contributorily infringes and induces infringement of Siemens Medical's U.S. Patent No. 4,958,080 ("the '080 patent") by supplying lutetium yttrium oxyorthosilicate ("LYSO") crystals containing 10% yttrium to companies like Philips for use in PET scanners and other gamma or x-ray detectors.  (D.I. 1.)

2.      Saint-Gobain answered the Complaint on May 14, 2007, denying the material allegations, asserting six affirmative defenses, and counterclaiming for a declaratory judgment that Saint-Gobain has not infringed any valid claim of the '080 patent. (D.I. 7.)

3.      On March 24, 2008, Siemens Medical filed an amended complaint. (D.I. 107.) Saint-Gobain answered the amended complaint on April 7, 2008, denying the material allegations, asserting five affirmative defenses, and counterclaiming for a declaratory judgment of non-infringement. (D.I. 114.)

4.      On May 2, 2008, the parties submitted a joint claim construction statement agreeing to the terms that need to be construed for the jury and to the constructions for those terms. (D.I. 117.)

**B.      Pending Motions**

1.      On May 9, 2008, Siemens Medical moved for summary judgment on Saint-Gobain's affirmative defenses regarding laches, equitable estoppel, waiver, prosecution history estoppel, and failure to mark under 35 U.S.C. § 287, and also moved to strike Saint-Gobain's prosecution history estoppel defense. (D.I. 121.) The Court heard argument on these motions on July 18, 2008. On August 7, 2008, Saint-Gobain informed Siemens Medical that it intended to waive certain defenses that were the subject of Siemens Medical's summary judgment motion. On August 11, 2008, the parties submitted a stipulation dismissing with prejudice Saint-Gobain's defenses of laches, waiver, equitable estoppel, and failure to mark. (D.I. 159.) Siemens Medical's motion for summary judgment on or, in the alternative, motion to strike Saint-Gobain's prosecution history estoppel defense is still pending before the Court.

## II.    JURISDICTION

1.    This Court has subject matter jurisdiction pursuant to 28 U.S.C. §§ 1331 and 1338 because this action arises under the patent laws of the United States, including 35 U.S.C. § 271 et seq.

## III.    STATEMENT OF ADMITTED FACTS

1.    The parties admit the facts as set forth in attached Exhibit 1.

## IV.    ISSUES OF FACT THAT REMAIN TO BE LITIGATED

1.    Siemens Medical's statement of issues of fact that remain to be litigated is attached as Exhibit 2.

## V.    ISSUES OF LAW THAT REMAIN TO BE LITIGATED

1.    Siemens Medical's statement of issues of law that remain to be litigated is attached as Exhibit 3.

2.    Saint-Gobain's statement of issues of law that remain to be litigated is attached as Exhibit 4.

## VI.    TRIAL EXHIBITS

1.    Siemens Medical's list of exhibits that it may offer at trial is attached as Exhibit 5. Any descriptions included in the exhibit list are provided as a convenience only and shall not be used as an admission or as evidence. Siemens Medical reserves the right to add any exhibits used in any deposition yet to occur in this case or any additional documents subsequently produced. Saint-Gobain's objections to Siemens Medical's exhibits are listed in the last column of Exhibit 5 for each exhibit.

2.    Saint-Gobain's list of exhibits that it may offer at trial is attached as Exhibit 6. Any descriptions included in the exhibit list are provided as a convenience only and shall not be used as an admission or as evidence. Saint-Gobain reserves the right to add any

exhibits used in any deposition yet to occur in this case or any additional documents subsequently produced. Siemens Medical's objections to Saint-Gobain's exhibits are listed in the last column of Exhibit 6 for each exhibit.

3.    The parties exchanged electronic copies of their exhibits with exhibit labels on August 13, 2008.

4.    The fact that a party includes an exhibit on its list does not constitute a waiver by that party of any objection to the use of such exhibit by the other party. Each party reserves the right to offer an exhibit designated by the other party, even if not introduced by the designating party.

5.    Any document that on its face appears to have been authored by an employee, officer, or agent of a party shall be deemed prima facie evidence of authenticity, subject to the right of the party against whom such document is offered to adduce evidence to the contrary.

6.    Any document that on its face was authored or prepared by a third party that was produced in discovery by that third party (or by a party), shall be deemed prima facie evidence of authenticity, subject to the right of the party against whom such a document is offered to adduce evidence to the contrary.

7.    The parties agree that written answers to interrogatories, requests for admission, or Rule 30(b)(6) deposition notices served or stipulations agreed to in this case shall be treated as having been given under oath, whether or not the answers were signed or verified by the party making them.

8.    The parties shall exchange demonstrative exhibits to be used at trial by 7 p.m. the evening before they are to be used. The notice provision of this paragraph does not

apply to demonstrative exhibits created in the courtroom during trial testimony or the enlargement, highlighting, ballooning, or other annotations of trial exhibits or testimony.

## VII.    TRIAL WITNESSES

1.    Siemens Medical's list of witnesses it may call to testify either in person or by deposition is attached as Exhibit 7.

2.    Saint-Gobain's list of witnesses it may call to testify either in person or by deposition is attached as Exhibit 8.

3.    The parties agree that they shall provide the other side with notice of each witness expected to be called live or by deposition at trial along with specific identification of exhibits expected to be used on direct examination of that witness by 7 p.m. two days before the witness is to be called, including witness order where multiple witnesses are anticipated to testify on the same day.  The other party shall identify any objections to the admissibility of the exhibits sought to be used with the witness 24 hours after receiving notice of the exhibits.  The parties shall then meet and confer regarding all objections and, to the extent the objections are not resolved by the meet and confer, they will inform the Court before the witness is called of said objections for resolution as the Court sees fit either in advance or during the testimony.

4.    The parties agreed to exchange deposition designations for any witness whose testimony the party intends to present by deposition by August 14, 2008.  Objections and counter-designations were exchanged on August 21, 2008.  Final objections and counter-counter-designations shall be exchanged on August 25, 2008.  The parties shall then meet and confer regarding all objections and, to the extent the objections are not resolved by the meet and confer, they will be provided to the Court for resolution before the deposition is to be offered.

5.    Proposed trial "playlists" in page and line format shall be provided by a party seeking to present deposition testimony at the time of the witness disclosure at 7 p.m. two

days prior to its planned presentation at trial. If the opposing party believes counter-designated testimony is necessary for completeness, the opposing party shall identify those counter-designations within 24 hours of receiving the deposition designation disclosure. Such counter-designations shall be included, read, or played at one time. The specific designated portions of the deposition shall be played omitting objections and colloquy. Prior to any deposition videotaped testimony being shown to the jury, the specific portions to be shown and its manner of presentation shall be made available for review by the opposing party to ensure its adherence to the parties' agreement and accuracy.

