

Kelly E. Farnan
302-651-7705
Farnan@rlf.com

September 5, 2008

**VIA E-FILING**
The Honorable Sue L. Robinson
United States District Court
J. Caleb Boggs Federal Building
844 North King Street
Wilmington, DE 19801

Re: **Siemens Medical Solutions USA, Inc. v. Saint-Gobain Ceramics and Plastics, Inc., C.A. No. 07-190**

Dear Judge Robinson:

In accordance with the Court's direction at the pretrial conference, Saint-Gobain submits the following regarding the relevance of the manufacturing evidence Saint-Gobain intends to present.

Saint-Gobain's evidence respecting the manufacturing advantages of LYSO over LSO, including evidence in the testimony of its expert witnesses Kenneth McClellan and Joel Karp, will show that LYSO offers (1) reduced manufacturing costs attributable both to the lower melting point of LYSO (providing energy savings as well as diminished attrition of the components used for crystal growth, including the expensive iridium crucibles and ceramic furnaces used in the process) as well as a superior worldwide infrastructure for the constituent yttrium oxide powder (providing lower raw material cost as well as reduced issues associated with material impurities in the crystal) and (2) production of high quality material with greater uniformity of light output per crystal boule (resulting in greater cost efficiency in the manufacturing process as well as an increased yield of high quality crystal per growth). Notably, in U.S. Patent 6,624,420 (under which Saint-Gobain manufactures and sells its PreLude 420 LYSO crystals as licensee), the inventors set forth in the Specification that LYSO was designed, among other things, to address the higher melting point of LSO, its higher manufacturing cost and the insufficiency of the then-current material purity of lutetium oxide to guarantee consistent high light yield. United States Patent No. 6,624,420, at col. 4:1-32.

These manufacturing advantages are linked to the performance properties of LYSO and establish that these differences between LYSO and LSO are not insubstantial. This evidence is, therefore, relevant to infringement and also the question of the amount of damages to which Siemens would be entitled in the event of a finding in its favor on infringement. *See, e.g., Slimfold Mfg. Co. v. Kinkead Indus., Inc.*, 932 F.2d 1453, 1458-1459 (Fed. Cir. 1991) (affirming district court award of damages reflecting manufacturing advantage). In *Slimfold*, for example,

The Honorable Sue L. Robinson
September 5, 2008
Page 2

the district court had awarded plaintiff both royalty damages and damages reflecting "all profits that [defendant] Kinkead realized in the form of manufacturing cost savings." *Id.* at 1458. On appeal, plaintiff argued that the district court's royalty damages award was erroneous. The Federal Circuit disagreed, noting that it appeared "that the district court awarded such a small royalty rate because the advantage of the Ford invention was primarily a manufacturing advantage (for which the district court awarded damages separately) and did not greatly increase the value of the entire door." *Id.* at 1459.

Accordingly, Saint-Gobain should be entitled to present its evidence on infringement and also -- because the manufacturing properties of LSO and LYSO bear at least on the value of the respective compounds -- to rebut the analysis of Siemens' damages expert, Ms. Woodford. Siemens' *in limine* objections should therefore be overruled.

Respectfully,

Kelly E. Farnan

Kelly E. Farnan (#4395)

KEF/th

cc:   Jack B. Blumenfeld, Esq. (by e-mail and hand delivery)

RLF1-3318463-1