IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF DELAWARE

SIEMENS MEDICAL SOLUTIONS        )
USA, INC.,                       )
                                 )
          Plaintiff,             )
                                 )
     v.                          )   Civ. No. 07-190-SLR
                                 )
SAINT-GOBAIN CERAMICS &          )
PLASTICS, INC.,                  )
                                 )
          Defendant.             )

**MEMORANDUM ORDER**

At Wilmington this 16th day of December, 2009, having reviewed defendant's motion for modification of the court's order of May 15, 2009 and the papers submitted in connection therewith;

IT IS ORDERED that said motion (D.I. 243) is denied, for the reasons that follow:

1. The relevant technology at issue and the procedural history of this case has been described in the court's post-trial opinion (D.I. 241), and will be reiterated only as needed herein. Plaintiff is the exclusive licensee of U.S. Patent No. 4,958,080 ("the '080 patent"), which claims a gamma or x-ray detector that incorporates a particular crystalline scintillator made of cerium-doped lutetium oxyorthosilicate ("LSO"). Plaintiff produces LSO scintillation crystals. Defendant manufactures lutetium-yttrium orthosilicate ("LYSO") scintillation crystals. Both crystals are used in medical scanners. Following a trial held in September 2008, a jury found that defendant infringed the '080 patent[1] and awarded $52.3 million in lost profits damages. Defendant brought a motion

---

[1]Infringement was alleged under the doctrine of equivalents.

for judgment as a matter of law ("JMOL") or for a new trial and remittur.  Upon review,

the court found that the evidence supported the jury's award of lost profits damages.

However, the court also found that, on the trial record, plaintiff did not meet its burden

to show a reasonable probability that, "but for" the infringement, it would have sold 79

PET scanners incorporating LSO crystals.

   2.  As discussed in detail in the court's prior opinion, the court found that the jury

could have reasonably concluded that 61 infringing medical scanners (incorporating

defendant's LYSO scintillation crystals) were both made and sold prior to the expiration

of the '080 patent in October 2008.  Plaintiff did not identify trial evidence indicating that

the additional 18 scanners were sold prior to the patent's expiration.  The court deemed

the asserted sale of these 18 scanners speculative and remitted the damages award

(from $52.3 million) to $44,937,545, or the lost profits on 61 scanners.  The court

arrived at this figure by the following logic.

> [Plaintiff's expert] Ms. Woodford calculated the per-scanner profit to be
> $578,969.  (D.I. 208 at 625:1)  For 61 scanners, this represents $35,317,109.
> Ms. Woodford also calculated a lost profit on service contracts for units sold in
> the United States as $343,587 per scanner; she applied this number to 28
> scanners serviced in the United States for a resultant $9,620,436 million in lost
> profits on service contracts.[2]  (Id. at 625:11-13)

(D.I. 241 at 24-25)  Insofar as the defendant "did not specify an appropriate amount of

damages for 61 scanners based on the trial record or point to any evidence that the

number of scanners located in the United States (28, by Ms. Woodford's testimony)

---

[2]The jury was shown a slide (slide 7) providing the $578,969 and $343,587
numbers.  This slide is before the court, however, it does not appear to have been
admitted as a trial exhibit.  The testimony reflects "almost $580,000" and "about
$340,000," respectively.  With respect to the service contracts, Ms. Woodford rounded-
down her testimony to "$9.6 million."

would differ for 61 versus 79 scanners," the court based its remittur calculation on Ms. Woodford's testimony. (*Id.* at 25) The court combined the $35,317,109 (per-scanner profit x 61) and $9,620,436 for the American service contracts to arrive at the $44,937,545 figure.

3. Defendant states that it does not seek re-argument of its position that Ms. Woodford overstated the damages due but, in its own words, "seeks only the consistent application of the court's reasoning in its May 15, 2009 order to reduce, consistently with the evidence relied on by Siemens and the court, the lost profit component related to service contracts." (D.I. 243 at 1, n.1) Defendant asserts that "lost profits for service contracts depend directly on the scanners sold and should have been reduced by at least the same percentage as lost profits for scanner sales." (*Id.* at 2) More specifically, Ms. Woodford assumed that 47 of 79 scanners would have been sold abroad, leaving 32 within the United States, of which 28 would have resulted in service contracts. (D.I. 208 at 624-25) Defendant argues that the court should have applied the ratios used by Ms. Woodford for 79 scanners to a total of 61 scanners sold. That is, keeping the ratios consistent, only 36 (of 61) scanners would have been sold abroad (47/79 or 59.5% of 61 scanners) leaving 25 to be sold in the United States; the appropriate amount of service contract money would be $7,558,914 (28/32 or 87.5% of 25 American scanners, or 22 scanners, at $343,587 apiece). (D.I. 243 at 2-3)

4. Defendant brings its current motion to modify the court's May 15, 2009 order under Rule 59. As the court specifically noted in its prior opinion, defendant did not previously argue that fewer than 28 scanners' worth of lost profits could be awarded for

3

service contracts.[3]  Therefore, the argument was waived.

5.  Notwithstanding, the court notes that the standard for obtaining relief under Rule 59(e) is a difficult one to meet.  The purpose of a motion for reconsideration is to correct manifest errors of law or fact or to present newly discovered evidence.  *See Harsco Corp. v. Zlotnicki*, 779 F.2d 906, 909 (3d Cir. 1985).  A motion for reconsideration may be granted if the moving party shows:  (1) an intervening change in the controlling law; (2) the availability of new evidence that was not available when the court issued its order; or (3) the need to correct a clear error of law or fact or to prevent manifest injustice.  *See Max's Seafood Cafe v. Quinteros*, 176 F.3d 669, 677 (3d Cir. 1999).  The present motion reflects a fundamental misunderstanding of the limited appropriateness of motions for reconsideration.  There is no alleged change in law or new evidence.  A "manifest injustice" does not result from the court's failure to consider arguments not properly made by defendant in its prior motion to amend the judgment.  As this court has iterated in previous cases, a motion for reconsideration is not properly grounded on a request that a court rethink a decision already made.

6.  In conclusion, because defendant's prior petition for remittur and supporting papers did not address the service contracts, the court does not consider the merits of its argument on its present Rule 59 motion.  Defendant's motion is denied.

United States District Judge

_____

[3]In response to plaintiff's argument in this regard in its opposition papers, defendant does not provide any citations to its papers demonstrating that it previously addressed the issue at hand in any respect.  (D.I. 248)