## VIII.  BRIEF STATEMENT OF WHAT THE PARTIES INTEND TO PROVE

1.    Siemens Medical's brief statement of the disputed facts that it intends to prove in support of its claims is attached as Exhibit 9. The statement does not purport to be exhaustive of all issues to be tried.

2.    Saint-Gobain's brief statement of the disputed facts that it intends to prove in support of its defenses is attached as Exhibit 10. The statement does not purport to be exhaustive of all issues to be tried.

## IX.  PROPOSED AMENDMENTS TO PLEADINGS

1.    Each party reserves the right to amend its pleadings to conform to proof.

## X.  OTHER MATTERS THE PARTIES WISH TO ADDRESS AT PRETRIAL CONFERENCE

1.    The parties anticipate that each may have motions in limine following the completion of all discovery and the Court's rulings on pending motions. The parties have agreed to exchange with one another lists of such issues and will meet and confer on these issues in an effort to resolve them. The parties will submit to the Court on Wednesday, August 27, 2008 a list of any issues the parties are unable to resolve.

## XI. CERTIFICATION

1.  The parties certify that they have engaged in a good faith effort to explore the resolution of the controversy by settlement, but no agreement of settlement has been reached.

## XII. ORDER TO CONTROL THE COURSE OF ACTION

1.  This order shall control the subsequent course of the action, unless modified by the Court to prevent manifest injustice.

MORRIS, NICHOLS, ARSHT & TUNNELL LLP

*/s/ Maryellen Noreika*

Jack B. Blumenfeld (#1014)
Maryellen Noreika (#3208)
1201 North Market Street
Wilmington, DE 19899
(302) 658-9200
jblumenfeld@mnat.com
mnoreika@mnat.com

*Attorneys for Plaintiff*
*Siemens Medical Solutions USA, Inc.*

RICHARDS, LAYTON & FINGER, P.A.

*/s/ Kelly E. Farnan*

Jesse A. Finkelstein (#1090)
Jeffrey L. Moyer (#3309)
Kelly E. Farnan (#4395)
One Rodney Square
Wilmington, DE 19899
(302) 651-7700
finkelstein@rlf.com
moyer@rlf.com
farnan@rlf.com

*Attorneys for Defendant*
*Saint-Gobain Ceramics & Plastics, Inc.*

**IT IS SO ORDERED.**

Dated: August 28, 2008

_____
United States District Court Judge

7

# EXHIBIT 1

## FULLY REDACTED

# EXHIBIT 2

## FULLY REDACTED

# EXHIBIT 3

**EXHIBIT 3**

**ISSUES OF LAW REMAINING TO BE LITIGATED**

Siemens identifies the following issues of law remaining to be litigated. To the extent Siemens' statement of issues of fact remaining to be litigated contains issues of law, those issues are incorporated herein by reference. Siemens also incorporates by reference its briefs submitted in connection with Siemens' motion for preliminary injunction and motion for summary judgment.

**I.     INFRINGEMENT**

"Infringement requires proof by a preponderance of the evidence." *Seal-Flex, Inc. v. Athletic Track & Court Constr.*, 172 F.3d 836, 842 (Fed. Cir. 1999). "Determination of infringement, whether literal or under the doctrine of equivalents, is a question of fact." *Hilgraeve Corp. v. Symantec Corp.*, 265 F.3d 1336, 1341 (Fed. Cir. 2001). Siemens alleges that Saint-Gobain contributes to and induces infringement of claims 1 and 2 of the '080 patent by its customers in connection with its sale of 10% Y LYSO crystals.

**A.     Direct Infringement**

To prove direct infringement of a claim, a patentee must show that an accused product meets every limitation of the claim, either literally or under the doctrine of equivalents. *See Pfizer, Inc. v. Teva Pharms., USA, Inc.*, 429 F.3d 1364, 1376 (Fed. Cir. 2005). Siemens alleges that Saint-Gobain's 10% Y LYSO crystal meets the crystal scintillator element of the claims of the '080 patent under the doctrine of equivalents.[1]

---

[1]     Saint-Gobain does not dispute that its customers' gamma and x-ray detectors incorporating the accused crystal literally meet the other limitations of the asserted claims.

1

A feature in an accused product meets a claim limitation under the doctrine of equivalents if it is "substantially the same as" the corresponding limitation in the claim. *Interactive Pictures Corp. v. Infinite Pictures, Inc.*, 274 F.3d 1371, 1383 (Fed. Cir. 2001). At least two tests have been applied by courts to determine whether an accused product infringes under the doctrine of equivalents, either of which can be used to show equivalence: (1) the "function-way-result" test and (2) the "known interchangeability" test. *See id.* at 1382-83 (affirming judgment of infringement under the doctrine of equivalents using either the function-way-result test or the known interchangeability test); *Sofamor Danek Group, Inc. v. DePuy-Motech, Inc.*, 74 F.3d 1216, 1222 (Fed Cir. 1996) (acknowledging that the "function-way-result" test is not necessarily "'the test'" for equivalence and "commend[ing]" evidence of known interchangeability as alternative proof of equivalence) (citation omitted). These tests are the standard framework for assessing equivalence and are regularly applied to determine equivalence for patents claiming compositions of matter. *See, e.g., Abbott Labs. v. Andrx Pharms., Inc.*, 473 F.3d 1196, 1211-12 (Fed. Cir. 2007) (applying function, way, result test to determine equivalence for a patent claiming a composition of matter).

The function-way-result test is satisfied if the feature of the accused product in question performs substantially the same function in substantially the same way to achieve substantially the same result as the element of the claimed invention. *Graver Tank & Mfg. Co. v. Linde Air Prods. Co.*, 339 U.S. 605, 608 (1950) (internal quotation marks and citation omitted). To determine what "function," "way," and "result" to consider as part of this test, the Court should confine its inquiry to the patent itself and its prosecution history. *AquaTex Indus., Inc. v. Techniche Solutions*, 479 F.3d 1320, 1328 (Fed. Cir. 2007) ("the identification of the elements of the function, way, result test solely 'entails an examination of the claim and the explanation of it

found in the written description of the patent,'" as well as "in some cases the patent's prosecution history.'") (citation omitted); *Vehicular Techs. Corp. v. Titan Wheel Int'l, Inc.*, 141 F.3d 1084, 1090 (Fed. Cir. 1998) (function-way-result inquiry focuses on "an examination of the claim and the explanation of it found in the written description of the patent."). For instance, in *Boehringer Ingelheim Vetmedica, Inc. v. Schering-Plough Corp.*, the Federal Circuit focused on the claim itself to conclude that various properties cited by defendant as evidence of non-equivalence were "irrelevant to the claim in suit" and therefore not evidence of non-equivalence. 320 F.3d 1339, 1351-52 (Fed. Cir. 2003).

An alternative test for showing equivalence is the "known interchangeability" test. "[T]he known interchangeability test looks to the knowledge of a skilled artisan to see whether that artisan would contemplate the interchange as a design choice." *Interactive Pictures*, 274 F.3d at 1383 (quoting *Overhead Door Corp. v. Chamberlain Group, Inc.*, 194 F.3d 1261, 1269-70 (Fed. Cir. 1999)). The proper time to examine whether such interchangeability was known in the art is the time of the infringement. *See Hughes Aircraft Co. v. United States*, 140 F.3d 1470, 1475 (Fed. Cir. 1998); *Warner-Jenkinson Co. v. Hilton Davis Chem. Co.*, 520 U.S. 17, 37 (1997) ("Insofar as the question under the doctrine of equivalents is whether an accused element is equivalent to a claimed element, the proper time for evaluating equivalency. . . is at the time of infringement, not at the time the patent was issued.").

In assessing infringement, the fact that a particular equivalent was deemed separately patentable by the Patent & Trademark Office, although potentially relevant, "does not avoid equivalency as a matter of law." *Fiskars, Inc. v. Hunt Mfg. Co.*, 221 F.3d 1318, 1324 (Fed. Cir. 2000) (citing *Atlas Powder Co. v. E.I. DuPont De Nemours & Co.*, 750 F.2d 1569, 1580 (Fed. Cir. 1984)). Indeed, that fact "presents no legal or evidentiary presumption of

noninfringement." *Hoechst Celanese Corp. v. BP Chems. Ltd.*, 78 F.3d 1575, 1582 (Fed. Cir. 1996); *Atlas Powder Co.*, 750 F.2d at 1580 (finding that "the grant of a patent to an accused infringer" does not "constitut[e] a prima facie determination of non-equivalence"). The well established burden of proof for infringement (i.e., preponderance of the evidence) is therefore unchanged by the fact that an equivalent was deemed separately patentable by the Patent & Trademark Office, and Siemens is aware of no case holding a patent owner to a higher burden in any context.

### B.    Indirect Infringement

The patent statute imposes liability for inducing another person to infringe and for contributing to the infringement of another.

> (b) Whoever actively induces infringement of a patent shall be liable as an infringer.
>
> (c) Whoever offers to sell or sells within the United States or imports into the United States a component of a patented machine, manufacture, combination, or composition, or a material or apparatus for use in practicing a patented process, constituting a material part of the invention, knowing the same to be especially made or especially adapted for use in an infringement of such patent, and not a staple article or commodity of commerce suitable for substantial noninfringing use, shall be liable as a contributory infringer.

35 U.S.C. § 271(b), (c). These forms of liability are referred to as indirect infringement.

The first step in proving indirect infringement, either in the form of contributory infringement or inducement to infringe, is to prove that someone (i.e., a third party) is directly infringing the patent. *Epcon Gas Sys., Inc. v. Bauer Compressors, Inc.*, 279 F.3d 1022, 1033 (Fed. Cir. 2002). The next step is to show that the accused indirect infringer is contributing to or inducing that direct infringement.

4

### 1.    Contributory Infringement

In addition to proving direct infringement, to establish liability for contributory infringement, a patentee must show that the accused contributor supplied the component knowing that it would be used in an infringing manner.[2] *See* 35 U.S.C. § 271(c); *Golden Blount, Inc. v. Robert H. Peterson Co.*, 365 F.3d 1054, 1061 (Fed. Cir. 2004).  The Section 271(c) scienter requirement is "minimal." *DSU Med. Corp. v. JMS Co.*, 471 F.3d 1293, 1303 (Fed. Cir. 2006).  All that is required is the "knowledge that the component was especially made or adapted for a particular use [and] knowledge of the patent which proscribed that use." *Hewlett-Packard Co. v. Bausch & Lomb Inc.*, 909 F.2d 1464, 1469 n.4 (Fed. Cir. 1990); *see also Trell v. Marlee Elecs. Corp.*, 912 F.2d 1443, 1448 (Fed. Cir. 1990) (remanding for district court to "determine whether and when [the accused contributory infringer] knew of the existence of Trell's patent.").

### C.    Inducement of Infringement

Inducement under section 271(b) covers a broad range of conduct by which "one in fact causes, or urges, or encourages, or aids another to infringe a patent." *Tegal Corp. v. Tokyo Electron Co.*, 248 F.3d 1376, 1378-79 (Fed. Cir. 2001) (quoting *Fromberg, Inc. v. Thornhill*, 315 F.2d 407, 411 (5th Cir. 1963)).

To hold a party liable for inducing infringement, there must be "evidence of culpable conduct, directed to encouraging another's infringement, not merely that the inducer had knowledge of the direct infringer's activities." *DSU Med. Corp*, 471 F.3d at 1306 (*en banc*

---

[2]    Section 271(c) also requires the patentee to show that the accused component is not a staple article of commerce suitable for substantial noninfringing use. *Golden Blount, Inc. v. Robert H. Peterson Co.*, 365 F.3d 1054, 1061 (Fed. Cir. 2004).  In this case, however, Saint-Gobain does not challenge the fact that its accused crystals are not staple articles of commerce suitable for substantial noninfringing use.

in relevant part). The requisite intent can, however, be inferred where an accused inducer knew of the patent and intended to induce the act that is alleged to directly infringe the patent. *Golden Blount*, 438 F.3d at 1364 n.4. Where the normal and intended use of an accused product involves an infringing use, a patentee may prove inducement by showing that the defendant intends for the accused product to be used in such a normal and intended manner. *See, e.g., Cross Med. Prods., Inc. v. Medtronic Sofamor Danek, Inc.*, 424 F.3d 1293, 1314 (Fed. Cir. 2005) (recognizing that "a reasonable juror could find" induced infringement where accused product was "designed . . . to function" in an infringing manner); *Chiuminatta Concrete Concepts, Inc. v. Cardinal Indus., Inc.*, 145 F.3d 1303, 1307, 1311-1312 (Fed. Cir. 1998) (affirming summary judgment of induced infringement where "normal commercial use" of accused product met claim limitations).

## II.   AFFIRMATIVE DEFENSES (SIEMENS' MOTION TO STRIKE OR, IN THE ALTERNATIVE, FOR SUMMARY JUDGMENT ON THIS DEFENSE IS PENDING)

### A.   Prosecution History Estoppel

Prosecution history estoppel bars a patentee from recapturing subject matter surrendered by amendment as a condition of obtaining the patent. *See, e.g., Regents of Univ. of Cal. v. Dakocytomation Cal., Inc.*, 517 F.3d 1364, 1376 (Fed. Cir. 2008). When a narrowing amendment has been made and the reason for that amendment was a "substantial one relating to patentability," courts "presume[] that the patentee has surrendered all territory between the original claim limitation and the amended claim limitation."[3] *Festo Corp. v. Shoketsu Kinzoku Kogyo Kabushiki Co.*, 344 F.3d 1359, 1366-67 (Fed. Cir. 2003) (en banc). If the equivalent in

---

[3]    Only amendment-based estoppel has been asserted as a basis for its prosecution history estoppel defense.

6

question does not fall within the territory between the literal scope of the original and amended claim, then the presumption is not triggered. *See, e.g., Winn Inc. v. Eaton Corp.*, 272 F. Supp. 2d 968, 980 (C.D. Cal. 2003) ("[F]or prosecution history estoppel to apply, the patentee would have to narrow his claims during the prosecution of the patent to an extent that the accused device is excluded from the claims of the patent.").

A claim is not narrowed when an amendment merely adds a limitation that was inherent in the original claim language. *See Primos, Inc. v. Hunter's Specialties, Inc.*, 451 F.3d 841, 849 (Fed. Cir. 2006) (no estoppel where claim amended to specify that recited "plate" had a "length" because all objects inherently have a length); *Bus. Objects, S.A. v. Microstrategy, Inc.*, 393 F.3d 1366, 1375 (Fed. Cir. 2005) (no estoppel where amendment from "SQL" to "predetermined query language" did not narrow limitation because original language inherently required that query language be predetermined).

A patentee can rebut the presumption of prosecution history estoppel by showing that the "equivalent was unforeseeable at the time of the application," that "the rationale underlying the amendment . . . bear[s] no more than a tangential relation to the equivalent in question," or that there is "some other reason suggesting that the patentee could not reasonably be expected to have described the insubstantial substitute in question." *Festo Corp. v. Shoketsu Kinzoku Kogyo Kabushiki Co.*, 535 U.S. 722, 740-41 (2002). Under the "tangential relation" prong, a patent owner can rebut the presumption of estoppel by showing that the rationale for a claim amendment during prosecution was "peripheral, or not directly relevant, to the alleged equivalent." *Insituform Techs., Inc. v. CAT Contracting, Inc.*, 385 F.3d 1360, 1370 (Fed. Cir. 2004) (internal quotation marks and citation omitted); *Primos, Inc.*, 451 F.3d at 849 (no prosecution history estoppel because amendment requiring "plate" to be "differentially spaced"

7

from membrane was tangentially related to assertion that differentially spaced dome was equivalent to recited plate).

## III.    DAMAGES

"The statutory instruction for awarding damages for patent infringement is that the award must be 'adequate to compensate for the infringement.'" *Del Mar Avionics, Inc. v. Quinton Instrument Co.,* 836 F.2d 1320, 1326 (Fed. Cir. 1987) (quoting 35 U.S.C. § 284); *see Mobil Oil Corp. v. Amoco Chems. Corp.,* 915 F. Supp. 1333, 1340 (D. Del. 1994).  35 U.S.C. § 284 provides the statutory foundation for damage awards in patent infringement cases, stating:

> Upon finding for the claimant the [C]ourt shall award the claimant damages adequate to compensate for the infringement, but in no event less than a reasonable royalty for the use made of the invention by the infringer....

The Supreme Court has stated that the guiding question to determine whether damages are "adequate to compensate for the infringement" is "'had the Infringer not infringed, what [damages] would [the] Patentee Holder...have made?'" *Aro Mfg. Co. v. Convertible Top Replacement Co.,* 377 U.S. 476, 504 & 507 (1964) (quoting *Livesay Window Co. v. Livesay Indus.,* 251 F.2d 469, 471 (1958)); *see W.R. Grace & Co. v. Intercat, Inc.,* 60 F. Supp. 2d 316, 321 (D. Del. 1999) ("The purpose of the damage award is to place the patent owner in the same financial position that it would have been in had the infringement not occurred.").  Indirect infringers are jointly and severally liable for the damages caused by an infringement, so anyone who induces or contributes to direct infringement by another is liable the same as the direct infringer.  *Glenayre Elec., Inc. v. Jackson,* 443 F.3d 851, 858-59 (Fed. Cir. 2006) ("[W]here a patentee alleges that a manufacturer contributes to and induces infringement by its customers simply because it sells infringing products to its customers, damages assessed for indirect infringement normally will be the same as damages that would be assessed had the patentee sued

and obtained a judgment against the customers."); *Aro Mfg. Co. v. Convertible Top Replacement Co.*, 377 U.S. 476, 500 (1964) ("[A] contributory infringer is a species of joint-tortfeasor, who is held liable because he has contributed with another to the causing of a single harm to the plaintiff.").

Courts have consistently applied two methods for calculating damages adequate to compensate for infringement: lost profits and reasonable royalty. The amount of damages owed under either method of calculation is a finding of a fact on which the plaintiff bears the burden of proof by a preponderance of the evidence. *Merck & Co. v. TEVA Pharms. USA, Inc.*, 228 F. Supp. 2d 480, 485 (D. Del. 2002). When the amount of damages cannot be precisely ascertained, any doubts regarding the amount must be resolved against the alleged infringer. *Mobil Oil Corp.*, 915 F. Supp. at 1352; *see also Oiness v. Walgreen Co.*, 88 F.3d 1025, 1030 (Fed. Cir. 1996) (holding that any adverse consequences resulting from the infringer's failure to produce accurate financial records of revenue derived from its infringement rests with the infringer).

### A.     Lost Profits

Lost profits are those profits which the patentee has lost due to the infringement. To recover lost profits, a patentee must show that but for the infringement, it would have made the sales that were instead made of the infringing product. "[T]he 'but for' inquiry, thus, requires a reconstruction of the market as it would have been absent the infringing product, to determine which sales the patentee would have made." *ISCO Int'l, Inc. v. Conductus, Inc.*, No. Civ. A. 01-487 GMS, 2003 WL 280223, at *1 (D. Del. Feb. 10, 2003). The plaintiff must submit "sound economic proof of the nature of the market and likely outcomes with infringement factored out of the economic picture." *Applera Corp. v. Micromass UK Ltd.*, 204 F. Supp. 2d

9

724, 779 (D. Del. 2002) (citing *Grain Processing Corp v. Am. Maize-Prods. Co.*, 185 F.3d 1341,

1350-51 (Fed. Cir. 1999)), *aff'd*, 60 Fed. Appx. 800 (Fed. Cir. 2003).

   To determine whether a patentee may recover lost profits, the District Court of

Delaware has used the four-factor test set forth in *Panduit Corp. v. Stahlin Bros. Fibre Works,*

*Inc.*, 575 F.2d 1152, 1156 (6th Cir. 1978). *Mobil Oil Corp.*, 915 F. Supp. at 1351.  These factors

are:

   1)  demand for the patented product;

   2)  the absence of acceptable non-infringing substitutes;

   3)  the manufacturing and marketing capability to exploit the demand; and

   4)  the amount of profit the patent holder would have made.

*Id.*

   The *Panduit* test is an acceptable, though not the exclusive, test for determining

"but for" causation.  *Procter & Gamble Co. v. Paragon Trade Brands, Inc.*, 989 F. Supp. 547,

600 (D. Del. 1997); *see BIC Leisure Prods., Inc. v. Windsurfing Int'l, Inc.*, 1 F.3d 1214, 1218

(Fed. Cir. 1993).  The failure to meet a *Panduit* factor does not automatically bar a patentee from

recovering lost profits if other considerations and information show that lost profits are still

justifiable.  For example, in *State Industries, Inc. v. Mor-Flo Industries, Inc.*, 883 F.2d 1573,

1577-78 (Fed. Cir. 1989), the court employed a market approach to calculating lost profits,

determining that even though "acceptable noninfringing substitutes" were available from

suppliers who would have made some of the sales that were made by the accused infringer, the

patent owner was entitled to lost profits on the portion of the infringing sales corresponding to its

share of the market.  *Id.* at 1577; *see Procter & Gamble Co.*, 989 F. Supp. at 601 ("The Federal

Circuit has held that a patent owner may satisfy the second prong of the *Panduit* test by proving its share of the market in lieu of proof of the absence of acceptable substitutes.").

**B.    Reasonable Royalty**

Alternatively, Section 284 requires that a damage award shall be "in no event less than a reasonable royalty." As such, a reasonable royalty is not necessarily the measure of damages, but is merely the "floor below which damage awards 'may' not fall." *Ajinomoto Co. v. Archer-Daniels-Midland Co.*, No. 95-218-SLR, 1998 WL 151411, at *49 (D. Del. March 13, 1998) (citing *Rite-Hite Corp. v. Kelly Co.*, 56 F.3d 1538, 1544 (Fed. Cir. 1995) (en banc)), *aff'd*, 228 F.3d 1338 (Fed. Cir. 2000). The royalty may be based upon an established royalty, or if there is not one, upon the supposed result of hypothetical negotiations between the plaintiff and defendant. *Id.* (citing *Hayhurst v. Rosen*, No. Civ. 91-4496, 1992 WL 123178, at *13 (E.D.N.Y May 18, 1992)). The negotiation is analyzed as having occurred on the date the infringement began. *Mobil Oil Corp.*, 915 F. Supp. at 1352. Performing this analysis requires looking at "events and facts that occurred [after the hypothetical negotiation]" and could not have been known or predicted by the hypothesized negotiators. *Honeywell Int'l, Inc. v. Hamilton Sundstrand Corp.*, 378 F. Supp. 2d 459, 465 (D. Del. 2005).

To calculate a reasonable royalty, the factfinder should consider the fifteen factors set forth in *Georgia-Pacific Corp. v. United States Plywood Corp.*, 318 F. Supp. 1116, 1120 (S.D.N.Y. 1970). *See, e.g., Novozymes A/S v. Genencor Int'l, Inc.*, 474 F. Supp. 2d 592, 605 (D. Del. 2007). The factors are:

1)    The royalties received by the patentee for the licensing of the patent in suit, proving or tending to prove an established royalty.

2)    The rates paid by the licensee for the use of other patents comparable to the patent in suit.

11

3)  The nature and scope of the license, as exclusive or nonexclusive; or restricted or non-restricted in terms of territory or with respect to whom the manufactured product may be sold.

4)  The licensor's established policy and marketing program to maintain his patent monopoly by not licensing others to use the invention or by granting licenses under special custodians to preserve that monopoly.

5)  The commercial relationship between the licensor and the licensee, such as whether they are competitors in the same territory in the same line of business; or whether they are inventor and promoter.

6)  The effect of selling the patented invention in promoting sales of other products of the licensee; the existing value of the invention to the licensor as a generator of sales of his non-patented items; and the extent of such derivative or convoyed sales.

7)  The duration of the patents and the term of the license.

8)  The established profitability of the product made under the patent; its commercial success; and its current popularity.

9)  The utility and advantages of the patent property over the old modes or devices, if any, that had been used for working out similar results.

10) The nature of the patented invention; the character of the commercial embodiment of it as owned and produced by the licensor; and the benefits to those who have used the invention.

11) The extent to which the infringer has made use of the invention; and any evidence of the probative of the value of that use.

12) The portion of the profit or of the selling price that may be customary in the particular business or in comparable businesses to allow for use of the invention or analogous inventions.

13) The portion of the realizable profit that should be credited to the invention as distinguished from non-patented elements, the manufacturing process, business risks, or significant features or improvements added by the infringer.

14) The opinion testimony of qualified experts.

15) The amount that a licensor (such as the patentee) and a licensee (such as the infringer) would have agreed upon (at the time the infringement began) if both had been reasonably and voluntarily trying to reach an agreement; that is, the amount which a prudent licensee- who desired, as a business proposition, to obtain a license to manufacture and sell a

particular article embodying the patented invention- would have been willing to pay as a royalty and yet be able to make a reasonable profit and which amount would have been acceptable by a prudent patentee who was willing to grant a license.

"[T]he hypothetical negotiation approach 'must be flexibly applied as a device in the aid of justice.'" *Honeywell Int'l*, 378 F. Supp. 2d at 464 (citing *TWM Mfg. Co. v. Dura Corp.*, 789 F.2d 895, 900 (Fed. Cir. 1986)). It may be inappropriate to assume that the parties are truly willing to negotiate a license, as that assumption may result in a royalty rate that does not reflect an infringement occurred. *Honeywell Int'l, Inc.*, 378 F. Supp. 2d at 464; *see also Panduit*, 575 F.2d at 1158

> The setting of a reasonable royalty after infringement cannot be treated...as the equivalent of ordinary royalty negotiations among truly 'willing' patent owners and licensees. That view would constitute a pretense that the infringement never happened. It would also make an election to infringe a handy means for competitors to impose a 'compulsory license' policy upon every patent owner...[an] infringer would have nothing to lose, and everything to gain if he could count on paying only the normal, routine royalty non-infringers might have paid.

*Id.* Thus, the District Court of Delaware has recognized a distinction between royalties payable by infringers as opposed to non-infringers, when determining an appropriate royalty rate. *Trans-World Mfg Co. v. Al Nyman & Sons, Inc.*, 633 F. Supp. 1047, 1054 (D. Del. 1986) ("The setting of a royalty rate cannot be treated as the equivalent of ordinary license negotiations among the parties, because such treatment would validate the fiction that the infringement had never occurred.").

**C.    Entire Market Value Rule**

Finally, pursuant to the Entire Market Value rule, the proper calculation of either the lost profits measure of damages or the reasonable royalty measure of damages should be based on the entire market value of the patented apparatus and unpatented components sold with that patented apparatus. *Rite-Hite Corp. v. Kelley Co.*, 56 F.3d 1538, 1549 (Fed. Cir. 1995) (*en*

13

banc) "[T]he entire market value rule permits recovery of damages based on the value of a patentee's entire apparatus containing several features when the patent-related feature is the 'basis for customer demand.'" *Id.* (citation omitted). The entire market value rule applies where the patented and unpatented components together are "physically part of the same machine," or, if they are sold separately, they are "components of a single assembly or parts of a complete machine, or they together constituted a functional unit." *Id.* at 1549-50.

## IV.    OTHER RELIEF

### A.    Willful Infringement

35 U.S.C. § 284 authorizes the court to "increase the damages up to three times the amount found or assessed." Willfulness, a question of fact, must be established by clear and convincing evidence. *See SRI Int'l, Inc. v. Advanced Tech. Labs, Inc.*, 127 F.3d 1462, 1465 (Fed. Cir. 1997). The decision to enhance damages, and the amount of any enhancement, however, is within the discretion of the Court. *See* 35 U.S.C. § 284. "Proof of willful infringement. permitting enhanced damages requires at least a showing of objective recklessness." *In re Seagate Tech., LLC*, 497 F.3d 1360, 1371 (Fed. Cir. 2007) (en banc). While recognizing that "the term [reckless] is not self-defining," *id.*, the Court held that to establish willful infringement, a patentee must show (1) "an objectively high likelihood that [the accused infringer's] actions constituted infringement of a valid patent" and (2) "that this objectively-defined risk (determined by the record developed in the infringement proceeding) was either known or so obvious that it should have been known to the accused infringer." *Id.*

Various factors are considered in determining whether infringement was willful. *See SRI*, 127 F.3d at 1465. *Seagate*'s "objective recklessness" standard expressly depends on a non-exclusive host of factual-based considerations, such as "standards of commerce" in the relevant industry. *Seagate*, 497 F.3d at 1371 n. 5; *see also id.* at 1385 (Newman, J., concurring);

14

*Computer Assoc. Int'l, Inc. v. Simple.com, Inc.*, No. 02 Civ. 2748(DRH)(MLO), 2007 WL 2815812, at *3 (E.D.N.Y. Sept. 25, 2007) (post-dating *Seagate*) ("[a] willfulness determination . . . is a finding of fact inextricably bound to the facts underlying the alleged infringement.") (internal quotation marks and citation omitted).

Reliance on an opinion of counsel, although not dispositive of the willfulness inquiry, is an important factor to include in the analysis. *Seagate*, 497 F.3d at 1371. The viability of this defense, however, depends on the competence of counsel's opinion. Courts consider "the nature of the advice, the thoroughness and competence of the legal opinion presented, and its objectivity." *SRI*, 127 F.3d at 1465. For example, the court should consider whether counsel's opinion addresses all relevant issues, and should, for instance, reject a defense based on an opinion that "ignores entirely the question of infringement under the doctrine of equivalents." *Datascope Corp. v. SMEC, Inc.*, 879 F.2d 820, 828 (Fed. Cir. 1989). Further, the court should consider whether counsel's opinion is premised upon the best information known to the alleged infringer because, "[o]therwise, the opinion is likely to be inaccurate and will be ineffective to indicate the defendant's good faith intent." *Comark Commc'ns, Inc. v. Harris Corp.*, 156 F.3d 1182, 1191 (Fed. Cir. 1998). The court should also consider whether "material information is intentionally withheld, or the best information is intentionally not made available to counsel during the preparation of the opinion." *Id.*; *see also nCUBE Corp. v. Seachange Int'l, Inc.*, 436 F.3d 1317, 1324 (Fed. Cir. 2006). Such an "opinion can no longer serve its prophylactic purpose of negating a finding of willful infringement." *Comark Commc'ns*, 156 F.3d at 1191. The "most important consideration" is whether something in the legal opinion "would alert a client to reject the letter as an obviously bad opinion." *Read Corp. v. Portec, Inc.* 970 F.2d 816, 830 (Fed. Cir. 1992). "Counsel's opinion must be thorough enough, as combined

with other factors, to instill a belief in the infringer that a court might reasonably hold the patent is invalid, not infringed, or unenforceable." *Westvac Corp. v. Int'l Paper Co.*, 991 F.2d 735, 743 (Fed. Cir. 1993) (internal quotation marks and citation omitted).

Beyond the competence of the opinion, an accused willful infringer must also show that it actually relied on the opinion, as opposed to merely having obtained a post hoc opinion after having decided to proceed with infringing conduct. For instance, in *Applied Medical Resources Corp. v. U.S. Surgical Corp.* the jury was presented with evidence from which it could infer that the accused infringer merely "sought legal opinions for their potential evidentiary value on the issue of willful infringement in future litigation." 435 F.3d 1356, 1365 (Fed. Cir. 2006). In light of that evidence, the Federal Circuit concluded that a "reasonable jury could have believed that [defendant] was not concerned about infringement and would have proceeded to manufacture [the infringing product] despite receiving outside legal opinions." *Id.*

In addition to the advice-of-counsel defense, courts will also examine "the closeness or complexity of the legal and factual questions presented" and "commercial factors that may have affected the infringer's actions." *SRI*, 127 F.3d at 1465. The Court should also consider any other relevant factors, such as evidence of copying. *Nichia Corp. v. Seoul Semiconductor*, No. C-06-0162, 2008 WL 974027, at *1 (N.D. Cal. Apr. 8, 2008) (upholding jury verdict of willfulness based on expert testimony showing the similarities of the accused product and the patented product and evidence that defendant was notified of the patent); *VNUS Med. Techs., Inc. v. Diomed Holdings, Inc.*, 527 F. Supp. 2d 1072, 1076 (N.D. Cal. 2007) (denying accused infringer's summary judgment of no willfulness in light of evidence that accused infringer obtained the idea for the accused method from plaintiff's scientists).

16

**B.    Prejudgment Interest**

35 U.S.C. § 284 states:

Upon finding for the claimant the court shall award the claimant damages adequate to compensate for the infringement, but in no event less than a reasonable royalty for the use made of the invention by the infringer, together with the interest and costs as fixed by the court.

The Supreme Court has held that "prejudgment interest should ordinarily be awarded where necessary to afford the plaintiff full compensation for infringement." *See Gen. Motors Corp. v. Devex Corp.*, 461 U.S. 648, 654 (1983). It "is awarded to the patent owner for the purpose of making him whole, not only for the value of the actual damage suffered but also for the loss of any possible use of the money between the time of the infringement and the date of the judgment." *Underwater Devices, Inc. v. Morrison-Knudsen Co.*, 717 F.2d 1380, 1389 (Fed. Cir. 1983).

In reversing a district court's denial of prejudgment interest, the Federal Circuit in *Laitram Corp. v. Cambridge Wire Cloth Co.*, 785 F.2d 292 (Fed. Cir. 1986), applied the Supreme Court's holding in *General Motors* and "concluded that prejudgment interest should ordinarily be awarded affording patent owners complete compensation." *Id.* at 295; *see also Paper Converting Machine Co. v. Magna-Graphics Corp.*, 745 F.2d 11, 23 (Fed. Cir. 1984) ("Prejudgment interest should *ordinarily* be awarded absent some justification for withholding such award.") (emphasis in original).

**C.    Attorney Fees**

The patent statute provides that "[t]he court in exceptional cases may award reasonable attorney fees to the prevailing party." 35 U.S.C. § 285. The award of such fees is within the discretion of the trial court, and is to be exercised upon a specific finding of exceptional circumstances. *See L.A. Gear, Inc. v. Thom McAn Shoe Co.*, 988 F.2d 1117, 1128

(Fed. Cir. 1993) ("The trial judge is in the best position to weigh the factors 'that may contribute to a fair allocation of the burdens of litigation as between winner and loser,' . . . in view of the entirety of the litigation circumstances." (citation omitted)).  Willful or deliberate infringement by the accused infringer is an example of these exceptional circumstances.  *See id.* ("Although the district court found that this case was not exceptional, our determination that [defendant's] patent infringement was willful has changed the factual premises. . . . We remand to the district court for redetermination of the issue of attorney fees."); *see also Avia Group Int'l, Inc. v. L.A. Gear Calif., Inc.*, 853 F.2d 1557, 1567 (Fed. Cir. 1988) (stating that willful infringement may be a sufficient basis for finding a case "exceptional" and thus awarding attorney fees to the prevailing patent owner).

# EXHIBIT 4

## EXHIBIT 4

## STATEMENT OF ISSUES OF LAW REMAINING TO BE LITIGATED

Defendant Saint-Gobain Ceramics & Plastics, Inc. ("Saint-Gobain") identifies the following issues of law remaining to be litigated. To the extent that Saint-Gobain's Statement of Disputed Facts to be Proved at Trial contains issues of law, those issues are incorporated herein by reference. Saint-Gobain also incorporates by reference its briefs submitted in connection with Siemens' motion for preliminary injunction and its motion for partial summary judgment. (Capitalized terms not otherwise defined herein shall have the meanings ascribed to them in Saint-Gobain's Statement of Disputed Facts to be Proved at Trial).

**Non-Infringement**

1.     Although Siemens bears the burden to prove its claim of infringement of the '080 patent under the Doctrine of Equivalents by a preponderance of the evidence, the '420 Patent, just as the '080 Patent, is presumed to be valid and enforceable. Siemens may overcome that presumption only with clear and convincing evidence to demonstrate that the '420 patent is invalid and unenforceable.

2.     As a consequence, Siemens bears the burden of proving that the LYSO scintillation crystal constitutes an "equivalent" as that term is used under the Doctrine of Equivalents by clear and convincing evidence.

3.     The "function-way-result" test under the Doctrine of Equivalents is inappropriate where there are two different compositions of matter: the LSO scintillator disclosed by the '080 patent, on the one hand, and the accused PreLude 420 LYSO scintillator manufactured and sold by Saint-Gobain to Philips, on the other hand, each of which is the commercial embodiment of a patented compound.

1

4.      The "known interchangeability" test under the doctrine of equivalents likewise does not apply in this case that involves two different compositions of matter: the LSO scintillator disclosed by the '080 patent, on the one hand, and the accused PreLude 420 LYSO scintillator manufactured and sold by Saint-Gobain to Philips, on the other hand, each of which is the commercial embodiment of a patented compound.

5.      Siemens bears the burden of showing by clear and convincing evidence that there exists an insubstantial difference between the LSO scintillator disclosed by the '080 patent, on the one hand, and the accused PreLude 420 LYSO scintillator manufactured and sold by Saint-Gobain to Philips, on the other hand, in order to invalidate the '420 Patent that covers the LYSO crystal.

6.      Subject to the requirement that Siemens bears the evidentiary burden to show that the LYSO crystal constitutes an "equivalent" as that term is used in the Doctrine of Equivalents, by clear and convincing evidence, for Siemens to prove contributory infringement, Siemens must show by a preponderance of the evidence both (1) that, in manufacturing and selling PET/CT scanners incorporating a detector containing Saint-Gobain's accused PreLude 420 LYSO scintillator, Philips directly infringes the '080 patent and (2) that, at the time it sold its accused PreLude 420 LYSO scintillator to Philips, Saint-Gobain knew that the PreLude 420 LYSO scintillator would be used by Philips in an allegedly infringing manner.

7.      Subject to the requirement that Siemens bears the evidentiary burden to show that the LYSO crystal constitutes an "equivalent" as that term is used in the Doctrine of Equivalents, by clear and convincing evidence, for Siemens to prove inducement of infringement, Siemens must show by a preponderance of the evidence both (1) that, in manufacturing and selling PET/CT scanners incorporating a detector containing Saint-Gobain's

2

accused PreLude 420 LYSO scintillator, Philips directly infringes the '080 patent and (2) that, at the time it sold its accused PreLude 420 LYSO scintillator to Philips, there was culpable conduct by Saint-Gobain directed to encouraging Philips' alleged direct infringement.

**Prosecution History Estoppel**

8.     Siemens is estopped from construing any claim of the '080 Patent to be infringed or to have been infringed, either literally or by application of the doctrine of equivalents, by Philips (by manufacturing and selling PET/CT scanners incorporating a detector containing Saint-Gobain's accused PreLude 420 LYSO scintillator) or Saint-Gobain (by making and selling its accused PreLude 420 LYSO scintillator to Philips) in view of admissions and statements made to the United States Patent and Trademark Office during prosecution of the application leading to the issuance of the '080 Patent because of limitations in the claims of the '080 Patent.

9.     The amendments made by the '080 patent applicant during its prosecution narrowed the claimed LSO scintillator in such a manner that Siemens should be denied reliance on the Doctrine of Equivalents to claim infringement through the LYSO scintillator sold by Saint-Gobain.

10.     The '080 patent applicant's narrowing amendments create the presumption of estoppel which Siemens bears the burden of rebutting by proving either (1) that the subject amendments were made for a purpose unrelated to patentability, or (2) that the amendments did not surrender the exact equivalent in question.

11.     Rebuttal of the presumption of surrender is a question of law to be determined by the Court.

**Damages**

3

12. Whether lost profits constitute an appropriate measure of damages available to Siemens in this action.

13. What constitutes the appropriate relevant market for purposes of calculating any damages to which Siemens may be entitled to recover in the event of a jury verdict in its favor in this action on the question of patent infringement is the United States market for PET/CT scanners in which the three principal competitors are Siemens, Philips and General Electric.

14. Whether Siemens properly calculated its alleged lost profits by incorporating sales, expense and other data attributable to parties and/or entities other than Siemens.

15. Whether Siemens properly calculated its alleged lost profits by assuming a "relevant market" that excluded one of the major competitors in the manufacture and sale of PET/CT scanners: General Electric.

16. Whether Siemens is entitled to recover any damages from Saint-Gobain in this action, attributable to the alleged infringement of the '080 patent by Philips, a non-party to this, or any action brought by Siemens (or anyone else) asserting infringement of the '080 Patent, in the absence of a judgment of infringement against Philips.

4

# EXHIBIT 5

## FULLY REDACTED

# EXHIBIT 6

## FULLY REDACTED

# EXHIBIT 7

## EXHIBIT 7

## SIEMENS MEDICAL'S LIST OF WITNESSES IT MAY CALL AT TRIAL

Siemens Medical identifies the following as witnesses that it may call to testify either in person or by deposition at trial.

1. Bruno Aleonard

2. Mark Andreaco

3. Matthew Bendick

4. Bernard Bendriem

5. Bruce Chai

6. Niraj Doshi

7. Thomas Field III

8. Markus Lusser

9. Thomas Kinisky

10. Michael Mayhugh

11. Douglas McKnight

12. Charles Melcher

13. Leon Radomsky

14. Michael Reitermann

15. Dominique Rothan

16. Frank Valentino

17. Eric Virey

18. Marvin Weber

19. Mary Woodford

1

20.    Saint-Gobain Ceramics & Plastics, Inc.

21.    Philips Medical Systems (Cleveland), Inc.

22.    Crystal Photonics, Inc.

# EXHIBIT 8

EXHIBIT 8

## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| SIEMENS MEDICAL SOLUTIONS USA, INC., | ) | |
| | ) | |
| Plaintiffs/Counter-Defendant, | ) | |
| | ) | |
| v. | ) | C.A. No. 07-190-SLR |
| | ) | |
| SAINT-GOBAIN CERAMICS & PLASTICS, INC., | ) | JURY TRIAL DEMANDED |
| | ) | |
| Defendant/Counterclaim-Plaintiff. | ) | |
| | ) | |
| | ) | |
| | ) | |

## DEFENDANT'S LIST OF WITNESSES TO BE CALLED AT TRIAL

Pursuit to the scheduling order in this case, Saint-Gobain Ceramics & Plastics, Inc. ("Saint-Gobain") identifies the following witnesses it may call live in its affirmative case and those whose testimony may be presented by means of deposition. Saint-Gobain reserves the right to call other witnesses for rebuttal, either live or by deposition. Saint-Gobain further reserves the right to add or delete witnesses or otherwise amend its witness list as appropriate or per prior agreements between the parties, including any witnesses who will be deposed between the date of this list and trial. Saint-Gobain also reserves the right to call any witness listed on Siemens' witness lists. This list is not a representation that any witness listed is available to appear for trial.

Saint-Gobain may call the following witnesses live or by way of deposition during its case-in-chief:

1.    Thomas Kinisky

2.    Michael Mayhugh

3.    Dominique Rothan

4.    Bruno Aleonard

5.    Eric Virey

6.    Leon Radomsky

7.    Bruce Chai

8.    Thomas G. Field

9.    Matthew Bendick

10.   Frank Valentino

11.   Kenneth McClellan

12.   Joel Karp

13.   John Jarosz

# EXHIBIT 9

## EXHIBIT 9

## BRIEF STATEMENT OF WHAT SIEMENS MEDICAL INTENDS TO PROVE ON ISSUES FOR WHICH SIEMENS MEDICAL BEARS THE BURDEN OF PROOF

Siemens Medical provides the following brief statement as to its intended proofs at trial. Siemens Medical incorporates by reference the expert reports of Mary Woodford and Marvin Weber, and the Affidavits of Markus Lusser, Niraj Doshi, and Marvin Weber in Support of Siemens Medical's Motion for Preliminary Injunction. This statement does not include the proofs that Siemens Medical will offer in rebuttal to defenses Saint-Gobain presents at trial.

### I.    INFRINGEMENT

1.    Saint-Gobain's 10% Y LYSO crystal is equivalent to the crystal scintillator element in claims 1 and 2 of the '080 patent and when incorporated in a gamma or x-ray detector (such as a PET scanner) infringes each of those claims under the doctrine of equivalents, as shown under either the function-way-result test or the known interchangeability test.

2.    Saint-Gobain knew that its accused 10% Y LYSO crystals would be used in a directly infringing manner and, as a result, contributed to infringement of the '080 patent by selling and offering to sell the accused Saint-Gobain crystal in the United States.

3.    Saint-Gobain has encouraged third parties to directly infringe the '080 patent in connection with its sales of and offers to sell the accused 10% Y LYSO crystals. Accordingly, Saint-Gobain has induced infringement of the '080 patent.

### II.    DAMAGES

4.    Siemens Medical is entitled to lost profits for Saint-Gobain's infringement of the '080 patent.

1

5.    Siemens Medical is entitled, in the alternative, to no less than a reasonable royalty for Saint-Gobain's infringement of the '080 patent.

## III.    OTHER RELIEF

### A.    Willful Infringement

6.    Saint-Gobain's infringement of the '080 patent has been willful.

7.    Siemens Medical is entitled to enhanced damages for Saint-Gobain's willful infringement of the '080 patent.

### B.    Prejudgment Interest

8.    Siemens Medical is entitled to prejudgment interest for Saint-Gobain's infringement of the '080 patent.

### C.    Attorney Fees

9.    Siemens Medical is entitled to attorney fees incurred in prosecuting this action.

2

# EXHIBIT 10

## FULLY REDACTED